**EXHIBIT A**

**IN THE SUPERIOR COURT OF FULTON COUNTY**
**STATE OF GEORGIA**

| | |
|---|---|
| TRACIE MCFERREN, individually and on behalf of a class of similarly situated individuals, | ) No. <br> ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) <br> ) |
| AT&T Mobility, LLC, a Delaware limited liability company, | ) <br> ) <br> ) |
| Defendant. | ) |

### PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL
### OF CLASS ACTION SETTLEMENT

The plaintiff, by and through the undersigned counsel, and with the express

consent of defendant, and for the reasons set forth in the attached Memorandum in

Support of Preliminary Approval of Class Action Settlement, moves to this Court to enter

an Order pursuant to O.C.G.A. § 9-11-23 granting preliminary approval of a class action

settlement in the above-styled action and certifying a class for the purpose of settlement,

showing as follows:

1.

The parties, after extensive mediation, have reached an agreement regarding the

settlement of the above-styled action and fifteen related cases that is fair, adequate and

reasonable and is well within the range of possible approval.

2.

The parties have also stipulated to the certification of the proposed class for the purposes of settlement as the class is so numerous that joinder is impracticable, there are questions of law and fact common to the class, the claims of the representative parties are typical of the claims of the class, and the representative parties will fairly and adequately protect the interests of the class.

3.

In addition, the questions of law and fact common to the class predominate over individual questions and a class action is the superior method for the efficient adjudication of this controversy.

WHEREFORE, Plaintiff moves this Court to enter an Order granting preliminary approval of the class action settlement, to certify the class for purpose of settlement, and to enter such additional relief that it deems necessary and just. A proposed order accompanies this motion.

Respectfully submitted,

BOONE & STONE

By: /S/ William S. Stone
William S. Stone
GA Bar No. 684636

P.O. Drawer 7
589 College Street
Blakely, Georgia 39823
Tel 229.723.3045
Fax 229.723.4834

Attorneys for Plaintiff

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

TRACIE MCFERREN, individually and on behalf )
of a class of similarly situated individuals,    )
                                                  )
                    *Plaintiff,*                  )    No.
                                                  )
                    v.                            )    Judge Bonner
                                                  )
AT&T MOBILITY LLC,                                )
                                                  )
                    *Defendant.*                  )

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

This proposed class action settlement involves a practice known in the cellular telephone industry as "cramming." That is, the Defendant, AT&T Mobility LLC's ("AT&T Mobility"), is alleged to have allowed third-party mobile content providers to place charges on its customers' bills for unauthorized "premium mobile content."[1] Although AT&T Mobility has not directly contributed to the cramming, plaintiffs' claims (which are disputed by AT&T Mobility) allege that AT&T Mobility has simultaneously benefited from and neglected to act aggressively enough to prevent it. Class Counsel and the members of the Plaintiff's Steering Committee have been litigating this case and 15 related cases for over two years. During that time, Plaintiffs engaged in motion practice, conducted formal and informal discovery, and participated in upwards of ten in-person settlement meetings with AT&T Mobility and other defendants named in these lawsuits prior to agreeing upon a formal mediation process. The parties ultimately held joint[2]

---

[1] Typical "premium mobile content" services include products such as customized ringtones, sports score updates, weather alerts, stock tips, jokes, daily horoscopes, and even interactive radio and participatory television delivered to consumers primarily in the form of text messages.
[2] It is plaintiffs' understanding that, both prior to and contemporaneous with these sessions, AT&T Mobility had a number of in-person and telephonic mediation sessions involving it and several third-party mobile content providers and aggregators.

mediation sessions on May 12-13, 2008, and again on May 22-24, 2008 before mediator Rodney A. Max, a principle of the Upchurch Watson White & Max Mediation Group.

Through the mediation process, the parties were able to reach an incredibly strong settlement. (A true and accurate copy of the settlement agreement is attached as Exhibit A). The settlement provides the class with refunds equal to the amount of all unauthorized third-party mobile content charges. (If the charge recurred on a monthly basis based on a subscription or similar arrangement, class members may recover up to three times the amount of any such recurring charge). AT&T has also agreed to take steps to inform its customers about mobile content, the ability to restrict its purchase through parental controls, and methods for its customers to dispute unauthorized charges and cancel mobile content subscriptions. In total, the settlement terms approach the best plaintiffs could have hoped to achieve at trial. Given the hurdles facing them in this litigation, the results achieved are well beyond those required to preliminary approve the settlement and are supported not only by Plaintiff and AT&T Mobility, but also by the lead plaintiffs and their respective counsel in fifteen[3] cases filed or pending in other state or federal courts throughout the country.

---

[3] Joining in support of the settlement are plaintiffs and counsel in the following class actions that assert similar claims and are presently pending in other state or federal jurisdictions: *Baker v. New Motion, Inc. et al*, 2007-46363 (Fl. St. Ct.); *Dedek v. AT&T Mobility LLC*, No. BC387728 (Sup. Ct. L.A. County); *Fiddler v. AT&T Mobility LLC, et al.*, No. 1:08-cv-00416 (N.D. Ill.); *Goddard v. Google, Inc.*, BC 667876 (Cal. St. Ct.); *Gray v. Mobile Messenger Americas, Inc. et al*, 07-36302 (Fl. St. Ct.); *Hensley v. AT&T Mobility LLC*, (4th Jud. Dist., Hennepin Cty, Minn.); *Jiran v. AT&T Mobility LLC, et al.*, No. 4:08-cv-00013 (N.D. Cal.); *Paluzzi v. mBlox, et al.*, No: 2007-CH-37213 (Cir. Ct. Cook Cty, Ill.); *Thielen v. Buongiorno USA, Inc.*, No. 1:06-cv-00016 (W.D. Mich.) (dismissed); *Walsh v. mBlox, et al.*, No. BC 382356 (Cal. St. Ct.); *Warren et al. v. OpenMarket, Inc., et al.*, No. 6:07-cv-02043 (M.D. Fla.); *White v. AT&T Mobility LLC*, No. 104651-08 (N.Y. Sup. Ct.); *Pishvaee v. VeriSign, Inc., et al.*, No. 4:07-cv-03407 (N.D. Cal.); *Valdez v. Buongiorno USA, Inc. et al*, No. 4:07-cv-06496-CW (N.D. Cal.); *Knox et al. v. M-Qube, Inc.*, 1:07-cv-10124 (D. Mass.).

Plaintiff thus moves the Court to preliminary approve the instant settlement, certify the settlement class, and appoint the following leadership structure for Class Counsel in this case:

- Liaison Counsel: David W. Boone, William S. Stone and Aileen Page of Boone & Stone.

- Lead Counsel: Jay Edelson, Scott A. Kamber, and Myles McGuire of KamberEdelson, LLC.

- Plaintiff's Steering Committee: Robert Shelquist of Lockridge Grindal Nauen, P.L.L.P. (chairman), Orin Giskan, of Giskan, Solotaroff, Anderson & Stewart, LLP, David Healey of the Law Offices of David Healey and John G. Jacobs of The Jacobs Law Firm, Chtd.

For convenience, a proposed preliminary schedule of events leading to a final approval hearing (the "Settlement Hearing") is provided in Section VI of this brief.

## I.    NATURE OF THE LITIGATION

### A.    The Mobile Content Class Actions

Over the last two years, class actions have been filed throughout the country by consumers challenging the "cramming" practices related to AT&T Mobility, whereby charges for mobile content are allegedly included in consumers' cellular telephone bills without their authorization. As alleged in these complaints, though disputed by the defendants, "cramming" is the result of systematic flaws in AT&T Mobility's billing system that arose due to the rapid and largely unplanned growth of the mobile content industry. To provide for the ever-increasing demand of consumers for mobile content, AT&T Mobility contracted with entities called "aggregators" (such as mBlox Inc., VeriSign, and M-Qube, Inc.) who act as middlemen between the mobile content providers and the wireless carriers. Most mobile content providers lack the wherewithal to enter into contractual relationships with the large wireless carriers such as AT&T

Mobility. In addition to fostering these ties, the aggregators are responsible for the actual billing and delivery of mobile content to the consumers via cell phone technology.

The providers of mobile content charge and collect payment from their customers by "piggybacking" on the cell phone bills sent to consumers by AT&T Mobility. Both the aggregators and the wireless carriers are compensated for their services to the mobile content providers by retaining a substantial percentage of the amount each mobile content transaction. Although AT&T Mobility has taken preventative steps, plaintiffs' complaints allege that its billing and collection systems in aid of the premium mobile content industry lack sufficient checks or safeguards to prevent unauthorized charges from being added to customers' bills.

Of the lawsuits filed, many (including McFerren's Complaint), broadly challenge the alleged occurrence of "unauthorized charges" for third-party mobile content and broadly define the putative class to include AT&T Mobility subscribers across the nation who suffered damages as a result of being billed for mobile content that was not authorized by the subscriber. Additional class actions have been filed against AT&T Mobility involving a subset[4] of the "cramming" flaw, the so-called "recycled numbers" charges. These cases address charges that were allegedly unauthorized by the current holder of a wireless telephone number, but were

---

[4] It should be noted that another, more narrow subset of the cramming issue focuses largely on: (1) the alleged industry practice of targeting mobile content advertisements specifically to minors, who may not have the authority to bind their parents to pay for such services; and (2) the marketing practices of mobile content by Jamster International SARL ("Jamster"). AT&T Mobility and certain aggregators and third-party content providers, including Jamster, are named in those suits, in addition to other carriers. The majority of these cases (some await ruling on pending motions to transfer) have been consolidated by the Judicial Panel on Multidistrict Litigation in the case of *In Re Jamster Marketing Litigation*, MDL No. 1751, Master File No. 05-CV-0819 JM (CAB) and are presently pending in the United States District Court for the Southern District of California. Plaintiffs' understanding is that the MDL cases have only litigated certain procedural issues, most notably arbitration clauses, and have not progressed into the merits. As a prerequisite to negotiating with AT&T Mobility, Class Counsel secured representations from AT&T Mobility and the other related parties that they were not negotiating with any other plaintiffs' group. (McGuire Decl. ¶ 6).

authorized by the former holder of the number before it was abandoned and "recycled" to the current owner. The proposed settlement would cover the claims asserted in all of these actions as they relate to AT&T Mobility customers as well as those alleged in McFerren's Complaint.

## B.    Litigation and Investigation.

Proposed Class Counsel began a wide-ranging investigation into the premium mobile content industry in 2005. (*See* Declaration of Myles McGuire ¶ 2, a true and accurate copy of which is attached as Exhibit B). To date, that investigation has resulted in information gathered from over 1,000 aggrieved consumers. (McGuire Decl. ¶ 2). It has lead to an exchange of information and litigation strategy with multiple governmental agencies, including attorney general offices in Florida and Minnesota. (McGuire Decl. ¶ 2). Class Counsel has received and reviewed numerous documents produced from both the Maryland and Florida attorney generals' offices. (McGuire Decl. ¶ 2). And, most relevant, it has resulted in litigation throughout the country.

In January of 2006, Class Counsel filed the first case involving third party mobile content sold to AT&T customers. (McGuire Decl. ¶ 3). During the following 28 months, they and the members of the proposed Plaintiff's Steering Committee, filed fifteen addition lawsuits that now have joined in support of the settlement. (McGuire Decl. ¶ 3). These lawsuits, which collectively name AT&T Mobility, every major U.S. aggregator, and several third party content providers, are as follows:

- *McFerren v. AT&T Mobility LLC,* (Fulton County, GA) (Complaint is attached hereto as Exhibit C);

- *Baker v. New Motion, Inc.* et al, 2007-46363 (Fl. St. Ct.)

- *Goddard v. Google, Inc.* BC 667876 (Cal. St. Ct.);

- *Paluzzi v. mBlox, et al.*, No: 2007-CH-37213 (Cook Cty, IL),
- *Thielen v. Buongiorno USA, Inc.*, 1:06-cv-00016 (W.D. Mich.) (dismissed);
- *Walsh v. mBlox, et al.,* No. BC. BC 382356 (Cal. St. Ct.),
- *White v. AT&T Mobility,* No. 104651-08 (N.Y. Sup. Ct.)
- *Warren et al. v. OpenMarket Inc., et al.* No. 6:2007cv02043 (M.D. Fl.)
- *Jiran v. AT&T Mobility LLC, et al.*, Civ. A. No. 08-00013, (N.D. Cal.);
- *Hensley v. AT&T Mobility LLC* (Dist. Ct., 4th Jud. Dist., Hennepin Cty, Minn.);
- *Gray v. Mobile Messenger Americas, Inc. et al.,* 07-36302 (Fl. St. Ct.);
- *Fiddler v. AT&T Mobility LLC*, et al., Civ. A. No. 08-0416, (N.D. Ill.);
- *Jiran v. AT&T Mobility LLC, et al.,* Civ. A. No. 08-00013, (N.D. Cal.)*;*
- *Valdez v. Buongiorno USA, Inc. et al*, 4:07-cv-06496-CW (N.D. Cal.);
- *Knox v. m-Qube, Inc.* 1:07-cv-10124 (D.Mass.); and
- *Dedek v. AT&T Mobility LLC*, Case No. BC387728 (Sup. Ct. L.A. Cty).

(McGuire Decl. ¶ 3).

The procedural history of these cases is varied. In many cases, procedural motions—such as motions to remand or motions to compel arbitration—have been briefed and/or decided by the courts. (McGuire Decl. ¶ 4). In others, substantive motions have been filed and/or decided. (McGuire Decl. ¶ 4). Formal and informal discovery have been produced and witnesses have been made available for interviews by the various key defendants including AT&T Mobility, mQube, Verisgn, and m-Blox. (McGuire Decl. ¶ 4). The information received

in these cases has also been cross-checked against information produced in litigation involving carriers other than AT&T Mobility.

## C.    Mediation & Settlement

During the time that the parties have been litigating the issues arising from plaintiffs' claims for so-called "unauthorized" charges for third-party mobile content, counsel for plaintiffs, AT&T Mobility and several of the aggregators and third party content providers have had preliminary negotiations, which essentially centered on exchanges of information and discussions about their respective approaches to these cases. (McGuire Decl. ¶ 5). Specifically, Class Counsel met in person with both outside and in-house counsel for AT&T Mobility in Chicago, Illinois in February of 2008 and then again in Seattle, Washington in March of 2008. (McGuire Decl. ¶ 7). Class Counsel met in person with m-Qube's in-house and outside counsel in Chicago in August of 2007 and in Washington D.C. in October of 2007. (McGuire Decl. ¶ 8). Class Counsel met with mBlox's outside counsel in Chicago in November of 2007 and again in February of 2008. (McGuire Decl. ¶ 9).

As a result of these discussions, AT&T Mobility, along with several aggregators and third-party mobile content providers, and plaintiffs engaged Rodney A. Max as mediator for sessions that took place on May 12-13, 2008 in Chicago, Illinois. (McGuire Decl. ¶ 10). Although no settlement was reached after the initial two-day meeting, the parties continued to exchange information and to discuss a framework for settlement. (McGuire Decl. ¶ 11). The parties, this time without the aggregators or third-party mobile content providers, agreed to again meet with Mr. Max to mediate for an additional three days over Memorial Day weekend in the hope that a settlement could be finalized. (McGuire Decl. ¶ 11) As a result of the second round of mediation, the parties were able to reach an agreement in principle. (McGuire Decl. ¶ 12)

Only after that was accomplished, did the parties discuss attorneys' fees and class representative incentive awards. (McGuire Decl. ¶ 13). The parties' agreement was later formalized and executed on May 28, 2008. (McGuire Decl. ¶ 14).

## II.    SUMMARY OF THE PROPOSED SETTLEMENT

The key terms of the proposed settlement follow:

1.    *Class Definition.*  The settlement class is defined as follows:

> All current and former AT&T Mobility Account Holders Nationwide who, at any time from January 1, 2005 to the Notice Date, were billed and paid for Third Party Mobile Content. Excluded from the Class are the following: the Defendant, the Third Party Providers, the Claims Administrator, the Mediator, and any of their respective parent, subsidiary, affiliate or control person of the Defendant, as well as the officers, directors, agents, servants, or employees of the Defendant, any trial judge presiding over this case over any of the actions which comprise the Action or Coordinated Actions, and the immediate family members of any such Person(s).

2.    *Individual Class Member Benefits.*  AT&T Mobility has agreed to refund the amount of all unauthorized third-party mobile content charges that were billed to the settlement class from January 1, 2004 to the notice date.  If the charge recurring on a monthly basis based on a subscription or similar arrangement, the settlement class members may only recover up to three times the amount of any such recurring charge.  To be eligible for any refund, the charges must have been unauthorized and not previously refunded to your account.   The refund can come in one of two forms:  (a) a credit on their AT&T Mobility bill; or (b) a cash payment from the claims administrator.

3.    *Group Relief and Additional Relief.*

In addition to the individual relief to the Settlement Class provided above, the Defendant has agreed to provide the following group and other relief.

**A.** **AT&T Mobility Service Improvements & Assurances:** AT&T Mobility has agreed to provide disclosures regarding mobile content in its Wireless Customer Service Agreement and on its website. In addition, AT&T Mobility will provide a telephone number and website address in all bills for customers who seek to dispute a charge. AT&T Mobility has further agreed to provide and enhance as necessary the means for its customers to freely address billing issues and cancel third-party mobile content subscriptions.

**B.** **Payment of Notice and Administrative Fees:** AT&T Mobility will pay for the cost of sending the Class Notice and any other notice as required by the Court as well as all costs of administration of the settlement.

**C.** **Compensation for the Class Representative:** In addition to any award under the Settlement, and in recognition of their efforts on behalf of the Class, Tracie McFerren, Morris Fiddler and Kristen Hensley, along with the other Plaintiffs in the related cases, will share $10,000 to be paid by AT&T Mobility as appropriate compensation for serving as class representatives in this litigation.

**D.** **Payment of Attorneys Fees:** Defendant has agreed to pay Class Counsel, subject to Court approval, Four Million Three Hundred Thousand dollars ($4,300,000) in attorneys' fees and for the reimbursement of costs. AT&T Mobility has agreed that this amount is fair and reasonable and that it will not object to, or otherwise challenge, Class Counsel's application for reasonable attorneys' fees and for reimbursement of costs and other expenses. Class Counsel has, in turn, agreed not to seek more than said amount from the Court.

**4.** *Release.*

With respect to any and all Claims, and upon entry of Final Order and Judgment without further action, for good and valuable consideration, Plaintiff, on behalf of herself and the

Settlement Class and as the representative of the Settlement Class, shall expressly, and all Settlement Class members shall be deemed to have, and by operation of the final judgment contemplated by the parties agreement shall have, fully, finally, and forever expressly waived and relinquished with respect to Settled Claims, to the fullest extent permitted by law, any and all provisions, rights, and benefits of section 1542 of the California Civil Code and any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or principle of common law that is similar, comparable, or equivalent to section 1542 of the California Civil Code, which provides: "A general release does not extend to claims which the creditor does not  know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

    For the purposes of this release, "Settled Claims" means any claim, liability, right, demand, suit, matter, obligation, damage, loss or cost, action or cause of action, of every kind and description that the Settlement Class has or may have, including assigned claims, whether known or unknown, asserted or unasserted, latent or patent, that is, has been, could reasonably have been or in the future might reasonably be asserted by the Releasing Party either in the Action or in any other action or proceeding in this Court or any other court or forum, regardless of legal theory, and regardless of the type or amount of relief or damages claimed, against any of the Released Parties arising out or relating to a charge to any Account Holder for Third Party Mobile Content, including all claims that were brought or could have been brought in the Action, the Coordinated Actions or the Recycled Number Actions, and involving any allegation on any basis that such charge was unauthorized. Settled Claims include, but are not limited to, claims that the Third Party Mobile Content charges were the result of fraudulent or misleading

marketing or billing practices, the actions of minors who did not have the capacity to agree to such charges, or that were the result of receiving a "recycled" cellular telephone number.

The Release is only between the class members defined above, AT&T Mobility, and Third-Party Providers[5] and includes their respective predecessors, successors, assigns, parents, subsidiaries, divisions, departments, and affiliates, and any and all of their past, present and future officers, directors, employees, stockholders, partners, agents, servants, successors, attorneys, representatives, subrogees and assigns of any of the foregoing.

## III.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Like Federal Rule of Civil Procedure 23, O.C.G.A § 9-11-23(e) provides that "[a] class action shall not be dismissed or compromised without the approval of the court."[6] The procedure for review of a proposed class action settlement is a well-established two-step process. Alba & Conte, 4 *Newberg on Class Actions*, §11.25, at 38-39 (4th Ed. 2002). The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval." *Newberg*, §11.25, at 38-39 (quoting *Manual for Complex Litigation*, §30.41 (3rd Ed.)); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1110 (9th Cir. 2008); *In re Chicken Antitrust Litig.,* 560 F. Supp. 957, 960 (N.D. Ga. 1980). This hearing is not a fairness

---

[5] As used here, Third Party Providers means entities other than AT&T Mobility who advertise, aggregate billing for, offer, and/or sell Third Party Mobile Content, including Third Party Mobile Content Subscriptions, directly to AT&T Mobility's wireless customers as well as their marketing agents and/or licensors, and includes VeriSign, M-Qube, Jamster International SARL, and mBlox. Providers who sell Mobile Content on or through AT&T Mobility's Media Mall are not thereby Third Party Providers for the purposes of such sales.

[6] Plaintiff's Motion cites to Georgia state law where available and to federal authority due to the similarity between the two rules as well as Georgia Courts' history of looking to federal law for guidance on both the approval of this class action settlement as well as class certification. *See Sta-Power Indus. Inc. v. Avant*, 216 S.E.2d 897, 900 (Ga. Ct. App. 1975); Casurella, Jeffrey, & Bevis, John *Class Action Law in Georgia: Emerging Trends in Litigation, Certification, & Settlement,"* 49 Mercer L. Rev. 39, 59 (Fall 1997) (recognizing that "Georgia case precedent dealing with . . . class action settlements is scarce").

hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class

members of the proposed settlement and to proceed with a fairness hearing. *Newberg*, §11.25, at

38-39; O.C.G.A § 9-11-23(e)(requiring "notice of the proposed dismissal or compromise shall be

given to all members of the class . . . ."). The *Manual for Complex Litigation* (Fourth) (2004)

(the "Manual") characterizes the preliminary approval stage as an "initial evaluation" of the

fairness of the proposed settlement made by the court on the basis of written submissions and

informal presentation from the settling parties. *Manual*, § 21.632. If the court finds a settlement

proposal "within the range of possible approval," it then proceeds to the second step in the

review process—the final approval hearing. *Newberg*, §11.25, at 38-39; *In re Chicken Antirust

Litig.*, 560 F. Supp. at 960 (finding "it is well settled that a proposed settlement, taken on the

whole, need only be fair, adequate, and reasonable in light of the interests of all the parties and

not a product of fraud or collusion" in order to meet preliminary approval).

A strong judicial policy exists that favors the voluntary conciliation and settlement of

complex class action litigation. *In re Syncor*, 516 F.3d at 1101; *see also Warren v. City of

Tampa*, 693 F. Supp. 1051, 154 (M.D. Fla. 1998) (noting courts favor settlement of disputed

claims), *aff'd* 893 F. 2d 347 (11th Cir. 1998). With a settlement, the class members are ensured

a benefit as opposed to the "mere possibility of recovery at some indefinite time in the future."

*In re Domestic Air Transport.*, 148 F.R.D. 297, 306 (N.D. Ga. 1993). While this Court has

discretion regarding the approval of a proposed settlement, it should give proper deference to the

private consensual decision of the parties. *Warren*, 693 F. Supp. at 1054 ("affording great

weight to the recommendations of counsel for both parties, given their considerable experience

in this type of litigation"). In fact, when a settlement is negotiated at arms' length by

experienced counsel, there is a presumption that it is fair and reasonable. *In re Inter-Op Hip*

*Prosthesis Liab. Litig.*, 204 F.R.D. 359, 380 (N.D. Ohio 2001). Ultimately, the Court's role is to

ensure that the settlement is fundamentally fair, reasonable and adequate. *In re Syncor*, 516 F.3d

at 1100.

In determining whether the instant proposed settlement is "fair, adequate, and

reasonable," the following factors are often considered:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the
> point on or below the range of possible recovery at which settlement is fair,
> adequate and reasonable; (4) the complexity, expense and duration of litigation;
> (5) the substance and amount of opposition to the settlement; and (6) the stage of
> proceedings at which the settlement was achieved.

*Bennett v. Behring*, 737 F. Supp. 982, 986 (11th Cir. 1984); *see also Domestic Air Transport.*,

148 F.R.D. at 312-13. Finally, "approval of a class action settlement does not require a final

decision on the substantive law merits . . . and does not require the trial court to expressly

consider the law of every state involved . . . ." *Smith v. AirTouch Cellular of Ga. Inc.*, 534

S.E.2d 832, 835 fn 1 (Ga. Ct. App. 2000).

In this case, there is no question that the proposed settlement is both "fair, adequate, and

reasonable" and "within the range of possible approval." The fairness, reasonableness, and

adequacy of this settlement are apparent from the full reimbursement of all allegedly

unauthorized charges, the substantial service improvements and assurances from AT&T

Mobility, and the agreement of the parties' experienced counsel. In fact, this settlement is

entitled to a presumption of fairness, as it is the product of extensive arms' length negotiations of

the parties represented by highly experienced counsel. Although Plaintiff's counsel is confident

in the strength of the claims alleged in the Complaint and that they would ultimately prevail at

trial, their experience imparts the wisdom that litigation is inherently risky. When the strengths

of the Plaintiff's claim are weighed against the legal and factual obstacles combined with the

complexity of class action practice, it is apparent that the proposed settlement is clearly in the best interest of class members as it approaches the recovery they could recover at trial.

The amount of recovery to the class to the proposed class members is also unquestionably fair, adequate, and reasonable: AT&T Mobility has agreed to refund the amount of all unauthorized third-party mobile content charges paid by the class members, subject to the limitation that if the charge was recurring on a monthly basis based on a subscription that only three times the recurring charge can be recovered. In addition, AT&T Mobility has also agreed to take steps to inform its customers about mobile content, the ability to restrict its purchase through parental controls, and to provide enhanced methods for its customers to dispute unauthorized charges and cancel mobile content subscriptions. Given the strength of this settlement, the parties expect little no significant opposition to the settlement by class members;[7] in fact, the settlement is supported not only by McFerren and AT&T Mobility, but also by the lead Plaintiffs and their respective counsel in fifteen other separately pending class actions.

Finally, although the present suit is in its infancy, the stage of the related proceedings that formed the foundation of this settlement provides an ample basis on which to evaluate the proposed settlement. The numerous pending class actions involving alleged unauthorized charges for mobile content have allowed the parties to conduct extensive investigations into the

---

[7] Given that over 70 million people will receive direct notice of this settlement, there is virtually no likelihood that there will be no filed objections. Class Counsel expects that these objections will fall into four categories. First, there will be "philosophical" objections, i.e. objections made by attorneys, class members, or think tanks who are opposed to class actions and seek to use large settlements as a venue to make political statements. Second, there will be objections filed by serial objectors, who look to object to large class actions and threaten to hold up settlements as a way to extract payouts. Third, due to the existence of the MDL litigation, it is likely that so-called "competing" plaintiffs' firms will be motivated to search for reasons to object to this settlement, again due to motivations separate and apart from the interests of the class. Finally, there will likely be the "random" objections, filed by pro se objectors or law firms that have not taken the time to understand the settlement and whose objections will reveal that approach. Based both on the procedure employed in reaching the settlement and the results ultimately obtained, Class Counsel believe that these likely objections will not gain any traction.

relevant facts and law. It has allowed the parties to test certain issues through motion practice.

In the end, each party had the necessary information to evaluate the strengths and weaknesses of

their cases to mediate effectively. Armed with this information, the parties were able to reach

the present settlement only after five days of mediation. As such, this settlement is well within

the range of possible approval and should be preliminarily approved by this Court.

## IV.    THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED

For settlement purposes only, the parties ask the Court to certify the Settlement Class

defined above. Likewise, for settlement purposes only, the parties agree this action satisfies the

criteria for certification under Georgia law:

> (1) The class is so numerous that joinder of all members is impracticable; (2)
> There are questions of law or fact common to the class; (3) The claims or
> defenses of the representative parties are typical of the claims or defenses of the
> class; and (4) The representative parties will fairly and adequately protect the
> interests of the class.

O.C.G.A. § 9-11-23(a). As in most other jurisdictions, to certify a class the court must find that

each of the four § 9-11-23(a) requirements are satisfied as well as a finding that "the questions of

law or fact common to the members of the class predominate over any questions affecting only

individual members, and that a class action is superior to other available methods for the fair and

efficient adjudication of the controversy." *See* O.C.G.A § 9-11-23. Georgia courts deciding

whether to certify a class must enter and written order addressing the above factors specifying

the findings of fact and conclusions of law on which the court has made its decision; however,

the court may rely on the stipulations of the parties regarding whether the factors have been

established. O.C.G.A § 9-11-23(f). In this case, the parties have stipulated to the certification of

the class for settlement purposes.

## A.    The Class is Sufficiently Numerous

The first prerequisite to class certification—that the class be so numerous that joinder is impracticable—is a threshold issue. *Murphy v. Hope*, 195 S.E.2d 24, 25 (Ga. 1972). "[A] class action [may] proceed upon a mere estimation of the size of the proposed class." *Amswiss Int'l Corp. v. Heublein*, 69 F.R.D. 663, 666 (N.D. Ga. 1975). The numerosity requirement is easily satisfied "as few as 40 class members should raise a presumption that joinder in impracticable." 1 *Newberg* § 3.5; *see also Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988). In this case, the estimated number of class members is in the tens of millions. Given the approximate number of class members, numerosity is easily met.

## B.    Common Issues of Fact and Law Predominate

Section 9-11-23(a)(2) is satisfied when "[t]here are questions of law or fact common to the class." Although common questions of law or fact must predominate, the law does not require plaintiffs to prove the complete absence of individual issues because there is no need to burden the Court or the class with requiring each member to pursue their own action. *Trend Star Cont'l Ltd. v. Branham*, 469 S.E.2d 750, 752-53 (Ga. Ct. App. 1996). "The character of the right to be enforced may be common although the facts may be different as to each class member." *UNUM Life Ins. Co. of Am. v. Crutchfield*, 568 S.E.2d 767, 769 (Ga. Ct. App. 2002)(quoting *Ga. Inv. Co. v. Norman*, 190 S.E. 48, 50 (Ga. 1972)). Common questions predominate where consumers with agreements from a common source seek to enforce common rights and seek common relief. *UNUM Life Ins. Co.*, 568 S.E.2d at 769; *see also J.M.I.C. Life Ins. Co. v. Toole*, 634 S.E.2d 123, 128 (Ga. Ct. App. 2006)(upholding certification of class involving laws of 38 states where the class members executed materially similar form contracts and no evidence was

presented showing the laws of the different states would yield different results among members of the class).

In the present litigation, all class members share the common issue of having entered into substantially similar form contracts for wireless service with AT&T Mobility and were then subsequently billed by AT&T Mobility for mobile content that they allegedly did not authorize. In addition, such common questions for the settlement including whether the settlement is fair, and what is the proper form of notice.

### C.    Plaintiff's Claims Are Typical of The Claims of the Class

McFerren, Fiddler and Hensley, who seek to be appointed class representatives, must also show that their claims are typical of those of the putative class members. O.C.G.A. § 9-11-23(a)(3); *Life Ins. Co. of Ga. v. Meeks*, 617 S.E.2d 179, 185 (Ga. Ct. App. 2005). "[T]ypicality measures whether a significant nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall,* 334 F.3d 1253, 1256 (11th Cir. 2003) (internal quotation omitted). McFerren, Fiddler and Hensley's claims are each typical of the claims of the class in that they "arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984); *see also Cooper v. Southern Co.,* 390 F.3d 695, 714 (11th Cir. 2004)(finding that "[n]either the typicality nor the commonality requirement mandates that all putative class members share identical claims, and . . . factual differences among the claims of the putative members do not defeat certification." In fact, "a strong similarity of legal theories will satisfy the typicality requirement despite substantial factual differences." *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985); *see also Cooper*, 390 F.3d at 714 (finding that named representative need only share the same "essential characteristics" or the larger class). Simply put, when the same

unlawful course of conduct is directed at both the named plaintiff and the members of the proposed class, the typicality requirement is met. *Kennedy v. Tallant*, 710 F.2d 771, 717 (11th Cir. 1983).

In this case, McFerren, Fiddler and Hensley and the proposed class suffered the same or similar injuries that resulted from the Defendant's alleged practice billing consumers for unauthorized charges for mobile content. Accordingly, the Plaintiffs' claims are typical of those of the class and Section 9-11-23(a)(3) is satisfied.

**D.    Plaintiffs and Their Counsel Adequately Represent the Class**

The final Section 9-11-23(a) requirement mandates consideration of the Plaintiffs' ability to "fairly and adequately protect the interests of the class." O.C.G.A § 9-11-239(a)(4). McFerren, Fiddler and Hensley shoulder the burden of demonstrating their adequacy as class representatives, which necessarily includes a showing that they are members of the class they seek to represent. *McGarry v. Cingular Wireless, LLC*, 599 S.E.2d 34, 36 (Ga. Ct. App. 2004). The remaining determination of adequacy of representation rests on whether the attorneys representing the class are experienced and competent to conduct the litigation, and whether the plaintiffs' interests are antagonistic to those of the class. *Jones v. Douglas County*, 418 S.E.2d 19, 24 (Ga. 1992). The Court may also require a showing that other putative class members share in the Plaintiff's dissatisfaction with the Defendant's conduct. *See id.* at 25.

In this case, McFerren, Fiddler and Hensley are members of the proposed class and have the same interests as its members—all have been charged for allegedly unauthorized mobile content through the Defendant. Class Counsel has also heard from over 1,000 individuals who have expressed dissatisfaction with AT&T alleged conduct. (McGuire Decl. ¶ 2). Further, proposed Class Counsel and members of the Plaintiff's Steering Committee are well respected

members of their respective legal communities, have regularly engaged in major complex

litigation, have had extensive experience in consumer class action lawsuits, including ones

similar to the instant case. (*See* Firm Resumes of KamberEdelson LLC; Boone & Stone;

Lockridge Grindal Nauen PLLP; Giskan, Solotaroff, Anderson, & Stewart, and The Jacobs Law

Firm Chtd, attached as Exhibits D-H, respectively). Accordingly, McFerren, Fiddler, Hensley

and their counsel adequately represent the class.

### E.    A Class Action is the Superior Method of Adjudicating these Consumer Claims

In addition to satisfying the Section 9-11-23(a) prerequisites, the Court must also

determine both that the common questions of law and fact predominate over individual issues

and "that a class action is superior to other methods available for the fair and efficient

adjudication of the controversy." O.C.G.A. § 9-11-23(b)(3). In making its determination,

pertinent inquires include:

> (A) The interest of members of the class in individually controlling the prosecution of . . . separate actions; (B) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) The desirability or undesirability of concentrating the litigation of claims in the particular forum; and (D) The difficulties likely to be encountered in the management of a class action.

O.C.G.A. § 9-11-23(b)(3)(A-D). In consumer class actions, "[a] class based effort is more

effective than an individual consumer in getting a defendant to modify its conduct." Newberg, §

21.1 at 386. The certification of consumer class actions "enable[s] class members to share in

financial recovery which they might otherwise never pursue on their own behalf, [and] also

provides an opportunity to educate a segment of the public, those included in the class, or the

obligations . . . owed to them." *Duran v. Credit Bureau, Inc.,* 93 F.R.D. 607, 610 (D. Ariz.

1982)(quoting *Watkins v. Simmons and Clark,* 618 F.2d 398, 404 (6th Cir. 1980).

In this case and especially in the context of settlement, the issues of fact and law common to the class present in this litigation predominate over individual issues. AT&T Mobility's alleged practice of billing its customers for unauthorized charges is common to the class. The only real distinction among class members is the number of unauthorized mobile content charges they were billed for by the Defendant. However, such variations do not defeat class certification, as the exact amount of damages is invariably an individual question. *See Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975).

In addition, class relief offers a clearly superior alternative to other forms of adjudicating these cases. The claims of the named Plaintiff and the proposed class are small, discouraging the individual prosecution of their claims. Absent a class action, the Defendant would not be as motivated to provide the service improvements and assurances guaranteed by the proposed settlement and its customers will become more knowledgeable about the pervasiveness of unauthorized charges for mobile content. Additionally, although the present action was recently filed, these matters are currently ripe for settlement as they are the culmination of hard-fought negotiation concerning a multitude of similar suits filed by class counsel and the Plaintiff's Steering Committee that have been pending since January of 2006. It is fitting that the settlement of this class action occurs in this Court, given AT&T Mobility's relationship to the State of Georgia. Finally, because the action will now settle, the Court need not consider issues of manageability relating to trial. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997)(citation omitted) (finding that "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial"). Accordingly, this Court should enter an order certifying the proposed class for the purposes of this settlement.

## V.    THE PROPOSED NOTICE AND FORM OF NOTICE SHOULD BE APPROVED

Pursuant to the Settlement Agreement, Defendant has agreed to notify the class of this settlement in several ways. First, AT&T Mobility will publish Notice in USA TODAY and PARADE within ninety (90) days after the preliminary approval of this settlement.  Second, direct notice will be provided to current AT&T Mobility customers via a bill insert within 120 days after entry of the preliminary approval order, which will be inserted in customers monthly bill and an electronic copy will be sent via email to those customers who receive bills electronically.  Finally, the settlement administrator will erect a settlement website that will serve as a replacement for a typical "long-form" notice and will provide links to the Settlement Agreement and provide for the on-line submission of claims.  Copies of the Proposed Notices are attached as Exhibits 2-4 to the Settlement Agreement attached here as Exhibit A.

The proposed notices are neutral in tone and neither promote nor discourage the assertion of claims.  The Notices also provide the settlement class members with a detailed explanation of their options to allow each of them to make an informed decision.  The parties request the Court to approve the form and methods of notice proposed.

## VI.    PROPOSED PRELIMINARY SCHEDULE

The parties propose the following schedule leading to the Fairness Hearing for final approval of the settlement:

1.    Website Notice Posted by Settlement Administrator: shortly after entry of Preliminary Approval Order (PAO).

2.    Notice Published in USA TODAY and PARADE:  Within 90 days after PAO entered.

3.    Defendant will send out Bill Insert Notice:  Within 120 days after PAO entered.

4.    Deadline for Opt-outs/Objections:  14 days prior to Final Settlement Hearing

Date.

5.   Submission of papers in support of final approval of settlement and in response to objections: 7 days prior to Final Settlement Hearing Date.

6.   Final Fairness Hearing: Date to be set by the parties and the Court.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that (1) the Court certify the requested settlement class, (2) appoint Tracie McFerren, Morris Fiddler and Kristen Hensley as class representatives, (3) appoint Class Counsel as set forth above, (4) preliminarily approve the proposed settlement, (5) approve the form and methods of proposed Notice, and (6) that the Court order the issuance of the Notice and all other actions detailed in the schedule proposed in Section VI above.

Dated: _May 28_____, 2008          KAMBEREDELSON, LLC

                                   _____

                                   Jay Edelson
                                   53 W. Jackson Blvd., Suite 550
                                   Chicago, IL 60604
                                   Telephone: 312.589.6370
                                   Facsimile: 312.913.9401

                                   *On Behalf of Plaintiffs and the Class*

Dated: _____, 2008     BOONE & STONE LP

                                   _____

                                   **LIAISON CLASS COUNSEL**

# Exhibit A

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

TRACIE MCFERREN, individually and on behalf )
of a class of similarly situated individuals,    )
                                                  )
                          Plaintiff,              )      No.
                                                  )
                    v.                            )      Judge Bonner
                                                  )
AT&T MOBILITY LLC,                                )
                                                  )
                          Defendant.              )

## CLASS ACTION SETTLEMENT AGREEMENT

THIS CLASS ACTION SETTLEMENT AGREEMENT (the "Agreement") is entered by

and among Plaintiff in this Action, for herself and on behalf of the Settlement Class, and AT&T

Mobility LLC ("AT&T Mobility") (together, the "Parties"). Subject to Court approval as required by

the applicable law and rules, and as provided herein, the Parties hereby stipulate and agree that, in

consideration of the promises and covenants set forth in this Agreement and upon the entry by the

Court of a Final Order and Judgment, this Action shall be settled and compromised upon the terms

and conditions contained herein.

WHEREAS, Plaintiff filed this action captioned *McFerren v. AT&T Mobility LLC,* No. 2008-

EV-004400F (Fulton County, GA) (the "Complaint"), alleging claims for damages and injunctive

and declaratory relief against AT&T Mobility arising out of the sale and marketing of Third Party

Mobile Content, such as ring tones, wallpaper, news and information alerts, and other digital and

electronic content to AT&T Mobility wireless telephone subscribers; and

WHEREAS, a number of putative class actions have been filed by Class Counsel and

members of the Plaintiff's Steering Committee against and/or involving AT&T Mobility and certain Third Party Content Providers and related entities, including VeriSign, Inc. ("VeriSign"), M-Qube, Inc. ("M-Qube"), Jamster International, SARL ("Jamster") and Mblox, Inc. ("Mblox") (together with the other entities identified below, the "Third Party Content Providers") regarding the marketing and sale of Third Party Mobile Content. These actions are listed below and defined herein as the Coordinated Actions; and

WHEREAS, other putative class actions have been filed by Class Counsel and members of the Plaintiff's Steering Committee, alleging claims arising out of the imposition of charges for Third Party Mobile Content authorized by the previous owner of a mobile number but not the current owner charged for the Mobile Content. These actions are listed below and defined herein as the Recycled Number Actions; and

WHEREAS, AT&T Mobility has denied and continues to deny all Plaintiff's claims in the Action and other similar actions, and has denied any wrongdoing or liability to all plaintiffs in all of the pending actions; and

WHEREAS, Class Counsel have conducted an examination and investigation of the facts and law relating to the matters set forth in the Complaint regarding the claims and potential defenses of AT&T Mobility; and

WHEREAS, the Parties have engaged in extensive, arms-length negotiations, including multiple, in person sessions in front of Rodney Max, Esquire, Upchurch Watson White & Max Mediation Group in his capacity as a mediator, and reached this settlement agreement; and

WHEREAS, based upon extensive analysis of the facts and the law applicable to Plaintiffs' claims in the Coordinated Actions, and taking into account the burdens and expense of litigation,

including the risks and uncertainties associated with protracted trials and appeals, as well as the fair, cost-effective and assured method of resolving the claims of the Settlement Class, Class Counsel have concluded that this Agreement provides substantial benefits to the Settlement Class and the public as a whole, and is fair, reasonable, adequate and in the best interests of Plaintiff and the Settlement Class; and

WHEREAS, AT&T Mobility has similarly concluded that this Agreement is desirable in order to avoid the time, risk and expense of defending multiple and protracted litigation, and to resolve finally, completely and globally the pending and potential claims of Plaintiff and the Settlement Class, and thus to resolve all of the litigation pending and described above; and

WHEREAS, the Parties agree that all potential Settlement Class Members shall have an individual right to be excluded ("opt out") from the Settlement Class (as provided in this Agreement), such that participation in the settlement benefits shall be voluntary;

NOW, THEREFORE, the Parties stipulate and agree that any and all Settled Claims against all Released Parties regarding the marketing and sale of Third Party Mobile Content to AT&T Mobility subscribers shall be finally settled and resolved on the terms and conditions set forth in this Agreement, subject to Court approval of this Agreement, as a good faith, fair, reasonable and adequate settlement under applicable rules, regulations and laws.

## I.    DEFINITIONS

As used in this Agreement and the exhibits hereto, in addition to any definitions set forth elsewhere in this Agreement, the following terms shall have the meanings set forth below:

"*Action*" means the case captioned *McFerren v. AT&T Mobility LLC*, No.____,

**SETTLEMENT AGREEMENT**

(Fulton County GA).

"*Account Holder*" means any Person with an account for wireless service with AT&T Mobility.

"*Account Holder Claims*" means any claims arising out or relating to a charge to any Account Holder for Third Party Mobile Content, including all claims that were brought or could have been brought in the Action, the Coordinated Actions or the Recycled Number Actions.

"*Agreement*" means this Settlement Agreement (including all exhibits hereto).

"*Approved Claim*" means a claim by a member of the Settlement Class that is a timely (submitted before the Claims Deadline), truthful, and complete claim and that provides at least the following information:

> (i)    Full name, current address, home phone number, current or former AT&T Mobility wireless number and/or AT&T Mobility wireless account number;
>
> (ii)    Total amount of refund sought, along with the date, description of charge, and amount of each Third Party Mobile Content charge to be refunded;
>
> (iii)    Certification under oath that each of these charges for which a refund is sought was unauthorized and that no refund was previously sought and/or provided on any such charge.

"*AT&T Mobility*" means AT&T Mobility LLC, f/k/a Cingular Wireless LLC, and all of its current and former parents, affiliates, subsidiaries, predecessors, successors and assigns.

SETTLEMENT AGREEMENT

"*AT&T Mobility's Counsel*" means Drinker Biddle and Reath LLP and McKenna, Long & Aldridge LLP.

"*Claimant*" means a person or entity that submits a claim form for a Settlement Benefit.

"*Claim Form*" means the form attached hereto as Exhibit 1, as it may be revised and as approved by the Court.

"*Claims Administration Expenses*" means the expenses incurred by the Claims Administrator in handling claims by Class Members.

"*Claims Administrator*" means the Person selected by the Parties and approved by the Court to oversee the processing and payment of Class Members' claims as set forth in this Agreement. The Parties agree that Rust Consulting shall perform the duties of Claims Administrator and shall act as Claims Administrator.

"*Claims Deadline*" means the date by which all Claims Forms must be received to be considered timely and shall be set as the date ninety (90) days after entry of the Judgment. The Claims Deadline shall be clearly set forth in the Court Order granting final approval of this Agreement as well as on the front page of all Claims Forms.

"*Class Counsel*" means Lead Class Counsel consisting of attorneys Jay Edelson, Scott Kamber and Myles McGuire of KamberEdelson, LLC and "Liaison Class Counsel" consisting of David W. Boone, William S. Stone and Aileen Page of Boone & Stone.

"*Class Notice*" means the form of Court-approved notice (or notices) of this Settlement Agreement that are directed to the Class. The Parties have proposed that the Court approve the notices in the form of Exhibits 2, 3 and 4 to this Agreement.

"*Class Representatives*" shall mean the plaintiff in this Action, Tracie McFerren, as well as

the following plaintiffs from the Coordinated Actions: Morris Fiddler and Kristen Hensley.

"*Coordinated Actions*" means the following pending class actions filed or pending in other state or federal courts asserting similar class claims whose plaintiffs and counsel have agreed to the terms and conditions of this settlement: *Baker v. Sprint, New Motion, Inc.*, 2007-46363 (Fl. St. Ct.); *Dedek v. AT&T Mobility LLC*, Case No. BC387728, (Sup. Ct. L.A. County); *Fiddler v. AT&T Mobility LLC, et al.*, Civ. A. No. 08-0416, (N.D. Ill.); *Goddard v. Google, Inc.* BC 667876 (Cal.St.Ct.); *Gray v. Verizon, Mobile Messenger Americas, Inc.*, 07-36302 (Fl. St. Ct.); *Hensley v. AT&T Mobility LLC* (Dist. Ct., 4th Jud. Dist., Hennepin Cty, Minn.); *Jiran v. AT&T Mobility LLC, et al.*, Civ. A. No. 08-00013, (N.D. Cal.), *Paluzzi v. mBlox, et al.*, No: *2007-CH-37213* (Cook Cty, Illinois), *Thielen v. Buongiorno USA, Inc.*, 1:06-cv-00016 (W.D. Mich.); *Walsh v. mBlox, et al.*, No. BC. BC 382356 (Cal.St.Ct.), *Warren et al. v. Verisign, et al.* No. 6:2007cv02043 (M.D. Fl.) and *White v. AT&T Mobility* (Supreme Court of New York County) and the Recycled Number Actions.

"*Court*" means the Superior Court of Fulton County, Georgia.

"*Defendant*" means AT&T Mobility.

"*Effective Date*" means the date on which the Judgment becomes final and not subject to appeal under the applicable law or, in the event of a timely appeal from the entry of the Judgment, the date on which such appeal is resolved and the Judgment is not subject to further review.

"*Fairness Hearing*" means the hearing to be conducted by the Court to determine the fairness, adequacy and reasonableness of this Settlement Agreement in accordance with applicable jurisprudence.

"*Judgment*" means the Order and Final Judgment to be entered by the Court, approving this Agreement without material alterations, as fair, adequate and reasonable in accordance with

applicable jurisprudence, confirming the certification of the Class, and issuing such other findings and determinations as the Court or the parties deem necessary and appropriate to effectuate the terms of this Agreement.

*"Mediator"* means Rodney Max, Esquire of Upchurch Watson White & Max Mediation Group.

*"Mobile Content"* refers to content, applications, and goods and services such as ring tones, wallpaper, news and information alerts, and other digital and electronic content charged to the wireless bill of an Account Holder.

*"Nationwide"* means the 50 United States and its territories.

*"Notice Date"* means the date upon which Class Notice is first disseminated to the Class.

*"Notice Expenses"* means all reasonable costs and expenses expended in the execution of the Notice Plan, including (i) all reasonable costs and expenses incurred in connection with preparing, printing, mailing, disseminating, posting, promoting, emailing, internet hosting and publishing the Notice to the Class of the proposed Settlement, identifying and notifying Class Members and informing Class Members of the proposed settlement and (ii) any necessary notice and notice-related expenses.

*"Notice of Intention to Appear and Object"* is the written communication that may be filed by a Class member in order to object to this Agreement.

*"Notice Plan"* means the proposed plan of disseminating notice of the Agreement to Class Members.

*"Opt-Out Period"* means the period for filing a Request For Exclusion to be set by the Court in this action. The deadline for filing Opt-Outs will be clearly set forth in the Class Notice.

"*Person*" means any individual, corporation, trust, partnership, limited liability company or other legal entity and their respective successors or assigns.

"*Plaintiff*" means Tracie McFerren and the Settlement Class.

"*Plaintiff's Steering Committee*" means the committee consisting of chairman Robert Shelquist of Lockridge Grindal Nauen, P.L.L.P., Orin Giskan, of Solotaroff, Anderson & Stewart, LLP, David Healey of the Offices of David Healy and John Jacobs of The Jacobs Law Firm, Chtd.

"*Preliminary Approval*" means the Court's conditional certification of the Class, preliminary approval of this Agreement, and approval of the form and dissemination of Class Notice.

"*Recycled Number Actions*" means actions arising out of the imposition of charges for Third Party Mobile Content authorized by the previous owner of a mobile number but not the then-current owner such as *Jiran v. AT&T Mobility LLC, et al.*, Civ. A. No. 08-00013, (N.D. Cal.), *Valdez v. Buongiorno USA, Inc., m-Qube, Inc.* 4:07-cv-06496-CW (N.D. Cal.); *Knox v. m-Qube, Inc.* 1:07-cv-10124 (D.Mass.).

"*Released Party*" means Defendant (as defined above) and the Third Party Providers (as defined below) including their respective predecessors, successors, assigns, parents, subsidiaries, divisions, departments, and affiliates, and any and all of their past, present and future officers, directors, employees, stockholders, partners, agents, servants, successors, attorneys, representatives, subrogees and assigns of any of the foregoing.

"*Releasing Party*" means Plaintiff and each member of the Settlement Class and any Person claiming by or through him/her/it as his/her/its spouse, child, heir, associate, co-owner, attorney, agent, administrator, devisee, predecessor, successor, assignee, representative of any kind, shareholder, partner, director, employee, or affiliate.

*"Request For Exclusion"* is the written communication that must be filed with the Claims Administrator that is postmarked on or before the end of the Opt Out Period if a Class Member wishes to be excluded from the Settlement Class.

*"Settled Claim"* means any claim, liability, right, demand, suit, matter, obligation, damage, loss or cost, action or cause of action, of every kind and description that the Releasing Party has or may have, including assigned claims, whether known or unknown, asserted or unasserted, latent or patent, that is, has been, could reasonably have been or in the future might reasonably be asserted by the Releasing Party either in the Action or in any other action or proceeding in this Court or any other court or forum, regardless of legal theory, and regardless of the type or amount of relief or damages claimed, against any of the Released Parties arising out or relating to a charge to any Account Holder for Third Party Mobile Content, including all claims that were brought or could have been brought in the Action, the Coordinated Actions or the Recycled Number Actions, and involving any allegation on any basis that such charge was unauthorized. Settled Claims include, *inter alia*, claims that the Third Party Mobile Content charges were the result of fraudulent or misleading marketing or billing practices, the actions of minors who did not have the capacity to agree to such charges, or that were the result of receiving a "recycled" cellular telephone number. Without limiting the generality of the foregoing, Settled Claim shall include, with regard to the foregoing subject matter:

(1)    any class, group, collective or individual claim for any breach or violation of any federal or state statute, case law, common law or other law;

(2)    any claim for breach of any duty imposed by law, by contract or otherwise; and

(3)    any claim for damages, injunctive relief, declaratory relief, class damages or relief, penalties, punitive damages, exemplary damages, restitution, rescission or any claim for damages based upon any multiplication or enhancement of compensatory damages associated with the above.

*"Settlement Benefit"* means the benefits a Settlement Class Member may receive pursuant to this Settlement Agreement.

*"Settlement Class"* shall consist of all current and former AT&T Mobility Account Holders Nationwide who, at any time from January 1, 2004 to the Notice Date, were billed for Third Party Mobile Content. Excluded from the Class are the following: the Defendant, the Third Party Providers, the Claims Administrator, the Mediator, and any of their respective parent, subsidiary, affiliate or control person of the Defendant, as well as the officers, directors, agents, servants, or employees of the Defendant, any trial judge presiding over this case over any of the actions which comprise the Action or Coordinated Actions, and the immediate family members of any such Person(s).

*"Special Master"* means an independent person agreed upon by the parties to evaluate those claims that have been challenged by AT&T Mobility or rejected by the Claims Administrator after an initial appeals process.

*"Third Party Mobile Content"* means Mobile Content sold by Third Party Providers directly to AT&T Mobility wireless customers and charged to the wireless bill of one of AT&T Mobility's wireless customers, and excludes Mobile Content sold through the AT&T Media Mall or directly by AT&T Mobility to such Account Holders.

*"Third Party Providers"* means entities other than AT&T Mobility who advertise, aggregate billing for, offer, and/or sell Third Party Mobile Content, including Third Party Mobile Content

Subscriptions, directly to AT&T Mobility's wireless customers as well as their marketing agents and/or licensors, and includes VeriSign, M-Qube, Jamster International SARL, and Mblox. Providers who sell Mobile Content on or through AT&T Mobility's Media Mall are not thereby Third Party Providers for the purposes of such sales.

## II.    FOR SETTLEMENT PURPOSES ONLY

A.    This Agreement, whether or not consummated, and any proceedings taken pursuant to this Agreement are for settlement purposes only, and neither the fact of, nor any provision contained in this Agreement or its exhibits, nor any action taken hereunder shall constitute, be construed as, or be admissible in evidence as any admission of the validity of any claim or any fact alleged by Plaintiff in this Action or in any other pending action or of any wrongdoing, fault, violation of law, or liability of any kind on the part of AT&T Mobility or admission by AT&T Mobility of any claim or allegation made in this Action or in any other action, nor as an admission by Plaintiff, Settlement Class Members or Class Counsel of the validity of any fact or defense asserted against them in this Action or in any other action.

B.    This Agreement is without prejudice to the rights of AT&T Mobility to: (i) seek to compel arbitration of any claim in any forum, excepting claims arising under this Agreement by class members who have not opted-out; (ii) oppose Class certification in this Action should this Agreement not be approved or implemented for any reason; (iii) oppose certification in any other proposed or certified class action; or (iv) use the certification of the Class to oppose certification of any other proposed or existing class arising out of or related to the Settled Claims.

## III.    REQUIRED EVENTS AND COOPERATION BY THE PARTIES

### A.    Preliminary and Final Approval

Promptly after execution of this Agreement, Class Counsel shall submit this Agreement to the Court for its Preliminary Approval and shall move the Court for one or more orders which by their terms shall:

1.    Appoint the Class Representatives as the representatives of the Settlement Class;

2.    Appoint Lead and Interim Class Counsel, as well as the Plaintiff's Steering Committee;

3.    Preliminarily and conditionally certify the Class under Ga. Code Ann., § 9-11-23 for settlement purposes only and preliminarily approve this Agreement for purposes of issuing notice to the Class;

4.    Approve the form and contents of the Settlement Class Notice and the method of its dissemination to Class Members;

5.    Provides for appropriate confirmatory discovery; and

6.    Schedule the Fairness Hearing to review comments and/or objections regarding this Agreement, to consider its fairness, reasonableness and adequacy, and the application for an award of attorneys' fees and reimbursement of expenses and to consider whether the Court shall issue a Judgment approving the Settlement, granting Class Counsel's application for fees and expenses, and dismissing the Action with prejudice.

SETTLEMENT AGREEMENT

**B.      Cooperation**

The Parties shall, in good faith, cooperate, assist and undertake all reasonable actions and steps in order to accomplish these required events on the schedule set by the Court.

**C.      Dismissal of Coordinated Actions**

Class Counsel shall dismiss, with prejudice, the Coordinated Actions or, to the extent appropriate, amend the pleadings to limit the respective classes to exclude Settled Claims, no later than thirty (30) days following the Effective Date, and shall cooperate in seeking stays of such actions as to Settled Claims prior to the Effective Date.

**D.      Certification of Settlement Class**

For settlement purposes only, AT&T Mobility and the Settlement Class stipulate to the certification of the Settlement Class, as defined above.

This Agreement is contingent upon the Court finally certifying the Settlement Class as defined in the preceding paragraph. Should the Court fail to certify the Settlement Class substantially as defined in the preceding paragraph, the Parties shall each have the option of rescinding this Agreement within 10 business days of the date the Court grants final certification of the class in this Action. Should the Court fail to certify a class or approve this Agreement, this Agreement may not be used by the Parties for any purpose related to class certification.

**IV.    SETTLEMENT BENEFITS**

**A.      Service Improvements and Assurances.** AT&T Mobility has agreed that it shall, as soon as practicable but in no event later than a date 45 days after preliminary approval is entered in this action, institute the following:

1.    AT&T Mobility shall include in its Wireless Service Agreement a disclosure concerning Mobile Content substantially consistent with the following:

Mobile Content

I understand that wireless devices may be used to purchase goods, content, and services (including subscription plans) like ring tones, graphics, games, horoscopes and news alerts from AT&T and other companies ("Mobile Content").  I understand that I am responsible for all authorized charges associated with such purchases from any device assigned to my account, that these charges will appear on my bill (including charges on behalf of other companies), and that such purchases can be restricted by using parental controls available from your AT&T salesperson, at www.wireless.att.com, or by calling AT&T.

2.    AT&T Mobility shall post on its website a disclosure concerning Mobile Content substantially consistent with the following:

Your wireless devices may be used to purchase goods, content, and services (including subscription plans) like ring tones, graphics, games and news alerts, from AT&T or other companies ("Mobile Content").  You are responsible for all authorized charges associated with such purchases from any device assigned to your account.  Charges for Mobile Content will appear on your bill (including charges on behalf of other companies), and Mobile Content purchases can be restricted by use of parental controls or similar features.  Parents should consider using parental controls available from

14 of 32

AT&T. Please visit our website at www.wireless.att.com or speak with an

AT&T customer representative for further information.

3.      All bills, electronic and paper, will disclose the telephone number for Account

Holders who seek to dispute a charge to call and reach an appropriate customer service representative

as well as the website address for performing the same.

4.      AT&T Mobility will continue to provide and enhance as necessary the systems,

processes and training to support the ability for Account Holders to have a free and ready means to

address billing issues and cancel Third Party Mobile Content subscriptions via a single point of

contact or through an equally effective means to address such issues.

**B.      Refund Benefit.**

1.      ***Refunds.***  AT&T Mobility shall credit or refund any current or former

Account Holder who submits a valid and timely Claim Form for the amount of past unauthorized

charges for Third Party Mobile Content purchases ("Settlement Benefit") billed to a member of the

Settlement Class, subject to the provisions of this Settlement Agreement and in accordance with the

claims process set forth herein.

2.      ***Subscription Charge Claims.***  With respect to any Account Holder Claims

relating to charges associated with Third Party Mobile Content sold by subscription, the Settlement

Benefit shall be capped at an amount equal to three times the monthly subscription charge.

**V.    CLAIMS PROCESS**

**A.      Claims Administrator's Duties**      The Claims Administrator shall, under

the supervision of the Court, administer the relief provided by this Settlement Agreement by

resolving claims in a rational, responsive, cost effective and timely manner.   The Claims

Administrator shall maintain reasonably detailed records of its activities under this Agreement. The Claims Administrator shall maintain all such records until expiration of the Term of Agreement and such records will be made available to Class Counsel and AT&T Mobility's Counsel. The Claims Administrator shall also provide reports and other information to the Court as it may require. The Claims Administrator shall provide Class Counsel and AT&T Mobility's Counsel with such information concerning notice, administration and implementation of the Settlement. Should the Court request, the Parties, in conjunction with the Claims Administrator, shall submit a timely report to the Court summarizing the work performed by the Claims Administrator, including a report of all amounts paid to Class Members. The Claims Administrator shall cause a website to be created containing claims information and relevant documents. The Parties shall agree on all information and documents to be posted on this website.

**B.     Written and Electronic Claims Submission**

Settlement Class Members are entitled to Settlement Benefit(s) through submission of an Approved Claim. The claims process shall be conducted online through the claims website administrated by the Claims Administrator. Any Class member unable to complete an online Claim Form may call a toll free number, provide their name and address, and receive a paper Claim Form. Paper Claim Forms may be mailed to the Claims Administrator and must be postmarked on or before the Claims Deadline. The paper Claim Form agreed to by the Parties is attached hereto as Exhibit 1. The Claims Administrator shall reject any claims not submitted in accordance with the above provided, however, that nothing in this provision shall be construed to prevent the Claims Administrator, in its discretion, from permitting a Settlement Class Member to remedy deficiencies in such Settlement Class Member's Claim Form.

C.    **Processing and Validation of Claims**

1.    *Claims Must be for Unauthorized Charges.*  All claims shall be validated by the Claims Administrator to establish that the Third Party Mobile Content charges associated with each claim were not authorized.

2.    *Claims Administrator Review.*  The Claims Administrator may reject a claim, or any part of a claim, where there is evidence of customer abuse or fraud or where indicia of authorization are present.  For example, the Claims Administrator may reject a claim or any portion of a claim if it appears that the Claimant has previously received multiple refunds for the same type of charge that is being requested for refund in the Claim Form, provided that such charges do not arise from a subscription cancelled by the Account Holder and not reactivated by an authorized user on the account.

3.    *Review for Indicia of Authorization.*  The Claims Administrator shall make the determination by a totality of the circumstances and shall have the right to request additional information.  To determine whether the charge was unauthorized, the Claims Administrator may review, *inter alia*, the Claimant's Third Party Mobile Content purchase history, including but not limited to the following:

(a)    whether a refund was previously issued for the charges associated with a claim;

(b)    whether refunds were previously given for other Third Party Mobile Content charges associated with the wireless number tied to a claim;

(c)    if refunds were previously given, the amount of the refunds given for the charges associated with the wireless number tied to a claim;

(d)    the number and frequency of similar Third Party Mobile Content charges associated

SETTLEMENT AGREEMENT

with the wireless number tied to a claim;

(e)     the amount of similar charges associated with the wireless number tied to a claim;

(f)     the existence of charges from a different wireless number on the same account tied to a claim;

(g)     the reputation of the source of the Third Party Mobile Content;

(h)     the nature and type of the Third Party Mobile Content;

(i)     the number of telephone lines associated with the account;

(j)     a comparison of the date the Third Party Mobile Content was ordered and the date the account was opened;

(k)     whether the charges were voluntarily paid; and

(k)     any explanation given by the Account Holder.

4.     ***Subscription Charges.*** As provided in Section IV.B.2, the Settlement Benefit for any claim made for a recurring charge that was billed and paid for by the Claimant for more than three successive billing cycles shall be limited to three times the amount of such recurring charges appearing on a monthly basis. For example, if a Claimant requests refund for four months of a recurring monthly charge, the Claims Administrator may refund three months of the recurring charge but will reject the claim for refund of the fourth month of this charge.

5.     ***Previously Refunded Amounts.*** The Claims Administrator shall not provide a Settlement Benefit for any charge associated with a claim that has been previously refunded by AT&T Mobility or a Third Party Provider.

D.    **Resolution Procedure For Challenged or Rejected Claims**

1.    *Abuse of Discretion by Claims Administrator.* Both AT&T Mobility and Plaintiffs' Counsel shall have the right to challenge systematic abuse(s) in processing or handling of the claims as submitted by Settlement Class members and such challenges will be timely decided by the Mediator. The Parties agree that the Claims Administrator shall thereafter follow the decision of the Mediator resulting from any such challenge.

2.    *Challenging Individual Claims.*

a.    AT&T Mobility may challenge any claim, and the Claim Form will disclose the right of AT&T Mobility to challenge claims.

b.    AT&T Mobility shall have thirty (30) days upon receiving notice of such approval to dispute any claim for a Settlement Benefit approved by the Claims Administrator. Any Settlement Class member whose claim for a Settlement Benefit is denied by the Claims Administrator shall also have thirty (30) days upon receiving notice of such denial to dispute the denial of the claim. In either case, each party shall receive written notice that the denial/approval of the claim is being disputed and shall be provided an Appeal Form wherein the appealing party must provide a detailed written explanation as to why the Claims Administrator erred in its denial/approval of the claim for a Settlement Benefit.

c.    All Appeal Forms will be submitted to an Appeal Panel that will be comprised of three (3) members: one (1) member to be appointed by AT&T; one member (1) to be appointed by the Claims Administrator; and one (1) member to be appointed by Plaintiffs' Counsel. The Appeal Panel shall meet at regularly determined times to decide all appeals based solely on the Appeal Forms submitted and AT&T records. There will be no in-person hearings

of any kind. In order to overrule the decision of the Claims Administrator to approve/deny a claim for a Settlement Benefit, the party submitting the appeal must garner two (2) votes from the Appeal Panel.

    d.  If the Appeal Panel affirms the decision of the Settlement Administrator, the losing party has a right to one final appeal to have the issue of the denial/approval determined by a Special Master, to be either jointly agreed to by the Parties, or, if no such agreement is reached, as selected by the Mediator. All decisions regarding the denial/approval of any claim submitted and ruled upon by the Special Master are final.

## VI. SETTLEMENT PAYMENTS

  **A.** AT&T Mobility shall be solely responsible to pay all Claims Administration Expenses, including but not limited to reasonable fees and costs for the Special Master, and all Notice Expenses for a Notice Plan as described in this Agreement, as well as the Fee Award approved by the Court to Class Counsel.

  **B.** The Claims Administrator shall request funds from AT&T Mobility in amounts, from time to time, sufficient to timely pay: (i) the costs of administration of this Settlement; (ii) the attorneys' fees and costs awarded by the Court to Class Counsel; and (iii) all Approved Claims. The Claims Administrator shall, in its discretion, request funds periodically and from time to time only as necessary to make payments due under this Agreement.

  **C.** AT&T Mobility will use its best efforts to pay an Approved Claim as soon as practicable following approval by the Claims Administrator, but in no event more than 90 days following such approval. The Claims Administrator shall pay all Approved Claims (not paid by AT&T Mobility via a bill credit) by check and mail them to the Claimant via first-class mail.

## VIII.  NOTICE TO THE CLASS

A.     Upon Preliminary Approval of this Agreement (and as the Court may direct), the Parties (or their designee) shall cause the Class Notice describing the Fairness Hearing and the terms of the Settlement embodied herein to be disseminated to potential Class Members as provided herein. Notice shall comport with due process and be effectuated pursuant to a Notice Plan.

B.     The Notice Plan shall include:

1.     Publication Notice shall be made in a single publication each in USA TODAY WEEKEND and PARADE, to be published within ninety (90) days of receipt of Preliminary Approval of the Settlement. The text of such notice is provided in Exhibit 2.

2.     A paper Bill Insert Notice shall be provided to current direct bill wireless Account Holders who receive bills by paper and an electronic Bill Insert Notice shall be provided to Account Holders who receive bills electronically. The text of such notice is provided in Exhibit 3. Bill Insert Notice will be completed within one hundred and twenty (120) days after Preliminary Approval of the Settlement.

3.     Internet Publication Notice. Immediately following Preliminary Approval of the Settlement, Website Notice shall be provided on the website to be administered by the Claims Administrator. The text of such Notice is provided in Exhibit 4.

C.     The Class Notice shall advise Class Members of their rights, including the right to opt-out and/or comment or object upon the Settlement Agreement or its terms. The Notice shall provide that any objection to the proposed Settlement Agreement, and any papers submitted in support of said objection, shall be received by the Court at the Fairness Hearing, only if, on or before a date approved by the Court and to be specified in the Class Notice, the Person making an objection

shall file notice of his or her intentions to do so and shall file copies of such papers he or she proposes to submit at the hearing with the Clerk of the Court and mail, hand or overnight delivery service to both Class Counsel and AT&T Mobility's Counsel on or before the date specified in the Class Notice.

      **D.**     The cost of the Notice, the Notice Plan as outlined herein, and the dissemination of the Notice shall be borne solely by AT&T Mobility.

## IX.    OPT-OUT AND OBJECTIONS

      **A.**     A Class Member may opt out of the Class at any time during the Opt-Out Period, as will be outlined in the Court-approved Notice. Opt-outs must be post-marked by a date approved by the Court and specified in the Notice. In order to exercise the right to opt out, the Class Member must complete and return a Request For Exclusion to the Claims Administrator during the Opt-Out Period. Except for those potential Class Members who have properly opted out, all Class Members will be deemed a Class Member for all purposes under this Agreement. Any potential Class Member who elects to opt out of the Class shall not (i) be bound by any orders or judgments entered in this Action; (ii) be entitled to relief under or be affected by this Agreement; (iii) gain any rights by virtue of this Agreement; or (iv) be entitled to object to any aspect of this Agreement. The Request For Exclusion must be personally signed by the Person requesting exclusion. So called "mass" or "class" opt-outs shall not be allowed.

      **B.**     Any Settlement Class Member who intends to object to the Settlement Agreement must include his/her name and address, include all arguments, citations, and evidence supporting the objection. An objecting Class Member must state, in writing, all objections and the basis for any such objection(s), and provide a statement whether the Objector intends to appear at the Fairness

Hearing, either with or without counsel. Objections must be post-marked by a date approved by the Court and specified in the Notice. Any Settlement Class Member who fails to timely file a written objection and notice of his or her intent to appear at the Fairness Hearing pursuant to this paragraph or as detailed in the Notice, shall not be permitted to object to the Class Settlement at the Fairness Hearing, and shall be foreclosed from seeking any review of the Class Settlement by appeal or other means.

## X.    AT&T MOBILITY'S RIGHT OF WITHDRAWAL

**A.**    If an excess of a reasonable amount of Class Members, in an amount to be agreed upon by the Parties and approved of by the Court prior to Notice being effectuated, timely file valid opt-out requests, AT&T Mobility shall have the right to terminate from this Agreement. AT&T Mobility shall exercise such withdrawal right, if at all, no later than ten (10) business days after being advised by the Claims Administrator in writing of the number of opt-out requests following the end of the Opt-Out Period. In the event AT&T Mobility exercise its right of termination, AT&T Mobility shall promptly notify Class Counsel and cause the Claims Administrator to notify the Class by posting information on the Settlement website and e-mailing information to those Class Members who provided an e-mail address to the Claims Administrator.

## XI.    EXCLUSIVE REMEDY; DISMISSAL OF ACTION; JURISDICTION OF COURT

**A.**    This Agreement shall be the sole and exclusive remedy for any and all Settled Claims of all Class Members against the Released Parties. No Released Party shall be subject to liability or expense of any kind to any Class Member with respect to any Settled Claim. Upon entry of the Judgment pursuant to the Fairness Hearing, each and every Class Member shall be permanently barred and enjoined from initiating, asserting and/or prosecuting any Settled Claim(s) against any

SETTLEMENT AGREEMENT

Released Party in any court or forum.

B.     The Parties agree that the Court shall retain exclusive and continuing jurisdiction of the Action, Parties, Class Members and the Claims Administrator to interpret and enforce the terms, conditions, and obligations under this Agreement.

## XII.  RELEASES

A.     Upon entry of the Judgment, each Settlement Class Member who has not validly opted out of the Settlement, shall be deemed to and does hereby release and forever discharge each Released Party of and from liability for any and all Settled Claims.

B.     Upon entry of Judgment without further action, for good and valuable consideration, Plaintiff, on behalf of herself and the Settlement Class and as the representative of the Settlement Class, shall expressly, and all Settlement Class Members shall be deemed to have, and by operation of the final judgment contemplated by this Agreement shall have, fully, finally, and forever expressly waived and relinquished with respect to Settled Claims, to the fullest extent permitted by law, any and all provisions, rights, and benefits of section 1542 of the California Civil Code and any and all similar provisions, rights, and benefits conferred by any law of any state or territory of the United States or principle of common law that is similar, comparable, or equivalent to section 1542 of the California Civil Code, which provides: "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

## XIII.  CLASS COUNSEL FEES AND COSTS AND INCENTIVE AWARDS

A.     **The Fee Award.**  In addition to the consideration provided to the Claimants in Section IV, above, AT&T Mobility has agreed to pay Class Counsel, subject to Court approval, $4.3

Million (the "Maximum Fee Amount") in attorneys' fees and reimbursement of costs (the "Fee Award"). AT&T Mobility agrees that the Maximum Fee Amount is fair and reasonable and will not object to or otherwise challenge Class Counsel's application for reasonable attorneys' fees and for reimbursement of costs and other expenses if limited to the Maximum Fee Amount. Class Counsel has, in turn, agreed not to seek more than the Maximum Fee Amount from the Court.

**B.**     **Payment of the Fee Award.** Notwithstanding any appeal or objection or challenge to the Settlement or to the Fee Award, provided Lead Class Counsel provides adequate security for the recovery of amounts paid in the event of reversal of the award of fees on appeal, AT&T Mobility shall pay (by wire) to Lead Counsel the Fee Award approved by the Court within thirty (30) days after entry of the order approving such award of fees or reimbursement of expenses. The adequacy of security shall be determined by AT&T Mobility in its sole discretion. Absent the provision of such security, AT&T Mobility shall pay the Fee Award to Lead Class Counsel by wire transfer within thirty (30) days of the Effective Date.

**C.**     **Class Representatives' Incentive Award:** In addition to any award under the Settlement, and in recognition of their efforts on behalf of the Class, the Class Representatives shall, subject to Court approval, receive and award collectively of the sum of $10,000.00 as appropriate compensation for their time and effort serving as the Class Representative in this litigation. Such amount shall be paid by AT&T Mobility to Lead Class Counsel within twenty (20) days after the Effective Date.

## XIV.   SETTLEMENT APPROVAL ORDER

A.     This Agreement is subject to and conditioned upon the issuance by the Court of the Judgment which finally certifies the Settlement Class and grants final approval of this Agreement in accordance with applicable jurisprudence, and providing the relief specified below, which relief shall be subject to the terms and conditions of this Agreement and the Parties' performance of their continuing rights and obligations hereunder. Such Judgment shall:

> 1.    Confirm the certification, for settlement purposes only, of the Settlement Class under applicable jurisprudence;
>
> 2.    Dismiss all complaints in the Action as with prejudice and without costs;
>
> 3.    Decree that neither the Judgment nor this Agreement constitute an admission by AT&T Mobility of any liability or wrongdoing whatsoever;
>
> 4.    Bar and enjoin all Class Members from asserting against any Released Party any and all Settled Claims which the Class member had, has, or may have in the future;
>
> 5.    Release each Released Party from the Settled Claims which any Class Members have, had, or may have in the future, against such Released Party;
>
> 6.    Determine that this Agreement is entered into in good faith, is reasonable, fair and adequate, in the best interest of the Class; and
>
> 7.    Preserve the Court's continuing and exclusive jurisdiction over the Parties to this Agreement, including AT&T Mobility and all Class Members, to administer, supervise, construe and enforce this Agreement in accordance with its terms for the mutual benefit of the Parties, but without affecting the

finality of the Judgment.

**B.**    In the event that the Court or any appellate court enters an order altering this Settlement Agreement in a way that materially and adversely affects AT&T Mobility or Plaintiff, within five (5) business days from the date the Court or appellate court enters such an order, AT&T Mobility or Plaintiff, as the case may be, may terminate this Settlement Agreement by giving written notice of its intent to do so to the opposing party's counsel.

## XV.    REPRESENTATIONS AND WARRANTIES

AT&T Mobility represents and warrants (i) that it has all requisite corporate power and authority to execute, deliver and perform this Agreement and to consummate the transactions contemplated hereby; (ii) that the execution, delivery and performance of this Agreement and the consummation by it of the actions contemplated herein have been duly authorized by all necessary corporate action on the part of AT&T Mobility; and (iii) that this Agreement has been duly and validly executed and delivered by AT&T Mobility and constitutes its legal, valid and binding obligation.

## XVI.    MISCELLANEOUS PROVISIONS

### A.    Entire Agreement

This Agreement, including all exhibits hereto, shall constitute the entire Agreement among the Parties with regard to the subject of this Agreement and shall supersede any previous agreements, representations, communications and understandings among the Parties with respect to the subject matter of this Agreement. This Agreement may not be changed, modified, or amended except in writing signed by all Parties, subject to Court approval. The Parties contemplate that, subject to Court approval, the exhibits to this Agreement may be modified by subsequent Agreement of AT&T

Mobility and Class Counsel prior to dissemination to the Class.

### B.    Governing Law

This Agreement shall be construed under and governed by the laws of the State of Georgia, applied without regard to laws applicable to choice of law.

### C.    Execution by Counterparts

This Agreement may be executed by the Parties in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Facsimile signatures or signatures sent by e-mail shall be treated as original signatures and shall be binding.

### D.    Confirmatory Discovery

In addition to the discovery received and investigation conducted by Class Counsel, AT&T Mobility shall provide to Class Counsel reasonable additional discovery and information as necessary to confirm the material representations made by AT&T Mobility which form the basis of this Settlement, and the Parties shall cooperate in seeking any third-party discovery as may be necessary and appropriate, such additional discovery to be completed prior to the Fairness Hearing.

### E.    Notices

Any notice, instruction, application for Court approval or application for Court orders sought in connection with this Agreement or other document to be given by any Party to any other Party shall be in writing and delivered personally or sent by registered or certified mail, postage prepaid, if to AT&T Mobility to the attention of AT&T Mobility's respective representatives and to Class Counsel on behalf of Class Members, or to other recipients as the Court may specify.

All notices to the Parties or counsel required by this Agreement, except Settlement Class

member opt outs and objections, shall be made in writing and communicated by fax and mail to the

following addresses:

If to Plaintiff or Plaintiff's Counsel or Lead Counsel:

> Jay Edelson, Esq.
> KamberEdelson, LLC
> 53 West Jackson Boulevard, Suite 550
> Chicago, Illinois 60604

If to AT&T Mobility or AT&T Mobility's Counsel:

> Seamus C. Duffy
> Drinker, Biddle and Reath LLP.
> One Logan Square
> Philadelphia, Pennsylvania 19103-6996

> David L. Balser
> McKenna, Long and Aldridge LLP
> 303 Peachtree Street, NE
> Suite 5300
> Atlanta, GA 30308

**F.    Dismissal**

Plaintiffs or Class Counsel in the affiliated Coordinated Actions shall, upon final approval of

the settlement in this Action, obtain dismissal of their respective class action complaints.

**G.    Miscellaneous Provisions**

This Agreement shall be binding upon and inure to the benefit of the heirs, successors,

assigns, executors and legal representatives of all parties to the Settlement.

Subject to Court approval, the Parties may agree to reasonable extensions of time to carry out

any of the provisions of this Agreement.

The determination of the terms of, and the drafting of, this Agreement has been by mutual

agreement after negotiation, with consideration by and participation of all Parties hereto and their

**SETTLEMENT AGREEMENT**

counsel.

The waiver by one Party of any provision or breach of this Agreement shall not be deemed a waiver of any other provision or breach of this Agreement.

## XVII.  TERMINATION OF THIS AGREEMENT

This Agreement shall, without notice, be automatically terminated if the Judgment is not entered, if the Judgment is reversed on appeal and the reversal becomes final, or in the event of AT&T Mobility's termination pursuant to this Agreement.  Upon termination, all Parties shall be restored to their respective positions as immediately prior to the date of execution of this Settlement Agreement except as otherwise provided.

## XVIII. AUTHORITY TO SIGN

Any individual signing this Agreement on behalf of any Person represents and warrants that he or she has full authority to do so.

Facsimile signatures shall be considered valid signatures as of the date hereof, although the original signature pages shall thereafter be appended to this Agreement.

IN WITNESS WHEREOF, each of the Parties hereto has caused this Agreement to be executed on its behalf by its duly authorized counsel of record, all as of the day set forth below.

**AGREED:**

**PLAINTIFF AND PLAINTIFF'S IN THE COORDINATED ACTIONS, by their attorneys:**

**LEAD CLASS COUNSEL**

Dated: _May 26_, 2008    KAMBEREDELSON, LLC

             Jay Edelson
             53 W. Jackson Blvd., Suite 550
             Chicago, IL 60604
             Telephone: 312.589.6370
             Facsimile: 312.913.9401

             *On Behalf of Plaintiffs and the Class*

             **LIAISON CLASS COUNSEL**

Dated: _____, 2008    BOONE & STONE LP

**SETTLEMENT AGREEMENT**

COORDINATED ACTION COUNSEL

Dated: _____, 2008        LOCKRIDGE GRINDAL NAUEN P.L.L.P

                                      _____

Dated: _____, 2008        GISKAN, SOLOTAROFF, ANDERSON &
                                      STEWART LLP

                                      _____

Dated: _____, 2008        THE JACOBS LAW FIRM, CHTD.

                                      _____


**AT&T MOBILITY LLC, by its attorneys:**

Dated: _May 28___, 2008               AT&T MOBILITY LLC

                                      By: _____
                                             Neal S. Berinhout

# Exhibit 1

Return this Claim Form to: AT&T Mobility Claims Administrator, Claims Administrator, PO Box 509, Minneapolis, MN 55440-0509, Questions, call 1-877-465-4797

Case 4:08-cv-00013-CW    Document 48    Filed 06/13/2008    Page 60 of 138
**AT&T MOBILITY CLAIM FORM**

MUST BE POSTMARKED BY [date]

| PART A - CLAIMANT INFORMATION |
|---|

Name: _____  _____  _____
    *(First)*                    *(Middle)*    *(Last)*

Address: _____
    *(Street)*

_____  ____  ____ __ ___ __
*(City)*              *(State)*    *(Zip Code)*

Daytime Phone Number: ( _ _ ) _ _ _ - _ _ _ _

Email address : _____

AT&T Mobility/Cingular Wireless
Telephone Number: ( _ _ ) _ _ _ - _ _ _ _

Account Number: _ _ _ _ _ _ _ - _ _ _ - _ _
AND
Social Security Number (last 4 digits): _ _ _ _

Are you a current AT&T Mobility Customer:    ☐ YES
                                    ☐ No

| PART B – CERTIFICATION UNDER PENALTY OF PERJURY |
|---|

If you incurred eligible third-party mobile content charges on your wireless bill, you must list those charges in Part C below. **CLAIMS MAY BE AUDITED AND PERSONS OR COMPANIES THAT FILE FALSE OR FRAUDULENT CLAIMS MAY BE PROSECUTED TO THE FULL EXTENT OF THE LAW. FAILURE TO COMPLETELY FILL OUT THIS CLAIM FORM MAY RESULT IN A REJECTION OF YOUR CLAIM.**

I declare under penalty of perjury that between January 1, 2004 and [date of notice], I incurred the charges listed below on my wireless bill for third-party mobile content, did not authorize the purchases for third-party mobile content to incur these charges, and have not previously received a refund for these charges, and that all of the information on this form is true and correct.

Signature: _____        Date: _____

Print Name: _____

| PART C – ELIGIBLE MOBILE CONTENT CHARGES |
|---|

**(List all eligible\* third-party mobile content charges below. If you have any additional eligible charges, list the date, description, merchant name and amount of charge on a separate page and attach to the claim form. If you wish to further explain any of the listed charges, please do so on a separately attached page as well).**

*\* Eligible charges include any charge incurred between January 1, 2004 and [date of notice] for third-party mobile content (i.e. ringtones, joke-a-day etc.) that was not authorized and not previously refunded. See www.ThirdPartyContentRefund.com or call 1-877-465-4797 for more information.*

List the following information for each of the eligible third-party mobile content charges that you incurred between January 1, 2004 and [date of notice]. This information will be reviewed for adequacy by the Claims Administrator.

| | Date of Charge | Description of Charge | Merchant Name | Charge Amount |
|---|---|---|---|---|
| 1. | | | | |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |
| 5. | | | | |
| | | | **Total Amount Claimed:** | |

# Exhibit 2

**If You Were Billed for Third Party Mobile Content (such as Ringtones, Games, Graphics, News and Other Alerts) on Your AT&T Mobility Account from January 1, 2004 to _____, You May Receive a Credit or Refund From a Class Action Lawsuit. Please Read This Legal Notice.**

*Para Una Notificacioin en Espanol, Llamar or Visitar Nuestro Website*

## NOTICE OF CLASS ACTION AND PROPOSED SETTLEMENT

This notice is to inform you of the proposed Settlement of several similar lawsuits. These lawsuits relate to the sale, marketing and billing of third party mobile content such as ring tones and news alerts to AT&T Mobility wireless telephone subscribers.

This notice is a summary only. You should read the Full Notice for complete information. You can get a copy of the Full Notice by visiting the Web site, calling the toll-free number listed, or writing to the address listed below.

### What is Third Party Mobile Content?
Third party mobile content is a product (such as ringtones, games, graphics and news or other alerts) that may be purchased and downloaded to your wireless device and is advertised, marketed and sold directly than AT&T Mobility. Third party mobile content is not advertised, marketed or directly sold by AT&T Mobility LLC ("AT&T Mobility").

### Who is Involved?
You are a member of the Settlement Class and your rights are affected if you are a person (or entity) in the United States or its Territories with an AT&T Mobility (previously known as Cingular Wireless) account who was billed for third party mobile content from January 1, 2004 to [date] and were not previously refunded for this charge.

### What is the Case About?
Plaintiffs claim that Defendants charged AT&T Mobility subscribers for third party mobile content that was not authorized. AT&T Mobility denies these claims but are settling to avoid the burden and cost of continuing the case.

### What are the Terms of the Settlement?
AT&T Mobility has agreed to refund the amount of all eligible third party mobile content charges that were billed for between January 1, 2004 to [date]. If the charge was recurring on a monthly or other basis based on a subscription or similar arrangement, you may only recover up to three times the amount of any such monthly charge. To be eligible for any refund, the charges must have been unauthorized and not previously refunded to your account. AT&T has also agreed to take steps to inform its customers about mobile content, the ability to restrict its purchase through parental controls, and methods for its customers to dispute unauthorized charges and cancel mobile content subscriptions. The settlement is not an admission of wrongdoing by any party.

### Who Represents Me?
The Court has appointed a team of 10 attorneys ("Class Counsel") to represent you for 16 related cases against AT&T and/or other entities. As part of the settlement, Class Counsel will request an award of attorneys' fees and expenses not to exceed $4,300,000 payable by AT&T Mobility. No award of fees or expenses will reduce the benefit to any Class Member. The Court has also appointed three Class Representatives who will share an award of $10,000 for their services. You may hire your own lawyer, but at your own expense.

### What are my Legal Rights?
• *Stay in the Settlement Class:* You do not have to do anything to stay in the Class, but you must submit a Claim Form to receive a credit or refund. You may also object to the proposed Settlement.

• *Submit a Claim Form for a credit/refund:* If you wish to file a claim, you must complete a Claim Form. Claim Forms **must** be postmarked by **[date]**. The Claims Administrator will review your Claim Form and determine whether you have eligible charges and are therefore a member of the Settlement Class.

•*Object to the proposed Settlement:* You or your lawyer have the right to appear before the Court and object to the proposed Settlement. Your written objection must be postmarked by **[date]**.

•*Exclude Yourself from the Settlement Class:* If you do not wish to be a member of the Settlement Class, you may exclude yourself by writing to the Claims Administrator. Your request **must** be postmarked by **[date]**.

If you remain in the Settlement Class and the Court approves the proposed Settlement, you will receive the benefits of the proposed Settlement. You will also be bound by all orders and judgments of the Court and your claims against AT&T Mobility and other entities, including VeriSign, Inc., M-Qube, Inc., Jamster International SARL, and Mblox, Inc., for the conduct at issue in these cases will be resolved and released.

### When will the Court Consider the Proposed Settlement?
The Court will hold a Fairness Hearing to determine if the proposed Settlement is fair, reasonable and adequate and to consider a motion for attorneys' fees and expenses on [date] at [time] in Courtroom [number], [Court name]. If comments or objections have been received, the Court will consider them at this time.

For more information about the proposed Settlement and a copy of the Full Notice and Claim Form, visit: www.ThirdPartyContentRefund.com, call: 1-877-465-4797, write to: Claims Administrator [address] or contact Lead Class Counsel: Jay Edelson, Scott A. Kamber, & Myles McGuire, KamberEdelson, LLC, 53 W. Jackson, Ste. 550, Chicago, IL 60604 [toll free number]

By Order of the Court Dated: May 30, 2008

SUPERIOR COURT OF FULTON COUNTY, GEORGIA

# Exhibit 3

**Attention Customers:**

# You may be eligible to receive a credit or refund for unauthorized mobile content charges.
## Please read this legal notice.
*Para Una Notificacioin en Espanol, Llamar or Visitar Nuestro Website*

**What is this notice about?**
Certain AT&T/Cingular customers are eligible to obtain refunds for unauthorized purchases of third party mobile content, such as ringtones, graphics, games and news or other alerts ("Mobile Content") because of a proposed Settlement of a class action lawsuit. This notice is just a summary. You should read the Full Notice for complete information. You can get a copy of the Full Notice by visiting the Web site, calling the toll-free number or writing to the address listed below.

**What is the case about?**
Plaintiffs claim that Defendants charged AT&T Mobility subscribers for third party mobile content that was not authorized. AT&T Mobility, which was formerly known as Cingular, has entered into a proposed settlement agreement in a class action lawsuit about the marketing, advertising and billing practices of certain third party mobile content providers. AT&T Mobility denies these claims but are settling to avoid the burden and cost of continuing the case.

**What will I get?**
As part of the agreement, AT&T Mobility is offering to provide account holders with credits or refunds for unauthorized mobile content purchases made from January 1, 2004 to [date] that have not been previously refunded. AT&T has also agreed to take steps to institute its customers about mobile content, the ability to restrict its purchase through parental controls, and methods for its customers to dispute unauthorized charges and cancel mobile content subscriptions. The settlement is not an admission of wrongdoing by any party.

**How do I know if I am eligible for a credit or refund?**
If AT&T/Cingular has billed your account for the purchase of a third party mobile content that you did not authorize, you may be entitled to receive a refund for these charges. If a charge was recurring on a monthly or other basis based on a subscription or similar arrangement, you may only recover up to three times the amount of the recurring charge as to this type of charge.

**Who represents me?**
The Court has appointed a team of 10 attorneys ("Class Counsel") to represent you for 16 related cases against AT&T and/or other entities. As part of the settlement, Class Counsel will request an award of attorneys' fees and expenses not to exceed $4,300,000 payable by AT&T Mobility. No award of fees or expenses will reduce the benefit to any Class Member. The Court has also appointed three Class Representatives who will share an award of $10,000 for their services. You may retain your own counsel, but only at your own expense.

**What are my Legal Rights?**
• *Stay in the Settlement Class:* You do not have to do anything to stay in the Class, but you must submit a Claim Form to receive a credit or refund. You may also object to the proposed Settlement.
• *Submit a Claim Form for a credit/refund:* If you wish to file a claim, you must complete a Claim Form. Claim Forms *must* be postmarked by [date]. The Claims Administrator will review your Claim Form and determine whether you have eligible charges and are therefore a member of the Settlement Class.
•*Object to the proposed Settlement:* You or your lawyer have the right to appear before the Court and object to the proposed Settlement. Your written objection must be postmarked by [date].
•*Exclude Yourself from the Settlement Class:* If you do not wish to be a member of the Settlement Class, you may exclude yourself by writing to the Claims Administrator. Your request *must* be postmarked by [date].

If you remain in the Settlement Class and the Court approves the proposed Settlement, you will receive the benefits of the proposed Settlement. You will also be bound by all orders and judgments of the Court and your claims against AT&T Mobility and other entities, including VeriSign, Inc., M-Qube, Inc., Jamster International SARL, and Mblox, Inc., for the conduct at issue in these cases will be resolved and released.

**When will the Court Consider the Proposed Settlement?**
The Court will hold a Fairness Hearing to determine if the proposed Settlement is fair, reasonable and adequate and to consider a motion for attorneys' fees and expenses on [date] at [time] in Courtroom [number], [Court name]. If comments or objections have been received, the Court will consider them at this time.

For more information about the proposed Settlement and a copy of the Full Notice and Claim Form, visit: www.ThirdPartyContentRefund.com, call: 1-877-465-4797, write to: Claims Administrator [address] or contact Lead Class Counsel: Jay Edelson, Scott A. Kamber, & Myles McGuire, KamberEdelson, LLC, 53 W. Jackson, Ste. 550, Chicago, IL 60604 [toll free number]

By Order of the Court Dated: May 30, 2008

SUPERIOR COURT OF FULTON COUNTY, GEORGIA

# Exhibit 4

NOTICE OF PENDENCY OF CLASS ACTION SETTLEMENT

## IN THE SUPERIOR COURT OF FULTON COUNTY- STATE OF GEORGIA
*Tracie McFerren v. AT&T Mobility LLC,* Case No. _____

>> **Click Here to Make a Claim**<<
>>**Click Here to Download a Paper Claim Form**<<
(**You must submit a claim form by _____**)
>>**Click Here to Download a Copy of the Settlement Agreement**<<

## IF YOU WERE BILLED FOR THIRD PARTY MOBILE CONTENT ON YOUR
## AT&T MOBILITY ACCOUNT FROM JANUARY 1, 2004 TO _____

IMPORTANT

PLEASE READ THIS NOTICE CAREFULLY
THIS NOTICE RELATES TO THE PENDENCY OF CLASS ACTION LITIGATION
AND IF YOU ARE A CLASS MEMBER CONTAINS
IMPORTANT INFORMATION ABOUT YOUR RIGHTS TO MAKE A CLAIM UNDER THE
SETTLEMENT OR TO OBJECT TO THE SETTLEMENT

The Superior Court of Fulton County, State of Georgia authorized this notice. This is not a solicitation from a lawyer.

**What Is This?** This notice is to inform you of the proposed Settlement of a lawsuit pending in Georgia. The Court has granted preliminary approval of the settlement and has certified the Settlement Class defined above, subject to a fairness hearing which will take place on [date] at [time] in Courtroom [number], [Court name] to determine if the proposed Settlement is fair, reasonable and adequate and to consider the request for attorneys' fees and expenses.

Similar lawsuits were filed and are pending in state and federal courts in California, Illinois, Minnesota, and New York. These lawsuits relate to the sale, marketing and billing of third party mobile content to AT&T Mobility LLC ("AT&T" or "AT&T Mobility") wireless telephone subscribers.

This notice explains the nature of the lawsuit and the terms of the settlement and informs you of your legal rights and obligations.

By settling this lawsuit, AT&T Mobility is not admitting that it is liable to the Settlement Class.

You have options, explained below.

**What is Third Party Mobile Content?** Third party mobile content is a product (such as ringtones, games, graphics and news or other alerts) that may be purchased and downloaded to your wireless device and is advertised, marketed and sold directly by a third party content

provider/merchant other than AT&T Mobility. Third party mobile content is not advertised, marketed or directly sold by AT&T Mobility.

**Who is in the Settlement Class?** You are a member of the Settlement Class and your rights are affected if you are a person (or entity) in the United States or its Territories with an AT&T Mobility account, and who was billed for third party mobile content from January 1, 2004 to [date] and were not previously refunded for this charge.

**What is the Litigation About?** Plaintiffs filed a class action in the Superior Court of Fulton County, Georgia, on behalf of a proposed class, alleging that AT&T Mobility charged its wireless subscribers for third party mobile content that was not authorized. Similar lawsuits were filed and are pending in state and federal courts throughout the county, including in California, Illinois, Minnesota, New York and other states. These class actions likewise allege that AT&T Mobility charged its subscribers for third party mobile content that was not authorized. You need not live in any of these States to receive a benefit under the proposed settlement. The Georgia class action asserts claims for breach of contract and violation of state consumer protection statutes and seeks monetary and injunctive relief. To resolve this matter without the expense and uncertainties of litigation in several class actions, the Parties have reached a proposed settlement. The settlement requires AT&T Mobility to implement certain service improvements, assurances, and monetary relief under specific circumstances. This settlement is not an admission of wrongdoing by any party.

**What Relief is Provided To Class Members Under The Settlement?**

**A.     Relief for All Settlement Class Members – AT&T Mobility Service Improvements & Assurances.** AT&T Mobility has agreed to provide disclosures regarding mobile content in its Wireless Customer Service Agreement and on its website. In addition, AT&T Mobility will provide a telephone number and website address in all bills for customers who seek to dispute a charge. AT&T Mobility has further agreed to provide and enhance as necessary the means for its customers to freely address billing inquiries related to Third Party Mobile Content.

**B.     Relief for Settlement Class Members Filing Claims.** In addition to the above-described service improvements, all Settlement Class members are entitled to individual relief with respect to the Settlement. AT&T Mobility has agreed to refund the amount of all eligible third party mobile content charges that were billed from January 1, 2004 to [date], and subject to the limitations concerning subscriptions that follow. These refunds will be provided to the Settlement Class members as follows:

    **1.     *Refunds.*** AT&T Mobility shall credit or refund to any former or current account holder all unauthorized charges for third party mobile content from January 1, 2004 to [date]. The refund can come in one of two forms: (1) a credit on your AT&T Mobility bill; or (b) a cash payment via first-class mail. In order to obtain this relief you must properly submit either an on-line or paper claim form by **[date]** and follow the instructions contained on the respective form and contained in this notice.

2.    ***Subscription Charge Refund.***  AT&T Mobility shall refund to any former or current account holder up to three times the monthly subscription amount if the charge was recurring on a monthly or other basis based on a subscription or similar arrangement from January 1, 2004 to **[date]**.  The refund can come in one of two forms:  (1) a credit on your AT&T Mobility bill; or (b) a cash payment via first-class mail.  In order to obtain this relief you must properly submit either an on-line or paper claim form by **[date]** and follow the instructions contained on the respective form and contained in this notice.

To be eligible for any refund, the charges must have been unauthorized and not previously refunded to your account.

**What are my Legal Rights?**

*How Do I File A Claim for a Refund or Subscription Charge Refund?*
If you were billed for unauthorized third party mobile content on your AT&T Mobility account from January 1, 2004 until **[date]**, you may submit a claim form to obtain the "refunds" and/or the "subscription charge refund" described above.  To receive any refund you must properly submit an on-line claim form by going to www.ThirdPartyContentRefund.com.  If you do not have access to the internet, you may obtain a claim form by downloading [insert link] and printing it out or by calling the toll-free number and requesting a copy from the Claims Administrator.  You must then mail a completed paper claim form to the Claims Administrator. **Either the on-line form must be submitted or the paper form must be postmarked by [INSERT DATE] or your claim will be rejected**.  Follow the steps below to make claim for a Refund or Subscription Claim Refund.

> **Step 1 – Identify Unauthorized Third party Mobile Content Billed and Paid for By You.** Identify third party mobile content charges that were billed by AT&T Mobility from January 1, 2004 to [date].  This information is located on your AT&T Mobility wireless bill.  The claim form will ask you to specifically identify the third party mobile content charges that you seek to have refunded.

> **Step 2 – Complete a Claim Form.**  You must complete all information requested in the claim form and verify that the charges are unauthorized as well as the accuracy of the information provided in the claim form.  Claim forms that are incomplete or are not signed will be rejected.

> **Step 3 – Submit On-Line Form or Mail Paper Form to Claims Administrator.** Submit the completed on-line claim form following the instructions for submission or mail the completed claim form to the claims administrator.

*What Happens After a Claim Form is Filed?*
Upon receipt, the Claims Administrator will review your claim form and determine whether you have eligible charges and are a member of the Settlement Class.  If your claim is approved, the Claims Administrator will mail you a cash refund check via first-class mail or instruct AT&T Mobility to credit the proper amount to your account.  You will then be bound by all orders and judgments of the Court and your claims against AT&T Mobility and other entities, including

VeriSign, Inc., M-Qube, Inc., Jamster International SARL, and Mblox, Inc., for the conduct alleged in these actions will be resolved and released. If your claim is rejected by the Claims Administrator or challenged by AT&T Mobility, you will be notified of the reasons for the denial or challenge. If your initial claim is denied, you will be given the opportunity to appeal this decision. A full explanation of this process is set out in the Settlement Agreement.

The Claims Administrator may consider numerous factors in its review of your claim, which are fully set out in the Settlement Agreement.

*How Not to Participate in the Settlement Class*
If you do not wish to be a member of the Settlement Class, you may exclude yourself by writing to the Claims Administrator. You must provide your full name and address, state that you want to opt out of the AT&T Mobility settlement, and deliver your request by mail, hand, or overnight delivery service to the Claims Administrator, at [address]. Your request *must* be postmarked no later than [date].

*How Do I Object to the Settlement?*
The Court will hold a Fairness Hearing to determine if the proposed Settlement is fair, reasonable and adequate and to consider a motion for attorneys' fees and expenses on [date] at [time] in Courtroom [number], [Court name]. If you remain a member of the Settlement class you or your counsel have the right to appear before the Court and object to the Settlement. However, you must file a Notice of Intention to Appear and Object. All objections *must* be filed by [date]. You must (1) provide your full name and address; (2) include all arguments, citations, and evidence supporting your objection; (3) specify who, if anyone, will attend the hearing to speak for your objection; (4) deliver your objection by mail, hand, or overnight delivery service to the Claims Administrator to the address listed above; and (5) file a copy of your objection with the Clerk of Court.

**If I Remain in the Settlement Class, Who Represents Me?**
The Court has approved the following team of attorneys to represent the Settlement Class. They are called "Class Counsel." You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

**Lead Class Counsel:**

| | |
|---|---|
| Jay Edelson | Scott A. Kamber |
| Myles McGuire | KamberEdelson LLC |
| KamberEdelsonLLC | 11 Broadway, 22nd Fl |
| 53 W. Jackson Blvd. | New York, NY 10004 |
| Suite 550 | Tel: [toll free number] |
| Chicago, IL 60604 | |
| Tel: [toll free number] | |

**Liaison Counsel**:
David W. Boone
William S. Stone
Aileen Page

Boone & Stone
3166 Mathieson Dr.
Atlanta, GA 30305

**Plaintiff's Steering Committee:**
Robert Shelquist (Chairman)
Lockridge Grindal Nauen PLLP
100 Washington Avenue, Suite 2200
South Minneapolis, MN 55401-2197

Orin Giskan
Giskan, Solotaroff, Anderson & Stewart
11 Broadway, Suite 2150
New York, NY 10004

David Healey
Law Offices of David P. Healey
2846-B Remington Green Cir
Tallahassee, FL 32308

John G. Jacobs
The Jacobs Law Firm, Chtd.
122 South Michigan Ave., Suite 1850
Chicago, IL 60603

**What is the Plaintiff's Attorneys' Fees Award?**
The Court has appointed a team of 10 attorneys involved in 16 related class actions to represent the Plaintiffs ("Class Counsel") against AT&T Mobility and/or other entities including VeriSign, Inc., M-Qube, Inc., Jamster International SARL, and Mblox, Inc., and will request approval of the Court for attorney's fees and costs of up to $4.3 Million. If approved by the Court, this amount will be paid directly by AT&T Mobility to Class Counsel and will not reduce any benefit to you from the settlement.

**What is the Award To Class Representatives?**
The Court has appointed Tracie McFerren, Morris Fiddler and Kristen Hensley as Class Representatives, who along with additional named Plaintiffs in the related cases, will share $10,000 for their service as class representatives. If approved by the Court, this amount will be paid directly by AT&T Mobility to the Class Representatives and will not reduce the benefit to you from the settlement.

**Who Is Paying the Costs Associated with the Settlement?**
Costs associated with the notice and administration of this settlement will be paid by AT&T Mobility.

**What Claims Are Being Released in this Settlement?**
Unless you exclude yourself from the settlement, you will be part of the Settlement Class. By

staying in the Settlement Class, all of the Court's orders will apply to you, and you will give AT&T Mobility, VeriSign, Inc, M-Qube, Inc., Jamster International SARL, and Mblox, Inc. and all of their affiliated companies and their predecessors and successors (the "Released Parties"), a "release" for certain claims arising from or relating to the unauthorized mobile content which you have been billed for from the beginning of time until the Effective Date of the Settlement Agreement. A release means you cannot sue or be part of any other lawsuit against the Released Parties about the claims or issues in this Lawsuit ever again. To read the full release, see the Settlement Agreement.

### What Is Class Counsel's Opinion Of The Settlement?

As part of this litigation, the Court approved and appointed Class Counsel who have conducted investigation into the factual and legal claims of the Settlement Class members and the defenses that might be asserted against those claims. Class counsel completed a five-day mediation before Rodney Max, Esquire, of the Upchurch Watson White & Max Mediation Group, who in his capacity as neutral mediator expressed his views about the case and the settlement. Based on their investigation and this process, Class Counsel believe that the settlement is fair, reasonable and adequate and in the best interests of the Settlement Class. Class Counsel and Plaintiff also recognize the expense and length of continued proceedings necessary to continue to prosecute this case through verdict, judgment and appeals and have taken into account the uncertainty and the risk of the outcome of continued litigation, especially in complex actions such as these as well as the difficulties and delays inherent in such actions.

### When Will the Court Determine the Fairness of the Settlement?

A hearing will be held on the fairness of the proposed settlement. At the hearing, the Court will be available to hear any objections and arguments concerning the fairness of the proposed settlement, including the amount of the award to Plaintiffs' counsel for costs and attorney's fees. The Court will hold the Fairness Hearing on [date] at [time] in Courtroom [number], [Court name]. YOU ARE NOT OBLIGATED TO ATTEND THIS HEARING UNLESS YOU PLAN TO OBJECT TO THE SETTLEMENT.

If the settlement is not approved, the case will proceed as if no settlement had been attempted. There can be no assurance that if the settlement is not approved, the Settlement Class will recover more than is provided in the settlement, or indeed, anything.

### May I Contact AT&T Mobility Directly?

Class Members are always able to call customer service to discuss third party mobile content charges made to their accounts. Calling customer service will not prohibit a Class Member from participating in the claims process.

### Where Can I Obtain More Information?

Any questions you or your attorney may have concerning this notice should be directed to Class Counsel at the address listed above, or you can contact the Claims Administrator at [address, 1-877-465-4797, email]. Please include the case name and number, and your name and your current return address on any letters, not just the envelopes. **You may also contact Lead Class Counsel at [toll free number]. You may also read the Settlement Agreement by downloading it from this site or by requesting a copy from the Claims Administrator.**

**Please do not contact the Court Clerk or the Defendant's Attorneys as they are not in a position to give you any advice about this settlement.**

By Order of the Court Dated: May 30, 2008
SUPERIOR COURT OF FULTON COUNTY,
STATE OF GEORGIA

# Exhibit B

**IN THE SUPERIOR COURT OF FULTON COUNTY**
**STATE OF GEORGIA**

TRACIE MCFERREN, individually and on behalf )
of a class of similarly situated individuals, )
                                      )
                      *Plaintiff,*           )      No.
                                        )
                      v.                )      Judge Bonner
                                        )
AT&T MOBILITY LLC,                  )
                                          )
                     *Defendant.*       )

## DECLARATION OF MYLES MCGUIRE

     I, Myles McGuire, certify under oath and penalty of perjury, that the following statements
are true and correct, except to those matters herein stated to be made upon information and
belief, and as to such matters, the undersigned certifies that he verily believes the same to be
true:

1. I am a partner at the Chicago office of KamberEdelson LLC. I, along with Jay Edelson
   and Scott Kamber, seek to be appointed Lead Counsel for the class in the above-
   referenced case.

2. Class Counsel, as that term is defined in our settlement papers, began a wide-ranging
   investigation into the premium mobile content industry in 2005. To date, that
   investigation has resulted in information gathered from over 1,000 aggrieved consumers.
   It has lead to an exchange of information and litigation strategy with multiple
   governmental agencies, including attorney general offices in Florida and Minnesota. We
   have received and reviewed numerous documents produced from the Maryland and
   Florida attorney general offices.

3. In January of 2006, we filed the first case involving third party mobile content sold to
   AT&T customers. During the following 28 months, Class Counsel, including members

of the proposed Plaintiff's Steering Committee, filed fifteen additional lawsuits that now
have joined in support of the settlement, including:

- *McFerren v. AT&T Mobility LLC,* (Ga. St. Ct.) (Complaint attached to
  Plaintiff's Motion for Preliminary Approval of the Class Action
  Settlement as Exhibit C);

- *Baker v. New Motion, Inc.* et al, 2007-46363 (Fl. St. Ct.);

- *Goddard v. Google, Inc.* BC 667876 (Cal. St. Ct.);

- *Paluzzi v. mBlox, et al.*, No: 2007-CH-37213 (Ill. St. Ct.);

- *Thielen v. Buongiorno USA, Inc.*, 1:06-cv-00016 (W.D. Mich.)
  (dismissed);

- *Walsh v. mBlox, et al.,* No. BC. BC 382356 (Cal. St. Ct.);

- *White v. AT&T Mobility,* No. 104651-08 (N.Y. St. Ct.);

- *Warren et al. v. OpenMarket Inc., et al.* No. 6:2007cv02043 (M.D. Fl.);

- *Jiran v. AT&T Mobility LLC, et al.*, Civ. A. No. 08-00013, (N.D. Cal.);

- *Hensley v. AT&T Mobility LLC* (Minn. St. Ct.);

- *Gray v. Mobile Messenger Americas, Inc. et al.,* 07-36302 (Fl. St. Ct.);

- *Fiddler v. AT&T Mobility LLC*, et al., Civ. A. No. 08-0416, (N.D. Ill.);

- *Jiran v. AT&T Mobility LLC, et al.,* Civ. A. No. 08-00013, (N.D. Cal.);

- *Valdez v. Buongiorno USA, Inc. et al*, 4:07-cv-06496-CW (N.D. Cal.);

- *Knox v. m-Qube, Inc.* 1:07-cv-10124 (D. Mass.); and

- *Dedek v. AT&T Mobility LLC*, Case No. BC387728 (Cal. St. Ct.).

4. In many of these cases, procedural motions—such as motions to remand or motions to
compel arbitration—have been briefed and/or decided by the courts. In others,

substantive motions have been filed and/or decided.  Formal and informal discovery have been produced and witnesses have been made available for interviews by the various key defendants including AT&T Mobility, m-Qube, Verisign, and mBlox.

5.  During the time that the parties have been litigating the issues arising from plaintiffs' claims for so-called "unauthorized" charges for third-party mobile content, counsel for plaintiffs, AT&T Mobility and several of the aggregators and third-party mobile content providers have had preliminary negotiations, which essentially centered on exchanges of information and discussions about their respective approaches to these cases.

6.  As a pre-requisite to negotiating with AT&T Mobility, Class Counsel secured representations from AT&T Mobility and the other related parties that they were not negotiating with any other plaintiffs' group.

7.  Class Counsel met in person with both outside and in-house counsel for AT&T Mobility in Chicago, Illinois in February of 2008 and then again in Seattle, Washington in March of 2008.

8.  Class Counsel met in person with m-Qube's in-house and outside counsel in Chicago, Illinois in August of 2007 and in Washington, D.C. in October of 2007.

9.  Class Counsel met with mBlox's outside counsel in Chicago, Illinois in November of 2007 and again in February of 2008.

10. As a result of the above discussions, AT&T Mobility, along with several aggregators and third-party mobile content providers, and plaintiffs engaged Rodney A. Max as mediator for sessions that took place on May 12-13, 2008 in Chicago, Illinois.

11. Although no settlement was reached after the initial two-day meeting, the parties continued to exchange information and to discuss a framework for settlement.  The parties, this time without the aggregators or third-party mobile content providers, agreed to again meet with Mr. Max to mediate for an additional three days over Memorial Day weekend in the hope that a settlement could be finalized.

13. Only after that was accomplished, did the parties discuss attorneys' fees and class representative incentive awards.

14. The parties' agreement was later formalized and executed on May 28, 2008.

15. Based on my experience as a class action attorney, I believe this settlement to be fair and in the best interest of the class.

16. A true and accurate copy of the firm resume of KamberEdelson LLC is attached to Plaintiff's Motion for Preliminary Approval of the Class Action Settlement as Exhibit D.

17. If called on to testify, I can competently do so.

18. Further affiant sayeth not.


Myles McGuire


Dated this 28th day of May 2008.

# Exhibit C

**State Court of Fulton County**
***EFILED***
LexisNexis Transaction ID: 19214877
Date: Apr 1 2008 10:36AM
Mark Harper, Clerk

IN THE STATE COURT OF FULTON COUNTY
STATE OF GEORGIA

TRACIE MCFERREN, individually and on )
behalf of a class of similarly situated individuals, )
                                       )
                    Plaintiff,         )          Civil Action File No. _____
                                       )
              v.                       )
                                       )
AT&T MOBILITY, LLC , a Delaware        )          JURY TRIAL DEMANDED
Limited liability company,             )
                                       )
                                       )
                    Defendant.         )
-------------------------------------------------x

## CLASS ACTION COMPLAINT

For her complaint against defendant, plaintiff states as follows:

### Introduction

Plaintiff Tracie McFerren brings this class action complaint against Defendant AT&T Mobility, LLC f/k/a Cingular Wireless ("AT&T") seeking to stop Defendant's unlawful practice of charging cellular telephone customers for products and services the customers have not authorized, a practice which has resulted in Defendant unlawfully collecting money from consumers statewide, and to obtain redress for all persons injured by their conduct. Plaintiff, for her class action complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

### Parties and Jurisdiction

1.    Plaintiff Tracie McFerren is an Ohio resident.

1

2.      Defendant AT&T Mobility, LLC d/b/a the new AT&T Wireless ("AT&T") f/k/a

Cingular Wireless is a leading provider of cellular telephone service in the United States. AT&T

is a Delaware limited liability company with its headquarters and principal place of business in

the State of Georgia, Fulton County. AT&T can be served through its registered agent, Neal

Berinhout, 5565 Glenridge Connector, Suite 1725B, Atlanta, GA 30342. AT&T does business

and has offices throughout the nation.

3.      The amount in controversy exceeds the sum of $15,000 exclusive of interest, costs

and attorney's fees. This Court has jurisdiction over the subject matter.

4.      Venue is proper in this court.

### Factual Background

5.      This case arises from two closely related phenomena. The first is the capability of

most cellular telephones, not only to make and receive telephone calls, but also to send and

receive text messages, including -- most significantly for present purposes -- "premium" text

message services. These services, also known as "mobile content" include products that range

from the basic (customized ringtones for use with cell phones, sports score reports, weather

alerts, stock tips, horoscope services, and the like) to those requiring more advanced capabilities

(such as direct payment services, interactive radio and participatory television).

6.      The second underlying phenomenon of this case constitutes its very core. That is,

just as providers of premium mobile content, such as Mobile Messenger, deliver their products

by means of cell phone technology, they likewise charge and collect from their customers by

"piggybacking" on the cell phone bills sent out by the wireless carriers, such as AT&T. Further,

because the mobile content providers by themselves most often lack the wherewithal to negotiate

the necessary relationships with the much larger wireless carriers, they do so with the help of

2

third-party companies, such as m-Qube, known as aggregators. These aggregators act as middle-men, representing numerous mobile content providers in arriving at the agreements that allow them to use the billing and collection mechanisms of the wireless carriers. In turn, both the aggregators and the wireless carriers are compensated for their services to the mobile content providers by retaining a substantial percentage of the amount each premium mobile content transaction.

7.      The rapid and largely unplanned growth of the premium mobile content industry has led both to the above-described structure and to a disastrous flaw within it. That flaw -- understood, perpetuated, and even encouraged by carriers, aggregators, and mobile content providers such as the instant defendants -- is an open secret within the industry, but little understood outside of it. In short, the billing and collection systems established by companies including Defendant in aid of the premium mobile content industry that enriches them are conspicuously free of any checks or safeguards to prevent erroneous and unauthorized charges from being added to customers' bills.

8.      As Defendant also knows, significant amounts of money have been collected on account of such unauthorized charges for premium mobile content in the industry over the last few years. And while it has always been within the power of companies such as Defendant to institute simple and effective measures that would prevent this, they have instead knowingly maintained the very system that has allowed these erroneous charges. Indeed Defendant have reaped and retained their respective shares of the improper collections.

9.      While the total sales in Georgia of premium mobile content in 2007 amount to a significant sum, the business is still in its infancy. The burgeoning industry has already expanded from ordinary ringtones into mass media-related products such as interactive radio and

3

participatory voting at television and concert events and, most recently, into services that enable cell phones to function as credit cards. Unchecked, Defendant's practices will injure an ever-increasing number of unwitting consumers, inflicting damages of an untold magnitude.

10.    Unlike transactions made using checks and credit cards, which require a signature or a highly private sixteen-digit credit card number, the only thing a mobile content provider needs to charge a consumer for its products is the consumer's cellular telephone number. Once a mobile content provider has a consumer's cell phone number, it can cause that consumer to be billed for services and products irrespective of whether the consumer actually agreed to purchase them.

11.    Armed with only a cell phone number, the mobile content provider can simply provide that number, along with an amount to be charged, to a billing aggregator (such as m-Qube or mBlox). The aggregator, in turn, instructs the relevant cellular carrier to add the charge to the bill associated with that cell phone number. The charge will then appear on the consumer's cell phone bill, often with only minimal, cryptic identifying information.

12.    Because the protections normally present in consumer transactions -- such as signatures and private credit card numbers -- are absent from this process, the likelihood of false charges increases enormously. And because a substantial part of mobile content "sales" are effected through web sites using misleading, oblique, or inadequately explained "consent" procedures, that likelihood increases by another order of magnitude. Mobile content providers have powerful financial incentives to collect as many cell phone numbers as possible but little incentive to ensure that the owners of those numbers have truly agreed to purchase their goods and services.

4

13.     While aggregators charge their content provider customers some upfront fees, their revenue is primarily generated through a "revenue share" on transactions for which they bill cell phone subscribers: each time a charge is incurred in connection with the purchase of mobile content services offered by a content provider, the aggregator and/or the content provider cause said charge to be billed directly on the cellular telephone bill of the carrier's customer who currently owns and/or uses the telephone number (claimed to be) associated with said purchase.

14.     The carrier then bills and collects the charge from its current subscriber, retains about a portion of the proceeds as its "revenue share" and then remits the balance to the aggregator who has direct access to its network, who retains a percentage of the balance in the form of its own "revenue share," and then remits the remainder directly to the mobile content provider.

15.     AT&T uses uniform form contracts ("Service Agreements") under which customers purchase cell phone services.

16.     As described above, AT&T's services include providing access to and billing for various third-party mobile content services such as ring tones, chat services, horoscopes, stock tips, weather alerts, participatory television, mobile payment services and other forms of software provided by hundreds of third-party vendors with names such as New Motion and many others.

17.     AT&T has contracted with third-party providers to bill and collect from AT&T's customers the services provided by such third-party content providers, the charges for which are included directly on a customer's monthly wireless bill.

18.     The duty of good faith and fair dealing, a part of every contract, requires that AT&T not bill any customer for any good or service not authorized by the customer.

5

19.     Upon execution of said Service Agreements and activation of cellular telephone accounts, AT&T provides its customers a ten-digit cellular telephone number.

20.     As explained above, unbeknownst to its customers, AT&T frequently charges consumers for services that were never authorized.

21.     As a result, AT&T has for years been systematically, repeatedly and without authorization, billing its customers for purchase of products and services not agreed to by those customers.    AT&T and third-party service providers have, on information and belief, profited significantly through this practice.

22.     AT&T's conduct is by no means accidental. As previously alleged, it knows that many of its cellular telephone customers dispute the claim the mobile content provider's claim that such customer consented to be charged for their mobile content services. AT&T further knows that it cannot authenticate such customer's authority to be billed for such mobile content charges. In light of its knowledge of these facts, AT&T's decision to continue to charge its customers for mobile content without taking steps to authenticate the representations of the mobile content providers that the customer's authority to be charged was obtained constitutes a deliberate and willful scheme to cheat large numbers of people out of small amounts of money.

23.     Because the amount AT&T is taking is small on an individual basis -- as little as a few dollars to at most several hundreds of dollars per person -- and because of AT&T's vast resources and superior bargaining power, Defendant employ this scheme with the hope and expectation that its illegal conduct will go unpunished.

### The Facts Relating to Named Plaintiff

24.     In or about 2006, Plaintiff purchased new cell phone service for her family's personal use from an authorized AT&T sales representative.

6

25.     On that same day, in exchange for an AT&T cell phone service plan, Plaintiff agreed to pay a specific amount each month for a period of approximately 12 months.

26.     Upon activating her cellular telephone account, AT&T provided Plaintiff a cellular telephone number.

27.     In or about late 2007, Plaintiff's cell phone account was charged for multiple unwanted mobile content services in the form of "premium" text messages from mBlox, Inc. and/or m-Qube, Inc. , third party providers of mobile content services.

28.     At no time did Plaintiff authorize the purchase of these products and services offered by Defendant and/or its agents at no time did Plaintiff consent to their sending of text messages to her cellular telephone.

29.     During the relevant time period, Defendant caused Plaintiff to be charged service fees in varying amounts for so-called "Premium" text messages and mobile content downloads provided by Defendant and/or its agents.

30.     At no time did Plaintifff authorize Defendant or anyone else to bill her for these services.

31.     At no time did Defendant verify Plaintiff's purported authorization of these charges and no time did Defendant provide a complete refund consisting of the premium text message charges, ordinary text messages, data charges and/or back interest. Nor did AT&T provide Plaintiff an assurance that such unauthorized charges would not appear in future billing periods.

### Class Representation Allegations

32.     Plaintiff brings this action on behalf of herself and a class consisting of all AT&T wireless telephone subscribers in the nation who suffered losses or damages as a result of AT&T

7

billing for mobile content products and services not authorized by the subscriber (the "Carrier Class") provided, however, that the following are excluded from this proposed Class: (i) Defendant, and (ii) any employee of Defendant.

33.    **Numerosity.** The class consists of thousands of members throughout the State of Georgia and the nation. The membership of the class is so numerous that joinder of all of them in this lawsuit would be impractical.

34.    **Typicality.** The claims of Plaintiff are typical of the claims of all of the other members of the Class. The practices of Defendant are and have been uniform with regard to all class members. And the contracts that Defendant has entered into with the class members are substantially identical. Defendant's actions also have affected the members of the class in similar ways. Members of the class have sustained damage as a direct result of the wrongful conduct described in this complaint.

35.    **Adequacy of Representation.** Plaintiff will fairly and adequately represent and protect the interests of the other members of the class. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class, and have the financial resources to do so. Neither Plaintiff nor her counsel has any interest adverse to those of the other members of the Class.

36.    **Common Questions of Law and Fact.** Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitive, and will have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

8

37.     Defendant has acted and failed to act on grounds generally applicable to the plaintiff and the other members of the respective Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class.

38.     The factual and legal bases of Defendant's liability to Plaintiff and to the other members of the respective Class are the same, resulting in injury to the Plaintiff and to all of the other members of the Class.  Plaintiff and the other Class members have all suffered harm and damages as a result of Defendant's unlawful and wrongful conduct.

39.     There are many questions of law and fact common to the claims of Plaintiff and the other members of the respective Class, and those questions predominate over any questions that may affect individual members of the Class.  Common questions for the Class include but are not limited to the following:

    (a)     Whether AT&T's conduct described herein is in breach of contract; and

    (b)     Whether AT&T's conduct described herein violates Georgia Code § 46-5-171.1.

### COUNT I
### (Breach Of Contract on behalf of the Class)

40.     Plaintiff incorporates by reference the foregoing allegations.

41.     Plaintiff and the Class entered into substantially identical agreements with Defendant AT&T whereby Plaintiff and the AT&T agreed to pay a certain sum of money in exchange for AT&T's activation of Plaintiff and the AT&T's cellular telephone account and its promise to provide various communication and related services to Plaintiff and the Class.

9

42.     Defendant AT&T expressly and/or impliedly agreed to provide Plaintiff and the Class with a cellular telephone number free of unauthorized charges for third-party products and services.

43.     Defendant AT&T further expressly and/or impliedly agreed to bill Plaintiff and the Class only for products or services the purchase of which they had authorized.

44.     Defendant AT&T further expressly and/or impliedly agreed to carry out its obligations in good faith and fair dealing.

45.     Defendant AT&T breached its contractual obligations by providing Plaintiff and the Class with cellular telephone accounts that included unauthorized charges for mobile content.

46.     Defendant AT&T further breached its contractual obligations, including its contractual obligation of good faith and fair dealing, by thereafter billing Plaintiff and the Class for products or services, the purchase of which they never authorized.

47.     The aforementioned breaches of contract have proximately caused the Plaintiff and the Class economic injury and other damages.

## COUNT II
### (Violation of Georgia Code § 46-5-171.1 on behalf of the class)

48.     Plaintiff incorporates by reference the foregoing allegations.

49.     Defendant provided Plaintiff and the other class members with local telephone service.

50.     Defendant charged Plaintiff and the other class members for third-party content, as alleged elsewhere in this Complaint.

10

51.    Plaintiff and the other class members did not consent or authorize these services. Defendant does not have any evidence that Plaintiff or the other class members gave prior express authorization for those third-party content services.

52.    In violation of Georgia Code § 46-5-171.1, the invoice for charges for such services were not clear, conspicuous, separate, and distinct manner so as to ensure that the customer is aware of such charges.

WHEREFORE, Plaintiff Tracie McFerren, on behalf of herself and the Class, prays for the following relief:

a.    Certify this case as a class action on behalf of the Class as defined above and appoint Tracie McFerren Class Representative, and appoint the undersigned counsel as lead counsel;

b.    Declare that the actions of AT&T, as set out above, constitute a breach of contract and violates Georgia state law;

c.    Enter judgment against AT&T for all economic, monetary, actual, consequential, and compensatory damages caused by its conduct, and if its conduct is proved willful, award Plaintiff and the Class exemplary damages;

d.    Award Plaintiff and the Class reasonable costs and attorneys' fees;

e.    Award Plaintiff and the Class pre- and post-judgment interest;

f.    Enter judgment for injunctive, statutory and/or declaratory relief as is necessary to protect the interests of Plaintiff and the Class; and

g.    Award such other and further relief as equity and justice may require.

**JURY DEMAND**

Plaintiff requests trial by jury of all claims that can be so tried.

Dated: March 31, 2008.

11

Respectfully submitted,

BOONE & STONE

David Wm. Boone
Georgia State Bar No. 067730
Simone R. Siex
Georgia State Bar No. 645858

3166 Mathieson Drive
Atlanta, Georgia 30305
TEL    404/239-0305
FAX    404/239-0520

By:  /S/William S. Stone
William S. Stone
Georgia State Bar No. 684636

P. O. Drawer 70
Blakely, Georgia 39823
TEL    229/723-3045
FAX    229/723-4834

# Exhibit D

## KAMBEREDELSON, LLC -- FIRM RESUME

In October of 2007, two nationally recognized plaintiffs' class action firms joined to form KamberEdelson, LLC. With lawyers in New York, Los Angeles, Florida, and Chicago, KamberEdelson has a practice that is national in scope.

KamberEdelson focuses its practice on all types of plaintiff's-side class and mass actions, and has eight primary practice areas:

- "New technology" class actions;
- Privacy class actions;
- Securities class actions;
- Mass tort class and mass actions;
- Consumer class actions;
- Insurance class actions;
- Antitrust cases; and
- International arbitrations.

The firm's cases frequently involve important legal issues, and regularly receive attention from local, national, and international media. Our cases and attorneys have been reported in the Chicago Tribune, USA Today, the Wall Street Journal, the New York Times, the LA Times, by the Reuters and UPI news services, and BBC International. Our attorneys have appeared on numerous national television and radio programs, including on ABC World News, CNN, Fox News, NPR, and CBS Radio, as well as television and radio programs outside of the United States. We have also been called upon to give congressional testimony and other assistance in hearings involving our cases.

## OUR ATTORNEYS

**SCOTT A. KAMBER** is a founding member of KamberEdelson. Mr. Kamber currently serves as lead or co-lead counsel in numerous major national class actions including In re Pet Food, In re ATI Tech HDCP Litig., Johnson v. Microsoft, In re Network Commerce Securities Litigation, and In re HP Power Plug and Graphic Card Litig. Mr. Kamber has also served in leadership roles in numerous private and class actions including suits on behalf of shareholders, consumers and private corporations in the United States and abroad,, including: In re Song BMG CD Technologies (one of the largest computer virus cases ever resolved), Wormley v. GeoCities (consumer class action for privacy violations that is believed to be the first internet privacy case to recover a benefit for impacted class members); In re Starlink Growers (represented sub-class of farmers who grew Starlink in a consolidated settlement of federal class action valued in excess of $100 million); In re Loch Harris (derivative action that successfully obtained dissolution of corporation and distribution of assets to shareholders); In re Command Systems (securities class action in which participating shareholders recovered over 80% of their losses); and In re WebTV (consumer class action for false advertising).

In addition to these commercial cases, Mr. Kamber has been involved in the efforts of

African torture victims to bring their persecutors to justice under the Alien Tort Claims Act and has achieved significant decisions for his clients before the United States Court of Appeals for the Second Circuit and the Southern District of New York. One such result, Cabiri v. Ghana, 165 F.3d 193 (1999), is a leading Second Circuit case under the Foreign Sovereign Immunities Act.

Mr. Kamber graduated cum laude from University of California, Hastings College of the Law in 1991 where he was Order of the Coif, Articles Editor for Hastings Constitutional Law Quarterly and a member of the Moot Court Board. Mr. Kamber graduated with University and Departmental Honors from The Johns Hopkins University in 1986. Mr. Kamber has extensive courtroom experience and has tried over 15 cases to verdict. Prior to founding Kamber & Associates, LLC, Mr. Kamber represented both plaintiffs and defendants in a wide range of commercial litigation. Mr. Kamber is admitted to practice in the State of New York as well as the United States Supreme Court, the United States Court of Appeals for the Second Circuit and Ninth Circuit, and the United States District Courts for the Southern and Eastern Districts of New York. In addition, Mr. Kamber is well-versed in the procedures and practice of numerous arbitration forums, both domestic and international. Prior to practicing law, Mr. Kamber was a financial consultant.

**JAY EDELSON** is a founding member of KamberEdelson. He has served as lead counsel in over 40 class actions, resulting in hundreds of millions of dollars in relief for his clients. His class action cases have established precedent concerning the ownership rights of domain name registrants, the applicability of consumer protection statutes to internet businesses, and the interpretation of numerous life insurance, health insurance, and other state statutes. In February of 2007, the Chicago Sun Times nicknamed Mr. Edelson the "Spam Slammer" after he secured the first settlement of a suit under the Telephone Consumer Protection Act for the alleged transmission of unsolicited text messages. Mr. Edelson has been involved in a number of high-profile "mass tort" class and mass actions and product recall cases, including ones against Menu Foods for selling contaminated pet food, a class action settlement involving the Thomas the Tank toy train recall, and suits involving damages arising from second hand smoke.

Mr. Edelson is frequently asked to participate in legal seminars and discussions regarding the cases he is prosecuting. He has also appeared on dozens of television and radio programs to discuss his cases. In April of 2007, Mr. Edelson provided testimony to the Subcommittee on Agriculture Appropriations, Senate Committee on Appropriations, U.S. Senate Hearing on "Pet Food Contamination" in connection with one of the class action cases he is prosecuting. Mr. Edelson consults with the University of Chicago Medical Center and the Pritzker School of Medicine on internet and legal ethics issues. Mr. Edelson is a graduate of Brandeis University and the University of Michigan Law School.

**ALAN HIMELFARB** is a member of KamberEdelson. Mr. Himmelfarb was admitted to the practice of law in California in July, 1979. At that time, at the age of 23, he was the youngest member of the California Bar. Within five years, he became managing attorney of a law firm employing six attorneys and a support staff of ten. He specialized in complex litigation, contracts, high technology, foreign licensing, and foreign technology

transfers, and practiced before both state and federal courts. In 1988, he took a position overseas as a foreign legal consultant in Asia. In this capacity, he acted as chief negotiator for international sales/service/technical transfer agreements, mediated cross-cultural (Asian--Western) business and governmental interests, evaluated international business/marketing strategies for multinational corporations, drafted and negotiated a full range of international transactional agreements for Korean, European and American corporations and businessmen and marketed legal services to Korean domestic market and international community. In 1992, Mr. Himmelfarb returned to Los Angeles in the capacity of a litigator, with an emphasis on plaintiff's work against banks and other financial institutions. He has been engaged in class action litigation since 1994.

**ETHAN PRESTON** is a member of KamberEdelson. Mr. Preston focuses on consumer technology, and concentrates his practice in antitrust/competition issues and information security issues. Mr. Preston has taken substantial leadership roles in numerous class action lawsuits. Mr. Preston is admitted to practice before the Northern District of Illinois, the District of New Mexico, and Illinois state courts. Mr. Preston is an inactive member of the New Mexico state bar. Mr. Preston has authored the following law review articles: Cross-Border Collaboration by Class Counsel in the U.S. and Ontario, 4 Canadian Class Action Rev. 164 (2007), The Global Rise of a Duty to Disclose Information Security Breaches, 22 J. Marshall J. Computer & Info. L. 457 (2004) (with Paul Turner), Computer Security Publications: Information Economics, Shifting Liability and the First Amendment, 24 Whittier L. Rev. 71 (2002) (with John Lofton), and The USA PATRIOT Act: New Adventures in American Extraterritoriality, 10 J. Fin. Crime 104 (2002). Mr. Preston has lectured on copyright issues at the University of Illinois at Chicago, and on comparative law on attorneys' fees and costs for the Center for International Legal Studies. Mr. Preston received his Bachelor of Arts degree with honors from the Plan II honors program at the University of Texas at Austin, and his J.D. with distinction from the Georgetown University Law Center in 2001.

**MYLES MCGUIRE** is a member of KamberEdelson. His practice concentrates, nearly exclusively, on consumer protection law and class actions. Mr. McGuire has taken leadership roles in many nationwide and multi-state class actions. His specific area of emphasis is on "new technology" class actions, including those involving electronic commerce, cellular telephony and wireless media, among others. He has served in leadership positions in groundbreaking settlements involving Facebook, Verizon, Sprint, and T-Mobile.

Mr, McGuire graduated from Marquette University Law School in 2000 and is admitted to practice in Wisconsin and Illinois. He is a member of the National Association of Consumer Advocates and the Chicago Bar Association. Prior to working as a plaintiff's attorney, Mr. McGuire spent several years counseling high-tech companies.

**STEVEN W. TEPPLER** is Senior Counsel to KamberEdelson. Mr. Teppler concentrates his practice on data protection and information technology law, including electronic discovery, loss or destruction of information, authentication and admissibility issues uniquely inherent to computer generated information, including spoliation issues

arising from unauthorized or illegal data manipulation or alteration. He is the Co-Vice-Chair of the American Bar Association Information Security Committee as well as the Florida Bar's Professional Ethics Committee.

Mr. Teppler has authored over a dozen articles relating to information technology law and routinely presents his work at conferences. Mr. Teppler's recent publications include: Spoliation in the Digital Universe, The SciTech Lawyer, Science and Technology Law Section of the American Bar Association, Fall 2007; Life After Sarbanes-Oxley – The Merger of Information Security and Accountability (co-author), 45 Jurimetrics J. 379 (2005); Digital Signatures Are Not Enough (co-author), Information Systems Security Association, January 2006; *State of Connecticut v. Swinton*: A Discussion of the Basics of Digital Evidence Admissibility (co-author), Georgia Bar Newsletter Technology Law Section, Spring 2005; The Digital Signature Paradox (co-author), IETF Information Workshop (The West Point Workshop) June 2005; Observations on Electronic Service of Process in the South Carolina Court System, efiling Report, June 2005. Mr. Teppler is also a contributing author to an American Bar Association book working titled "Foundations of Digital Evidence" (publication expected March 2008).

Mr. Teppler graduated from the Benjamin N. Cordozo School of Law in 1980 after earning his B.A., summa cum laude, from the City College of New York in 1977.  Mr. Teppler is admitted to the bars of New York, the District of Columbia and Florida.

**DANA B. RUBIN** is an associate at KamberEdelson focusing her practice on a wide range of class action issues. She graduated with honors from the University of Maryland, College Park in 1993. She received her J.D. in 1999 from Fordham University School of Law, where she was an Associate Editor on the Intellectual Property, Media & Entertainment Law Journal.

Prior to joining KamberEdelson, Ms. Rubin played a role in numerous private and class actions on behalf of shareholders and consumers. Ms. Rubin has also represented both plaintiffs and defendants in employment litigation and civil rights matters. Ms. Rubin is admitted in the State Courts of New York and the United States District Courts for the Southern and Eastern Districts of New York. She is a member of the New York State Bar Association.

**JENNIFER H. FELDSCHER** is an associate at KamberEdelson. Ms. Feldscher was previously a litigation associate at Lewis, Brisbois Bisgaard & Smith, LLP, where she concentrated her practice on all areas of complex commercial litigation.

Ms. Feldscher is a 2001 graduate of Georgetown University School of Law and a 1998 graduate of Brown University.

**STEVEN LEZELL** is an associate at KamberEdelson. Mr. Lezell has tried a number of bench trials, engaged in extensive motion practice from routine to complex, written appellate briefs, litigated class action matters and arbitrated cases.

Mr. Lezell received his J.D. at Chicago-Kent College of law with High Honors in 2005. Mr. Lezell received his certificate in litigation and alternative dispute resolution and was awarded to Chicago-Kent's Order of the Coif. He served as President of the Student Bar Association and as a Notes and Comments Editor for the Chicago-Kent Law Review. Mr. Lezell also represented Chicago-Kent at the National Sports Law Moot Court Competition in New Orleans in 2004 and was awarded the ABA-ALI Scholarship and Leadership Award, for best representing the combination of leadership and scholarship in his graduating class. Mr. Lezell also received the Lowell H. Jacobson Memorial Scholarship which is awarded each year to one law student in the Seventh Circuit. Mr. Lezell received his B.A. in political science, with Distinction, from the University of Michigan in 2002.

**RYAN D. ANDREWS** is an associate at KamberEdelson, LLC. Prior to joining the firm, Mr. Andrews engaged in all aspects of the prosecution and defense of claims on behalf of individual and corporate clients, including motion practice, arbitration, mediation, trial to verdict, and appeals.

Mr. Andrews received his J.D. with high honors from the Chicago-Kent College of Law in 2005 and was named Order of the Coif. While in law school, Mr. Andrews was Notes & Comments Editor for the Chicago-Kent Law Review, a teaching assistant for both Property Law and Legal Writing courses, externed for the Hon. Joan B. Gottschall in the Northern District of Illinois, and earned CALI awards for the highest grade in five classes.

Mr. Andrews graduated from the University of Michigan in 2002 earning his B.A., with distinction, in Political Science and Communications.

**STUART WESCHLER** is Of Counsel to KamberEdelson. The efforts of Mr. Wechsler in the area of securities litigation have received considerable judicial comment. U.S. District Court Judge Alvin K. Hellerstein commented in Doney v. Command Systems, (98 Civ. 3279), in an opinion dated August 10, 1999, "I don't think it needs my comment to note that, Mr. Wechsler, you are a senior and most respected and most competent member of the securities class action bar. I would take it as a given your hours are worth the rates that you charge and that the hours that you have put in reflect the efficiency with which you work." In a report dated May 23, 1977, in Bucher v. Shumway, 76 Civ. 2420 (S.D.N.Y.), United States Magistrate Leonard Bernikow stated that "Stuart Wechsler . . . is a leading expert in securities class action litigation." Mr. Wechsler also led the team of attorneys that successfully prosecuted the class action, Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322 (1979), to a landmark decision in federal civil procedure. He was also the responsible partner in Van Gemert v. Boeing, one of the earliest actions maintained as a class action under the then newly amended Federal Rules of Civil Procedure and one of the very few securities class actions ever to go to trial and judgment. Moreover, Mr. Wechsler played an integral role in obtaining a landmark Supreme Court decision in an important phase of that action. See Boeing Co. v. Van Gemert, 444 U.S. 472 (1980).

Mr. Wechsler was admitted to the bar 1958, New York; Supreme Court; U.S. Court of

Appeals, Second, Third and Fifth Circuits; U.S. District Court, District of Arizona; U.S. District Court, Western District of Michigan. Education: University of Pennsylvania (B.S., 1953); Yale University (J.D., 1955). Editor: "Prosecuting and Defending Stockholder Suits," Practicing Law Institute, Nov., 1973. Author: "The Securities Acts Amendments of 1964," Stock Market Magazine, November, 1964; "Notice to Debenture Holders," The Review of Securities Regulation, April 15, 1976. Chairman: PLI Programs regarding class actions and stockholder suits, 1970-1977, "New Trends in Securities Litigation," 1977-79 and "Exemptions from Registration: Spinoffs-Shells and other Devices," 1970. Faculty Member, Columbia Law School Continuing Education Programs, 1979-1982. Chairman: Practicing Law Institute program, "Stockholder Suits and Class Actions," 1986; University of Virginia seminar, "Trial of a Securities Case," 1989. Lecturer, Panels on Securities Litigation and Class Actions, American Bar Association, 1975; ALI-ABA Study Course, Civil Rico Member, Board of Directors, Concert Artists Guild, 1982-1984. Member, Board of Editors, "Class Action Reports," 1977. Chairman, Securities Law Committee, Federal Bar Council, 1980-1985. Member, Committee on Second Circuit Courts of the Federal Bar Council, 1986. Member: American Bar Association; Federal Bar Council.

**JOHN BLIM** is Of Counsel to KamberEdelson. Mr. Blim is a graduate of Northwestern University School of Law, where he received his J.D. degree cum laude in 1994 and was elected to the Order of the Coif. He served as an associate articles editor on the Northwestern University Law Review from 1993 to 1994. Mr. Blim was also a member of the winning team and voted Best Speaker in the law school's moot court competition. From 1994 to 2000, he was a litigation associate at nationally recognized law firms, including Sidley & Austin.

Mr. Blim has published articles in major legal journals, and his writing has been described as "thoughtful commentary" by a leading treatise on constitutional law. Before attending law school, John earned his Ph.D. in English literature from Northwestern University, where he was also a lecturer in the school's English department.

State and federal courts have appointed John as class counsel in numerous class action cases collectively benefiting millions of individuals.

## NOTABLE CASES

Our members have taken leading roles in the following cases:

## "NEW TECHNOLOGY" CONSUMER PROTECTION CLASS ACTIONS

*Shen v. Distributive Networks LLC.* No. 06 C 4403 (N.D.Ill.)
Co-lead counsel in a class action alleging that defendant violated federal law by sending unsolicited text messages to the cellular telephones of consumers throughout the country. The settlement - which is the first of its kind in the country - provided each class member with up to $150 in cash.

*Gresham v. Cellco Partnership*, No. BC 387729 (Los Angeles Sup. Ct.) lead counsel in case alleging unauthorized charges were placed on cell phone bills. Settlement provided class members with full refunds.

*Abrams v. Facebook, Inc.,* No. 07-05378 (N.D.Cal.) lead counsel in settlement concerning the transmission of allegedly unauthorized mobile content.

*Zurakov v. Register.com,* No. 01-600703 (N.Y.Cty, New York)
Co-lead counsel in a class action brought on behalf of an international class of over one million members against Register.com for its deceptive practices in registering internet domain names. In November, 2003, the New York Supreme Court (trial division) granted final approval of a settlement that required Register.com to fully disclose its practices and provided the class with a relief with a collective face value in excess of $17 million.

*Kiesel v. Time Warner*, No. 809542 (Orange County Sup. Ct.)
Co-lead counsel in a representative action on behalf of thousands of apartment and condominium residents in which firewalls were breached during cable installation. The settlement provided the class with complete relief including the inspection of every multi-unit dwelling in the affected county and repair of all breached units wherever they were found.

*Weaver v. WebTV,* No. 793551 (Santa Clara Sup Ct.) co-lead counsel in a certified nationwide consumer class action case Alleging consumer fraud / deceptive advertising of computer services and capabilities. The settlement provided the class with a collective award with a guaranteed minimum face value of six millions of dollars.

## GENERAL CONSUMER PROTECTION CLASS ACTIONS

*Pulcini v. Bally Total Fitness Corp.*, No. 05 CH 10649 (Cook County, Ill.)
Co-lead counsel in four class action lawsuits brought against two health clubs and three debt collection companies. A global settlement provided the class with over $40 million in benefits, including cash payments, debt relief, and free health club services.

*Kozubik v. Capital Fitness, Inc.*, 04 CH 627 (Cook County, Ill.)
Co-lead counsel in state-wide suit against a leading health club chain, which settled in 2004, providing the over 150,000 class members with between $11 million and $14 million in benefits, consisting of cash refunds, full debt relief, and months of free health club membership.

*Kim v. Riscuity*, No. 06 C 01585 (N.D.Ill)
Co-lead counsel in suit against a debt collection company accused of attempting to collect on illegal contracts. The case settled in 2007, providing the class with full debt relief and return of all money collected.

*Jones v. TrueLogic Financial Corp.*, No. 05 C 5937 (N.D.Ill)
Co-lead counsel in suit against two debt collectors accused of attempting to collect on illegal contracts. The case settled in 2007, providing the class with approximately $2 million in debt relief.

*Chancer v. Princess Cruises*, No. BC 115472 (Los Angeles Sup. Ct.)
Co-lead counsel in a class action lawsuit challenging a cruise line's deceptive "low price guarantee" as a consumer fraud class action. The settlement provided the class with a collective award with a face value of millions of dollars.

*Fertelmeyster v. Match.com*, No. 02 CH 11534 (Cook County, Illinois)
Co-lead counsel in a state-wide class action suit brought under Illinois consumer protection statutes. The settlement provided the class with a collective award with a face value in excess of $3,000,000.

*Cioe v. Yahoo!, Inc.*, No. 02 CH 21458 (Cook County, Illinois)
Co-lead counsel in a state-wide class action suit brought under state consumer protection statutes. The settlement provided the class with a collective award with a face value between $1,600,000 and $4,800,000.

*Cioe v. Lycos*, No. 02 CH 21456 (Cook County, Illinois)
Co-lead counsel in a state-wide class action suit settled under state consumer protection statutes.

*Gavrilovic v. Vintacom Media Group, Inc.*, No. 04 CH 11342 (Cook County, Illinois);
Co-lead counsel in a state-wide class action suit settled under state consumer protection statutes.

*McArthur v. Spring Street Networks*, 100766/2004 (NY Cty.)
Co-lead counsel in a nationwide class action suit settled under New York consumer protection statutes.

*California Reconveyance Cases*
Part of a team of attorneys who settled a series of state court class action cases under California's Reconveyance Statute. Cases settled for a collective amount of over $10,000,0000.

**INSURANCE CLASS ACTIONS**

*Holloway v. J.C. Penney*, No. 97 C 4555, (N.D.Ill.)
One of the primary attorneys in a multi-state class action suit alleging that the defendant illegally denied life insurance benefits to plaintiffs' class. The case settled in or around December of 2000, resulting in a multi-million dollar cash award to the class.

*Ramlow v. Family Health Plan* (Wisc.Cir.Ct.):

Co-lead counsel in a class action suit challenging defendant's termination of health insurance to groups of self-insureds. The plaintiff won a temporary injunction, which was sustained on appeal, prohibiting such termination and eventually settled the case ensuring that each class member would remain insured.

## PRODUCTS LIABILITY CLASS ACTIONS

*Barrett v. RC2 Corp.*, No. 07 CH 20924 (Cook County, Illinois): Appointed co-lead counsel in lead paint recall case involving Thomas the Tank toy trains. Settlement is valued at over $30 million and provides class with full cash refunds and reimbursement of certain costs related to blood testing.

*In re Pet Foods Product Liability Litigation*, No. 07-2867 (D.NJ)
Appointed co-lead counsel in class action involving largest pet food recall in United States history. Settlement provided $24 million common fund and $8 million in charge backs.

*In re Starlink Corn Products Liability Litigation* (N.D.Ill.)
Represented sub-class of farmers who grew recalled Starlink corn in a consolidated settlement of federal class action valued in excess of $100 million.

*Kan v. Toshiba America Information Systems, Inc.* No. BC327273 (Los Angeles Sup. Ct.)
Class counsel in a defective product / breach of warranty action concerning laptop computers. The settlement provided the class with a collective award with a face value of approximately $45,000,000.

## SECURITIES CLASS ACTIONS

*Stassi et al. v. Loch Harris et al.*, No. GN 200180 (Tex)
Brought derivative action on behalf of technology development company that successfully obtained dissolution of corporation and distribution of assets to shareholders);

*In re Command Systems*, Case No. 98-cv-3279 (S.D.N.Y.)
Brought securities class action against technology company in which participating shareholders recovered over 80% of their losses

## PRIVACY CLASS ACTIONS

*Wormley v. GeoCities*, No. 196032 (Los Angeles Sup. Ct.)
Class Counsel in consumer class action for privacy violations that is believed to be the first internet privacy case to recover a benefit for impacted class members

*Elvey v. TD AMERITRADE Inc.* (N.D.Cal.)
Pursuing class action against an Internet-based securities broker for failing to disclose a security breach which involved customer names and email addresses for over 6 million accounts.

## MASS/CLASS TORT CASES

*Aaron v. Chicago Housing Authority,* 99 L 11738, (Cook County, Illinois)
Part of team representing a group of public housing residents bringing suit over
contamination-related injuries. Case settled on a mass basis for over $10,000,000.

*Sturman v. Rush Presbyterian-St.Luke's Medical Center*, 2000 L 11069 (Cook
County, Ill.)
Part of team of attorneys in suit against hospital and national association of blood
banks alleging failure to warn of risks of hepatits C infection as a result of past
blood transfusions.

*Januszewski v. Horseshoe Hammond*, No. 2:00CV352JM (N.D.Ind.)
Part of team of attorneys in mass suit that alleged that defendant riverboat casino
caused injuries to its employees arising from exposure to second-hand smoke. Case
settled on confidential terms.

# Exhibit E

## Boone & Stone Firm Resume

Mr. Boone, a nationally board certified trial lawyer, has personally recovered over 75 million dollars in verdicts and settlements for injured consumers since 1979.

An avid protector of our justice system, Mr. Boone has served as the President and a Director of the Georgia Civil Justice Foundation, a nonprofit corporation founded by the Georgia Supreme Court and funded by the Georgia Legislature for the purpose of educating consumers and preserving the United States civil justice system.

Mr. Boone is active in both the American Association for Justice and Georgia Trial Lawyers Associations, having held the offices of President and Treasurer of the Georgia Trial Lawyers Association and Vice Chair of the Council of State Presidents. He has served on the Board of Directors of the Brain Injury Association of Georgia and the Experimental Aircraft Association.

A graduate of the University of Central Florida and Cumberland School of Law, Mr. Boone has held faculty positions and lectured around the country for various organizations including the American Trial Lawyers Association, National Board of Trial Advocacy, Georgia Civil Justice Foundation, Idaho Trial Lawyers; and Wyoming Trial Lawyers Association.

In addition to his law practice, Mr. Boone is President of Attorneys Air Travel, Inc., a company engaged in aircraft leasing, and Vice President and General Counsel for Air Sunshine, Inc., a regional scheduled air taxi operation servicing South Florida, the Bahamas, and the Caribbean. Mr. Boone holds an Airline Transport Pilot certificate with a Cessna Citation C500 type rating, as well as Commercial Pilot License for single engine land and sea. He has been flying for thirty years and has over 7,000 hours of general aviation flying.

### Current Employment Position(s):

- Of Counsel, Adams, Hayward, Nicolas & Welsh

### Year Joined Organization:

- 1979

### Areas of Practice:

- Civil Litigation
- Personal Injury
- Medical Malpractice
- Products Liability
- Wrongful Death
- Aviation Litigation
- Commercial Litigation

### Certification/Specialties:

- Board Certified, Civil Trial Law, Florida Bar Board of Legal Specialties, 1999
- Board Certified, Civil Trial Law, Florida Bar Board of Legal Specialties, 1999
- Licensed Salesman, The Florida Board of Realtors, 1973

**Bar Admissions:**

- Florida, 1978
- Georgia, 1987
- U.S. District Court Southern District of Florida, 1979
- U.S. District Court Middle District of Florida, 1979
- U.S. District Court Northern District of Florida, 1991
- U.S. District Court Northern District of Georgia, 1987
- U.S. District Court Middle District of Georgia, 1987
- U.S. District Court Southern District of Georgia, 1992
- U.S. Court of Federal Claims
- U.S. Court of Appeals 5th Circuit, 1981
- U.S. Court of Appeals 11th Circuit, 1981
- U.S. Court of Appeals 6th Circuit, 1982
- U.S. Court of Appeals 6th Circuit, 1982

**Education:**

- Cumberland School of Law, Samford University, Birmingham, Alabama, 1978
- J.D.
- Honors: Cum Laude
- Honors: Delta Theta Phi
- University of Central Florida, Orlando, Florida, 1975
- B.A.

**Published Works:**

- Tort Reform, Georgia Healthcare News, Atlanta, Georgia, 1994

**Representative Cases:**

- Coleman v. Puhalovich, North Fulton Anesthesia (2007)
- Smith v. Steinmetz (2004)
- Norberg v. Nationwide - Southeast, (2004)
- Layne v. Shands Hospital, (2003)
- Thomas v. Kaiser, (2003)
- Turpin v. Macon Aviation, et al., (2003)
- Washington v. Housing Assistance, (2003)
- Henry v. Atlanta Gas Light, (2003)
- Lee v. Kennestone Hospital, (2001)

- Alen v. Gateway Construction, Broward County, Florida
- Loveless v. Luna LaserPerfect Skin Centers, LLC (1999)
- Johns v. Cherokee Trucking Company (1999)
- Collicott v. Haines Trucking Company (1999)
- Malon v. General Motors (1998)
- Sylvestre v. Holmes Regional Hospital, Brevard County, Florida
- Hughes v. Cobb County, 441 S.E.2d 406 (1994)
- Fugate v. Honda, Michigan (1989)
- Clemons v. Ft. Sanders Regional Medical Center, et. al., Knoxville, TN
- Gaines v. Winne Dixie, 542 So.2d 432 (1989)
- Sullivan v. Sullivan

**Classes/Seminars Taught:**

- Filing a Qui Tam Action, Washington State Trial Lawyers Association, Trial Advocacy-Navigating in the New Millennium Seminar, 2007
- Qui Tams, Can you beat the Pleading requirement without Government Intervention, Kentucky Academy of Trial Attorneys, Spring Break Seminar, 2006
- Getting to Verdict: Coding Information for Juror Motivation, NJ ATLA, Boardwalk Seminar, 2006
- If Jurors Want to Do "Right" Why Don't We Always Win, NJ ATLA, Boardwalk Seminar, 2006
- Peer Review Privilege, ATLA, Winter Convention, Honolulu, Hawaii, 2006
- Proving Damages in a Medical Negligence Case in a Skeptical World, ATLA Summer Convention, Seattle, Washington, 2006
- Good Faith, Bad Faith: Holding Non-Parties Responsible For Increasing The Expense And Burden Of Litigation, ATLA, Weekend With the Stars, New York, New York 2006
- Deposition of a Pathologist, ATLA, Summer Convention, Toronto, Canada, 2005
- Professionalism, Ethics and Malpractice, Institute of Continuing Legal Education in Georgia, 2004
- Winning Brain Injury Cases, Institute for Continuing Legal Education in Georgia, Atlanta, 2003
- Determining the Value of Your Case: Pre-Litigation Focus Groups and Jury Research, Institute for Continuing Legal Education in GA, Atlanta, 2003
- ATLA Case Workshop Program Faculty Member, ATLA, Winter Convention, 2003
- Jury Trial, Institute of Continuing Legal Education in Georgia, 2003
- Aviation Law, Institute of Continuing Legal Education in Georgia, 2003
- Demonstration and Analysis of a Direct Examination of the Plaintiff, ATLA, All Stars, Dallas, Texas, 2002
- Faculty Member, ATLA, Cambridge Trial Advocacy, Cambridge, Massachusetts, 2002
- Courtroom Technology and Persuasive Proof You Can Afford, ATLA, Cambridge Trial Advocacy, Cambridge, Massachusetts, 2002
- What Do You Do When the Unexpected Happens in Discovery and in the Courtroom, ATLA, Cambridge Trial Advocacy, Cambridge, Massachusetts, 2002

- Effective Jury Questionnaire, ATLA, Winter Convention, Miami, Florida, 2002
- General Strategies with Examining Witnesses, ICLE, Trial Advocacy, Atlanta, Georgia, 2001
- Email Ethics - Protecting the Attorney-Client Privilege, ATLA, Winter Convention, San Juan, Puerto Rico, 2000
- The Present Status of 9-11-9.1, ICLE, Motions Practice in Georgia, 2000
- Engineering Professionals in the Court Room, Southern Polytechnic State University, Atlanta, Georgia, 2000
- Cross Examination of Defendant Experts, ABOTA, Advocacy Roundtable, 1997
- Advanced Medical Malpractice Skills, and Jury Selection and Medical Anatomy, ATLA, National College of Advocacy, Reno, Nevada, 1996
- Proof of General Damages Through Use of "Character Testimony", Georgia Trial Lawyers Auto Wreck Seminar, Columbus, Atlanta, and Augusta, Georgia, 1995
- Domestic Violence, ATLA Summer Convention, 1995
- Personal Injury Seminar for Legal Assistants, and Preparation of the Settlement Package, Law Seminars International, Atlanta, Georgia, 1994
- The First Opening: Voir Dire, National Board of Trial Advocacy, Miami, Florida, 1994
- Domestic Violence: When the Police Fail to Respond, Wyoming Trial Lawyers Association Convention, Sheridan, Wyoming, 1994
- Creating Civil Justice Jury/History of the Jury System, Georgia Civil Justice Foundation, LRE Seminar, Athens, Georgia, 1994
- Critique of Student Presentations on Direct Examination, Atlanta College of Trial Advocacy, Atlanta, Georgia, 1994
- Domestic Violence: When the Police Fail to Respond, Idaho Trial Lawyers Seminar, Moscow, Idaho, 1994
- Faculty Member, The First Opening: Voir Dire, National College of Advocacy, Washington, D.C., 1994
- The Best Files are the Ones in Your Office, Plaintiff's Personal Injury Seminar, Atlanta, Georgia, 1994
- The Best Files are the Ones in Your Office, Georgia Trial Lawyers Annual Meeting, St. Simons Is., Georgia, 1994
- Making the Most of Settlements, Georgia Trial Lawyers Seminar, Atlanta, Georgia, 1994
- An Update on Georgia's Fair Claims Practice Act, GTLA, Motor Vehicle Wreck Seminar, Atlanta, Georgia, 1992
- Use of Mediation as an Alternative Dispute Resolution Technique: The Plaintiff's Perspective, ATLA, Winter Convention, Boca Raton, Florida, 1992
- The Psychology of Trial: Choosing Your Theme, ATLA, National College of Advocacy, Atlanta, Georgia, 1992
- Litigation Cost Containment Strategies for 1993, Attorney's Information Exchange Group, Sonoma, California, 1992
- Personal Injury Seminar for Legal Assistants, Law Seminars International, Atlanta, Georgia, 1992
- Using Experts as Consultants: Types of Experts, Permanency of Impairment, Evaluation of Pain, Extent of Disability and Life Expectancy, ATLA, National College of Advocacy and Hastings College of Law, San Francisco, California, 1991

- Preparing Lay Witnesses: Finding the Best Way to Present the Truth, ATLA, National College of Advocacy and Hastings College of Law, San Francisco, California, 1991

- Obtaining & Interpreting Medical Records in Personal Injury Cases Opening Statement: Getting their Attention, ATLA, National College of Advocacy and Hastings College of Law, San Francisco, California, 1991

- Handling Pre-Existing Injuries & Disabilities, ATLA, National College of Advocacy and Hastings College of Law, San Francisco, California, 1991

- Cutting Edge Theories of Recovery in Torts, GTLA, Liability Evidence Enclave, December, 1991

- Basic Trial College, ATLA, Athens, Georgia, 1990

- Aviation Section, The Weather Case: Can it be Won?, ATLA, Annual Convention, San Diego, California, 1990

- The Art of Expert Witnessing, Society of Real Estate Appraisers, Annual Conference, Lake Buena Vista, Florida, 1990

- Basic Trial College, ATLA, Detroit, Michigan, 1989

- Psychology of a Trial - How to Plan It, ICLE, Selected Problems in Trial Advocacy, Atlanta, 1989

- Selected Problems in Trial Advocacy, GTLA, Atlanta, Georgia, 1989

- Moderator, GTLA, Fall Seminar, 1988

- Final Preparation and Use of a Trial Notebook, ATLA, Basic Trial College, Nashville, Tennessee, 1987

- Convention Seminar Speaker, ATLA, 1987

- Trial Techniques Seminar, TTLA, 1987

- Final Preparation and Use of a Trial Notebook, and Workshop Leader, ATLA, Basic Trial College, University of Michigan, 1986

- Final Preparation and Use of a Trial Notebook, and Cross-examination of Defense Experts, and Workshop Leader, ATLA, Basic Trial College, Samford University, 1986

- Cross-examination of Expert Witnesses, and Final Preparation and Use of a Trial Notebook, and Workshop Leader, ATLA, Basic Trial College, American University, 1985

- Defining Medical Negligence, Broward County Psychological Association, 1985

## Honors and Awards:

- AAJ Wiedmann Wysocki National Finance Council Award, July 2007
- Pilot Proficiency Certificate, Cessna, Sim Com Training Center, 1999 - Present
- Who's Who Among Top Executives, Honored Member, 1998 - 2000
- Award for Recognition 1999 National Conference, hosted by Tallulah Falls School, 1999
- Recognition for High Professional Legal Standards and Ethics in the 1999 Bar Register of Preeminent Lawyers, 83rd edition
- Recognition for Significant Contributions to Waterfowl Conservation as a Sponsor of Ducks Unlimited, Inc., 1996
- Fellow, National College of Advocacy, 1996
- Award of Appreciation for Outstanding Participation and Dedicated Service at 1994 WTLA Convention, Wyoming, 1994

## Professional Associations and Memberships:

- The American Association for Justice (f/ka Association of Trial Lawyers of America) - Life Member
- Civil Justice Foundation 2007- Present - President Board of Trustees
- The Academy of Florida Trial Lawyers, 1980 - Present - Member
- The State Bar of Georgia, 1987 - Present - Member
- The Florida Bar, 1978 - Present - Member
- Georgia Trial Lawyers Association - Life Member
- Georgia Trial Lawyers Association - Member, Executive Committee
- The Broward County Bar Association - Member
- The Atlanta Bar Association - Member
- The American Bar Association, 1979 - Present
- Million Dollar Advocates Forum - Member
- Texas Trial Lawyers Association - Member
- The Federal Bar, Atlanta and Ft. Lauderdale Chapters - Member
- National Board of Trial Advocacy, 1991 - Present
- Georgia Trial Lawyers Association, 1996 - Present - Past-President
- Aircraft Owners and Pilot Association, 1975 - Present
- National Business Aviation Association, Inc., 2000 - Present
- The National Transportation and Safety Administration Bar Association - Member
- Association of Trial Lawyers of America - Counsel of Presidents, Vice President
- Civil Justice Foundation 2006-2007 - Secretary, Board of Trustees
- Civil Justice Foundation 2005-2006 - Treasurer, Board of Trustees
- National Board of Trial Advocacy, 2003 - State Coordinator
- Association of Trial Lawyers of America, 2000-2001 - Trustee, Permanent Endowment Committee
- Pilot Proficiency Award Program, 2000-2001
- The Georgia Trial Lawyers Association, 2000-2001 - Chair, Constitutional Review Committee
- Association of Trial Lawyers of America - Permanent Endowment Committee, Member 2000 - 2001
- Association of Trial Lawyers of America - Leadership Development Committee, Trustee 2000
- Georgia Civil Justice Foundation, 1994-1997 - Member, Board of Directors
- Brain Injury Association of Georgia, 1994-1997 - Board Member
- Georgia Civil Justice Foundation, 1994-1997 - Member, Board of Directors
- Georgia Trial Lawyers Association, 1995-1996 - President
- Association of Trial Lawyers of America, Council of State Presidents, 1995-1996 - Vice Chair
- Experimental Aircraft Association @ PDK, 1994-1996 - Board Member
- Association of Trial Lawyers of America, 1994-1996 - Co-Chair, Permanent Endowment Committee
- National College of Advocacy, 1996 - Advocate
- Georgia Trial Lawyers Association, 1994-1995 - President-Elect
- Association of Trial Lawyers of America, 1992-1995 - Co-Chair, Convention Committee
- Association of Trial Lawyers of America - Amicus Curiae Committee, Member 1989-1995

- Georgia Civil Justice Foundation, 1993-1994 - President
- Association of Trial Lawyers of America, Domestic Violence Litigation Group, 1993-1994 - Member, Executive Committee
- Association of Trial Lawyers of America, 1993-1994 - Member, Long Range Planning Committee
- Georgia Civil Justice Foundation, 1993-1994 - President
- Georgia Trial Lawyers Association, 1992-1994 - Treasurer
- Texas Forestry Association, 1994
- Association of Trial Lawyers of America, 1992-1993 - Co-Chair, Leadership Development Committee
- Association of Trial Lawyers of America 1992-1993 - Leadership Development Committee, Co-Chair
- Association of Trial Lawyers of America, 1991-1993 - Secretary, Alternative Dispute Resolution Committee
- Georgia Trial Lawyers Association, 1991-1992 - Chairman, Public Relations Committee
- Association of Trial Lawyers of America, 1990-1991 - Member, Basic & Advanced Trial Colleges and Seminars Faculty Training
- Program for Practicing Lawyers; The Negotiation Workshop, Harvard University, 1991
- Georgia Trial Lawyers Association, 1990-1991 - Chairman, Legislative Committee
- Association of Trial Lawyers of America, Tobacco Litigation Group, 1989-1991 - Secretary
- Association of Trial Lawyers of America , Aviation Section, 1989-1991 - Secretary
- Georgia Trial Lawyers Association, Speakers Bureau, 1989-1990 - Co-Chair
- Georgia Trial Lawyers Association, 1987-1988 - Chairman, Judicial Liaison Committee
- Association of Trial Lawyers of America, 1986-1987 - Member, Public Relations Committee
- Association of Trial Lawyers of America, 1985-1988 - Member, Exchange Committee
- Association of Trial Lawyers of America, 1984-1986 - Member, Education Committee
- Professional Trial Lawyers Institute, 1983
- Florida Academy of Trial Lawyers - Member
- Trial Lawyers for Public Justice
- Bar Register of Preeminent Lawyers
- Professional Association of Diving Instructors
- Attorney's Information Exchange Group
- National Aeronautic Association
- Nicolas, Welsh, Brooks & Hayward - Of Counsel
- Mosca & Falco, Sarasota, Florida - Of Counsel

## Past Employment Positions:

- Harrell & Johnson, Jacksonville, Florida, Of Counsel
- Global Photonic Energy Corporation, President, Chief Operation Officer, 1999 - 2002
- Global Photonic Energy Corporation, President, Chief Operation Officer, 1999 - 2002
- Second District Court of Appeal, Appellate Division, Bartow, Florida, Assistant Public Defender, 1978

**Pro Bono Activities:**

- Brain Trauma Litigation Group
- Georgia Civil Justice Foundation

**Birth Information:**

- September 23, 1954, Frankfurt, Germany

Mr. Stone is a trial lawyer from Blakely, Georgia, who specializes in personal injury, wrongful death, professional malpractice, product liability, commercial and consumer fraud cases. He is the senior member of his own firm, BOONE & STONE, 589 College Street, Blakely, Georgia 39823, and 3166 Mathieson Drive, Atlanta, Georgia 30305. The firm's predecessor was founded in 1915 by Mr. Stone's grandfather, the late Wm. Lowrey Stone. Past members of the firm include Mr. Stone's father, Lowrey S. Stone, who formerly served as Chief Judge of Superior Courts, Pataula Judicial Circuit.

Mr. Stone was born in Dothan, Alabama, on August 19, 1953. He attended the public schools in Early County, Georgia and graduated from Early County High School in 1971. He attended the University of Georgia College of Business Administration and received a Bachelor's Degree in Business Administration with a major in accounting on graduation in 1975. Mr. Stone also attended the Netherlands Institute of Industrial Economics near Amsterdam in The Netherlands in 1973.

Mr. Stone received his Juris Doctor Degree from the University of Georgia School of Law in 1977. He was admitted to practice law in the state of Georgia in 1977 and in the state of Alabama in 1985. He is also member of the bars of the United States District Courts for the Middle and Northern Districts of Georgia, the Middle District of Alabama, and the Central District of Illinois, as well as the United States Courts of Appeals for the Fifth and Eleventh Circuits.

The publishers of the Martindale Hubble Law Directory have awarded Mr. Stone its highest rating (AV) for legal ability and integrity.

Mr. Stone is a Life Member and past president of the Georgia Trial Lawyers Association, and is also a member of the American Bar Association, the State Bar of Georgia, the Alabama State Bar, the Association of Trial Lawyers of America, and the Southwest Georgia Trial Lawyers Association.

Mr. Stone is one of 3 members of the Board of Governors for the Association of Trial Lawyers of America from Georgia. Mr. Stone is a member of the ATLA President's Club and serves as Co-chair of the Ethics Committee of the Association of Trial Lawyers of America.

Mr. Stone has served on the Georgia Judicial Nominating Commission that recommends candidates to the Governor for appointment to vacant judgeships in Georgia.

Mr. Stone has authored a number of published articles and is a frequent lecturer at legal seminars on the subject of trial practice and tort law.

Mr. Stone serves on a number of committees with the State Bar of Georgia, including the Advertising Regulation Committee.

Mr. Stone is a past president of the Blakely Rotary Club, and a member of the First United Methodist Church of Blakely.

Mr. Stone has five children, Ryals, 25, Katie, 21, James, 20, John, 20, and Andrew 16.

Ms. Siex is a lawyer in the Atlanta office of Boone & Stone who practices in the area of civil litigation including medical negligence, wrongful death, aviation crashes, product liability, and business and commercial litigation.

Ms. Siex was born in Baldock, England, on November 17, 1962. The daughter of a military family, she traveled extensively throughout the United States and Europe. She graduated with honors from Niceville High School in 1980. She then attended Randolph-Macon Woman's College on an academic scholarship where she earned her undergraduate degree cum laude and with honors in Political Science in 1984. Ms. Siex also studied abroad in Paris in the areas of French and Art History.

Ms. Siex received her Juris Doctor Degree from Emory Law School in 1987 after receiving an Emory Merit Scholarship. She was admitted to practice law in the State of Georgia that same year. Ms. Siex spent a year as a judicial Clerk with the Superior Court of Bibb County, working with the Honorable Cloud C. Morgan and Bryant G. Culpepper, before entering private practice.

For legal ability and integrity, Ms. Siex has achieved the highest rating (AV) that is awarded by the publishers of the Martindale Hubble Law Directory. She is admitted to practice before the U.S. Court of Appeals for the 11th Circuit, the U.S. District Court of the Northern District of Georgia, the U.S. District Court of the Middle District of Georgia, the Georgia Court of Appeals the Georgia Supreme Court and the United States Supreme Court.

Ms. Siex has actively championed the rights of United States Citizens to trial by jury as former President of the Georgia Civil Justice Foundation, a non-profit organization for the promotion of the civil justice system. She is involved in the American Association for Justice (f/k/a Association of Trial Lawyers of America) and the Georgia Trial Lawyers Association, where she has served as a Vice President and Chairperson of the Constitutional Challenge Committee and as a member of the Ethics and Long Range Planning Committees. She is also a member of the Atlanta, Federal and American Bar Associations, and the State Bar of Georgia, where she is published. Ms. Siex has appeared as a guest on the Georgia Public Broadcasting program, "The Layman's Lawyer."

**Areas of Practice:**

- Aviation Law
- Catastrophic Injuries
- Civil Litigation
- Commercial Litigation
- Medical Malpractice
- Personal Injury
- Premises Liability
- Product Liability
- Professional Negligence
- Wrongful Death

**Bar Admissions:**

- U.S. Supreme Court, 2006
- Georgia Court of Appeals, 1989
- Supreme Court of Georgia, 1989
- U.S. District Court Middle District of Georgia, 1989
- U.S. Court of Appeals 11th Circuit, 1988
- U.S. District Court Northern District of Georgia, 1988
- Georgia, 1987

## Education:

- Emory University School of Law, Atlanta, Georgia, 1987
- J.D., Recipient: Emery Merit Scholarship
- Randolph-Macon Women's College, Virginia, 1984
- B.A.
- Honors: Cum Laude
- Honors: With Honors
- Major: Political Science

## Published Works:

- "Claims Against Attorneys Based in Sexual Misconduct: Sexual Misconduct as Professional Malpractice", 30 Georgia State Bar Journal 7, Fall, 1993

## Representative Cases:

- Coleman v. Puhalovich, North Fulton Anestesia (2007)
- Smith v. Steinmetz (2004)
- Norberg v. Nationwide - Southeast, (2004)
- Layne v. Shands Hospital, (2003)
- Thomas v. Kaiser, (2003)
- Turpin v. Macon Aviation, et al., (2003)
- Washington v. Housing Assistance, (2003)
- Henry v. Atlanta Gas Light, (2003)
- Lee v. Kennestone Hospital, (2001)
- Collicott v. Haines Trucking Company, (1999)
- John v. Cherokee Trucking Company, (1999)
- Loveless v. Luna LaserPerfect Skin Centers, LLC, (1999)
- Malone v. General Motors (1998)

## Honors and Awards:

- Emory Merit Scholarship
- Edmonds Merit Scholarship

**Professional Associations and Memberships:**

- Atlanta Bar Association - Member
- American Bar Association - Member
- The Federal Bar Association - Member
- State Bar of Georgia - Member
- Georgia Trial Lawyers Association, 1991-1994 - Chairperson, Constitutional Challenge Committee
- Georgia Trial Lawyers Association - Member, Amicus Curiae Committee
- Georgia Civil Justice Foundation, 1994-1996 - President
- American Judicature Society - Member
- American Association for Justice (f/k/a The Association of Trial Lawyers of America) - Member, President's Club

**Past Employment Positions:**

- Beltran & Associates, Atlanta Georgia, 1988-1995
- Hon. C. Cloud Morgan and Bryant Culpepper, Bibb County Superior Court, Law Clerk, 1987 - 1988

**Languages:**

- French

**Birth Information:**

- November 17, 1962, Baldock Herts, England

Ms. Cardones is a lawyer in the Atlanta office of Boone & Stone who practices in the areas of products liability, medical negligence, wrongful death, personal injury, as well as commercial and consumer litigation.

Ms. Cardones was born and raised in Rhode Island, where she graduated with high honors from Rocky Hill School in 1999. She earned her undergraduate degree in French Studies from Emory University in 2003. Also during that time, she studied Spanish abroad in Salamanca, Spain.

Ms. Cardones received her Juris Doctor Degree from Emory University School of Law in 2007. While attending law school, she interned with the Office of Regional Counsel for the Southern Region of the Federal Aviation Administration. She also participated in Emory's Moot Court Society, both as a competitor on the Society's Jessup International Law Team and the following year as the coach for the Jessup Team. For her excellence in advocacy throughout law school, she was selected for membership in the National Order of Barristers.

In Fall 2007, Ms. Cardones became a member of the State Bar of Georgia and began practicing full time with Boone & Stone. She is admitted to practice before the Georgia Supreme Court.

Ms. Cardones is married to Justin Cardones, an Electrical Engineer. They enjoy being active and outside and are involved in their neighborhood association, the Virginia-Highlands.

**Areas of Practice:**

- Aviation Law
- Catastrophic Injury
- Civil Litigation
- Commercial Litigation
- Consumer Litigation
- Medical Malpractice
- Personal Injury
- Products Liability
- Professional Negligence
- Wrongful Death

**Bar Admissions:**

- Georgia, 2007
- Supreme Court of Georgia, 2008

**Education:**

- J.D. - Emory University School of Law, Atlanta, Georgia 2007
- B.A.- Emory University, Atlanta, Georgia 2003

**Honors and Awards:**

- Emory University Law School 1L Oralist Competition-Top 10% Oralist Award (2004-2005)
- Emory University Law School Moot Court Competition- Top Oralist and recipient of the Gunster, Yoakley and Stewart Best Oralist Award, (2005-2006)
- The National Order of the Barristers, 2007

**Professional Associations and Memberships:**

- State Bar of Georgia - Member
- Georgia Trial Lawyers Association
- Atlanta Bar Association
- The Lamar American Inn of Court
- Georgia Association of Women Lawyers

Mr. Williams is a lawyer in the Blakely office of Boone & Stone who practices in the areas of products liability, medical negligence, wrongful death, personal injury, as well as commercial and consumer litigation.

Mr. Williams was born in Dothan, Alabama in 1981. He grew up in Blakely, Georgia and graduated with honors from Early County High School in 1999. Afterwards, he attended Georgia Southwestern State University on several academic scholarships and earned his undergraduate degree in Political Science in 2002.

Mr. Williams received his Juris Doctor Degree from Cumberland School of Law in 2006 with a Certificate in Trial Advocacy. Mr. Williams' love of the courtroom developed before he graduated law school. During his last year at Cumberland, Mr. Williams obtained his third year practice card in Alabama and helped the Bessemer District Attorney's Office prosecute various individuals for a wide variety of crimes.

Mr. Williams's career with Boone & Stone began before he ever attended law school. After graduating college, Mr. Williams began working in our Blakely office as a legal assistant. During summer breaks from law school, he returned to Boone & Stone to serve as a summer associate. Mr. Williams became a member of the State Bar of Georgia in 2006. He is admitted to practice before the U.S. District Court of the Northern District of Georgia, the U.S. District Court of the Middle District of Georgia, the Georgia Court of Appeals and the Georgia Supreme Court.

Mr. Williams is married to the former Courtney Bean, a teacher at Early County Elementary School. In his spare time, he enjoys the outdoors, attending church, and spending time with his friends and family.

**Areas of Practice:**

- Catastrophic Injuries
- Civil Litigation
- Commercial Litigation
- Consumer Litigation
- Medical Malpractice
- Personal Injury - Plaintiff
- Premises Liability
- Product Liability
- Professional Negligence
- Wrongful Death

**Bar Admissions:**

- Georgia, 2006
- U.S. District Court Northern District of Georgia, 2007
- U.S. District Court Middle District of Georgia, 2006

- Georgia Court of Appeals, 2006
- Supreme Court of Georgia, 2006

**Education:**

- J.D.- Samford University, Cumberland School of Law 2006
- Certificate in Trial Advocacy
- B.S. - Georgia Southwestern State University, 2002

**Honors and Awards:**

- Judge Abraham Caruthers Fellow
- Chi Phi College of Excellence Intern - Vanderbilt University

**Professional Associations and Memberships:**

- Pataula Circuit Bar Association - Member
- State Bar of Georgia - Member
- The Association of Trial Lawyers of America, 2006 - Member
- American Association for Justice - Member
- Phi Alpha Delta Law Fraternity, International - Member
- The National Scholars Honor Society – Member

Ms. Davis is an attorney with Boone & Stone who practices in the area of civil litigation, including consumer and commercial fraud, product liability, wrongful death, and professional negligence. She specializes in state and federal appellate practice

Ms. Davis was born in Tennessee and grew up in North Carolina. She graduated from the University of North Carolina at Chapel Hill in 1974 with Highest Honors in English. She received her J.D. from the University of Georgia School of Law in 1978, and served as the Director of the Legal Research and Writing Program at the UGA law school from 1978-1980. She served as a judicial clerk at the Supreme Court of Georgia from 1980 until 1994 when she entered private practice.

Ms. Davis has authored and co-authored publications for the Mercer Law Review, Trial Magazine, The Verdict Magazine and articles for the Product Liability Section of the State Bar of Georgia. She has authored and co-authored successful amicus briefs on behalf of Boone & Stone in the areas of consumer fraud and the burden of proof under the Georgia RICO statute, and amicus briefs on behalf of the Georgia Trial Lawyers' Association in areas of professional malpractice, evidentiary standards and spoliation of evidence.

**Areas of Practice:**

- Product Liability
- Commercial Fraud
- Consumer Fraud
- Professional Negligence
- Civil Litigation
- Wrongful Death

**Bar Admissions:**

- Georgia, 1978

**Education:**

- University of Georgia School of Law, Athens Georgia, 1978
- J.D.
- University of North Carolina at Chapel Hill, 1974
- B.A.
- Major: English

**Professional Associations:**

- State Bar of Georgia
- Georgia Trial Lawyers Association
- Former member of GTLA Amicus Committee

- Attorneys' Information Exchange Group

**Professional Publications:**

- The Verdict, "The Statute of Limitations in Misdiagnosis Cases in Georgia: an Update", Winter 2003
- The Verdict, "Medical Malpractice Trends: Continuous Treatment and Informed Consent", Winter, 2002
- Trial Magazine "When Time Is Running Out", October, 2001 (co-author) [an analysis of misdiagnosis in breast cancer patients]
- Mercer Law Review, Annual Survey of Georgia Law, "Evidence", Vol. 34, No., 1, Fall, 1982 (co-author)

As a member of Boone & Stone, Aileen Page represents individuals in product liability, premises liability, medical malpractice, civil racketeering (RICO) and other complex litigation matters. Aileen has litigated cases in Georgia state courts, in all three federal district courts in Georgia, as well as in states across the country, including California, New York, New Jersey, Pennsylvania, Texas, Louisiana, Tennessee, Alabama, South Carolina, Kentucky, Missouri and Rhode Island.

Aileen is a Magistrate Court Judge in Fulton County (Atlanta), Georgia.

As a mediator credentialed and registered with the Georgia Office of Dispute Resolution, Aileen is expanding upon more than a decade of trial and litigation work by developing her mediation practice.

Aileen began her career as an Assistant District Attorney in the Coweta Judicial Circuit where, within weeks of graduating law school, she independently tried and won her first felony jury trial. Then based in LaGrange, Georgia, she traveled the multi-county circuit, trying and winning felony jury cases. She was undefeated in Coweta, Troup, Meriwether and Heard counties.

Aileen then joined the DeKalb County District Attorney's Office in metropolitan Atlanta, and continued to try and win serious felony jury cases. As a result of her performance, Aileen was selected to join the Special Prosecutions Unit dedicated exclusively to child deaths, child molestations, and other crimes against children. Assigned to four of eight Superior Court divisions, she was solely responsible for half of all such prosecutions in DeKalb County, and was on call for trial nearly every week. During her tenure with the Dekalb County District Attorney's Office, Aileen was undefeated.

Aileen began her civil practice with the litigation department of a firm representing the world's largest retail corporation in all its tort litigation throughout the state of Georgia. She was lead counsel in a large number of lawsuits involving claims of serious personal injury, malicious prosecution, and employment discrimination. Soon after joining that firm, Aileen was lead counsel in her first civil jury trial, pending in the United States District Court for the Northern District of Georgia, in which she won a directed verdict. She proceeded to develop her civil practice, litigating cases in state and federal courts throughout Georgia.

Aileen then joined a prominent downtown Atlanta firm representing primarily plaintiffs in matters involving catastrophic injury and complex litigation. Within six months, Aileen was promoted to Managing Attorney. In addition to executing administrative responsibilities, Aileen represented Georgia clients in various tort, domestic, and civil RICO matters, as well as clients from across the United States in multidistrict mass-tort pharmaceutical product liability litigation.

In 2005, Aileen was selected from among thousands of trial lawyer applicants to compete in the nationally televised David E. Kelly legal reality drama, "The Law Firm". The attorneys tried real cases against one another before California judges and juries, and were required to prepare and try each case within 48 - 72 hours of receiving the case file. All aspects of preparation and trial were filmed. Competitors were evaluated and eliminated from the competition by prominent Florida attorney Roy Black. Aileen was the only woman in the final six, finished in the top three,

and achieved the best win-loss ratio of all the competitors. At the conclusion of the competition, Roy Black stated that there were two attorneys he would want to hire, one of whom was Aileen. In connection with the show, she was personally featured in the Los Angeles Times, USA today, the Fulton County Daily Report, and other publications.

Aileen won the award for Best Orator in Georgia State University College of Law's 1996 Appellate Advocacy Competition. In appreciation of the invaluable training she received during law school by competing in both moot court and mock trial programs, she has served as both a coach and judge in high school and law school competitions.

Aileen volunteers for Dress for Success, an organization which assists women in their efforts to become self-sufficient by entering the workforce.

Born in New York City, Aileen lived in Toronto, Canada, before moving to Atlanta. She earned a Bachelor of Arts Degree in Philosophy and Political Science from the University of Toronto, and obtained her law degree in 1996 from Georgia State University College of Law.

Aileen is a member of the American Association for Justice, the Georgia Trial Lawyers Association, the Georgia Association of Women Lawyers, the Atlanta Bar Association, and the Lawyers Club of Atlanta.

# Exhibit F



Founded in 1978, Lockridge Grindal Nauen P.L.L.P. has extensive experience in product liability, antitrust, securities, environmental, employment, health care, commercial, intellectual property and telecommunications law.

LGN attorneys have taken leadership roles in federal court multi-district litigations and state court consolidated proceedings in products liability, consumer fraud, antitrust, and securities actions. These cases have resulted in billions of dollars of recoveries for injured individuals, small businesses, farmers, and investors.

The firm's work, as part of the leadership structure in several MDL's, has been recognized by the Courts:

### *Monosodium Glutamate Antitrust Litigation*

LGN was Co-Lead Counsel for the Plaintiff Class in this case, in which $124 million was recovered for the benefit of a class of businesses which purchased food flavor enhancers from suppliers in the U.S., Japan, Korea, and Taiwan. Judge Paul Magnuson, then Chief Judge of the United States District Court for the District of Minnesota, said:

> *Plaintiffs' counsel conducted themselves in an exemplary fashion throughout the litigation, and are to be commended for their fine work in this litigation.*

### *Linerboard Antitrust Litigation*

Lockridge Grindal Nauen P.L.L.P. partner Joseph Bruckner was one of a five-person Class Plaintiffs= Executive Committee in this case. The class actions in this litigation were resolved with the recovery of more than $202 million for the benefit of a class of businesses C including many Fortune 500 companies C which purchased corrugated boxes and sheets. Judge Jan DuBois of the United States District Court for the Eastern District of Pennsylvania said:

> *The result achieved is the clearest reflection of [class plaintiffs=*
> *counsel=s] skill and expertise. . . . The Court has repeatedly*
> *stated that the lawyering in the case at every stage was superb,*
> *and does so again.*

### Bulk Vitamins Antitrust Litigation

In addition to its extensive role in trial preparation, the firm chaired a critical committee for Class Plaintiffs in this case, one of the largest and most successful antitrust cases in history. Through settlement and verdict Class Plaintiffs= Counsel recovered over $400 million for the benefit of a class of businesses which purchased bulk vitamin products. Chief Judge Thomas Hogan of the United States District Court for the District of Columbia said:

> *[T]he attorneys involved are among some of the most highly*
> *skilled in the country with extensive experience in similar class*
> *action litigation . . . .*

Lockridge Grindal Nauen P.L.L.P. attorneys are assisted by more than 20 paralegals and government relations specialists, and an extensive support staff. The firm has offices in Minneapolis, Minnesota and Washington, D.C.

## Robert K. Shelquist

Robert K. Shelquist is a partner in the Lockridge Grindal Nauen P.L.L.P. firm. He is a graduate of the University of California at Berkeley (A.B. Legal Studies; A.B. Political Science with high honors 1987) and the University of Minnesota Law School (J.D. *cum laude* 1990). Thereafter, he was associated with the law firm of Popham, Haik, Schnobrich & Kaufman in Minneapolis, Minnesota from 1990 until 1995, and a partner in the law firm of Plunkett Schwartz Peterson, P.A., also in Minneapolis from 1995 to 2000.

Mr. Shelquist has successfully prosecuted national class actions to verdict in two cases. In Peterson v. BASF Corp., Mr. Shelquist was court-appointed class counsel and was one of the trial attorneys who secured a jury verdict for a nation-wide class seeking redress for defendant's marketing of its herbicide products. After multiple state appellate opinions and two trips to the U.S. Supreme Court, a judgment in excess of $60,000,000 was paid. He also was one of the court-appointed class counsel and trial counsel representing a certified sub-class as part of a nationwide antitrust trial that was tried to verdict in the United States District Court for the Southern District of New York.

Mr. Shelquist has been active in class action, consumer fraud, product liability, and other complex litigation, including the following court appointed co-lead counsel or class counsel in Peterson v. BASF Corp., Civil No. C2-97-295 (Norman County District Court, Minnesota); In Re Air Transportation Excise Tax Litigation, Civil File No. 3-96-CV-453 (D. Minn.); In Re Laminates, MDL File No. 1368, (S.D.N.Y.) (Counsel to Miami Sub-class); and In re CertainTeed Corp. Roofing Shingle Products Liability Litigation, MDL – 1817.

Mr. Shelquist also is or has been also involved in the following litigation: In Re Baycol Products Litigation, MDL No. 1431 (D. Minn.) (discovery and briefing committees); In re Vioxx

Litigation, MDL 1657 (E.D. LA); In re Rezulin Litigation, MDL 1348 (S.D. N.Y.); In re Serzone Products Liability Litigation, MDL 1477 (S.D. W.V.); In re Tamoxifen Citrate Antitrust Litigation, MDL 1408 (E.D. N.Y.); In re Western Union Money Transfer Litigation, Master File No. CV 01 0335 (CPS) (VVP) (E.D. N.Y.); In re Meridia Products Liability Litigation, MDL 1481 (N.D. Ohio) (co-chair discovery committee); In Re StarLink Corn Products Liability Litigation, MDL 1403 (N.D. IL); In Re Propulsid Products Liability Litigation, MDL 1355 (E.D. LA);  In Re Digi International, Inc. Securities Litigation, Master File No. 97-5 (D. Minn.); In Re Flat Glass Antitrust Litigation, MDL 1200 (W.D. PA); In Re Milk Products Antitrust Litigation, Master File 3-96-458 (D. Minn.) (co-chair discovery committee); In Re Linerboard Antitrust Litigation, MDL 1261 (E.D. PA); In Re MSG Litigation, MDL File No. 00-1328 (D. Minn); In Re Blue Cross Blue Shield Subscriber Litigation, Master File No. 19-C3-98-7780 (Dakota County District Court, Minnesota) (co-chair of discovery committee); Brown v. State of Minnesota, Court File No. 98-11152 (Hennepin County District Court, Minnesota); In Re Propulsid Products Liability Litigation, MDL 1355 (E.D. LA); Good v. Fluor Daniel Corp., Case No. CT-00-5021-RHW (E.D. Wash.); In Re Berg, Master File No. CY-96-3151-AAM (E.D. Wash.); In Re Lutheran Brotherhood Variable Insurance Products Co. Sales Practices Litigation, MDL No. 1309 (D. Minn.); Crosby v. Aid Association for Lutherans, File No. 00-CV-2112 MJD/RLE (D. Minn.); Villa v. Rexall Sundown, Inc., Court File No. 00-9061 (Palm Beach County Court, Florida); In Re European Rail Pass Antitrust Litigation, MDL 1386; In Re Green Tree Acceptance Corp. Securities Litigation, Master File No. 97-2666 (JRT/RLE) (D. Minn.); Hanson v. TCI Cable Corp., Court File No. CX- 97-1434 (Mower County District Court, Minnesota); Birkemeyer Farm Partnership, et al. v. Monsanto Co., et al., Court File No. 07-CV-04-1092 (D. Minn.); Larson v. Burlington Northern Santa Fe Railway Company, Civil No. CV

01-527 JEL/RLE (D. Minn.).    In re: Medtronic, Inc., Inplantable Defibrillators Products Liability Litigation, MDL No. 05-1726 (JMR/AJB) (trial team); In re Guidant Corp. Implantable Defibrillators Products Liability Litigation, MDL No. 05-1708 (DWF/AJB) (trial team); Robert Smale v. Sears Roebuck & Co. and Whirlpool Corp., Court File No. C3-04-8891 (Hennepin County District Court) (Liaison Counsel); Jeffrey H. Leech, et. al. v. Excel Title, LLC, Court File No. 27-CV-06-4625; Hennepin County District Court; Davenport, et al. v. Illinois Farmers Insurance Company, et al., Case No. CIV-03-158-F; In Re: Aredia and Zometa Products Liability Litigation, MDL 06-1760 (M.D. Tenn); and In re: Vytorin/Zetia Marketing, Sales Practices, and Products Liability Litigation, MDL 1938 (D.N.J.).

Mr. Shelquist has been recognized as a ASuper Lawyer@ by *Minnesota Law and Politics* and listed by the *Guide to Leading American Attorneys*.  He is currently a member of AAJ, the Federal Bar Association, and the Minnesota Bar Association.

# Exhibit G

## GISKAN, SOLOTAROFF & ANDERSON, LLP

### Firm Biography

Giskan, Solotaroff Anderson & Stewart, LLP is a firm with significant experience in complex litigation involving consumer fraud, antitrust, and employment discrimination litigation in state and federal courts, on behalf of plaintiffs and often involving class actions.

**OREN GISKAN** is admitted to practice in the states of New York (1993) and Illinois (1990). He received his law degree from the University of Pennsylvania in 1990 and his Bachelor of Arts from the University of Chicago in 1986.

Mr. Giskan served as lead class counsel in Education Station v. Yellow Book USA, Superior Court of New Jersey ($70 million settlement of false advertising claims), Danielson v. Rockford Memorial Hospital, Circuit Court of Winnebago County Illinois, No. 01 L 139 (settlement of patient billing claims under the Illinois Consumer Fraud Act), and Truschel v. Juno Online Inc., Supreme Court of the State of New York, New York County, No. 01/602486 (settlement of consumer protection claims regarding failure to provide Internet service). He is actively litigating several other consumer fraud actions throughout the country as lead or class counsel against companies including T-Mobile, LG Electronics, RCN Corporation, Chase Mortgage, Dow Jones and others.. Prior to forming the firm of Giskan & Solotaroff in October 2002, Mr. Giskan worked for the firms of Prongay & Borderud, the Law Offices of James V. Bashian, P.C. and Zwerling, Schachter & Zwerling, LLP, in New York, New York where he was actively involved as lead counsel for plaintiffs in many securities class action lawsuits including: Hal Bloomberg Trust v. Gencor Industries, Inc., M.D. Fla., 99-106-Civ-Orl; Kaplan v. Prins Recycling Corp., D.N.J., 96 Civ. 2444; In re Lady Luck Gaming Corporation Securities Litigation, D. Nev., CV-S-95-266-LDG (RLH); In re American Pacific Securities Litigation, D. Nev., CV-S-93-00576-PMP; and In re Foodmaker/Jack-in-the-Box Securities Litigation, W.D. Wash., No. C93-517WD. He also actively participated as one of the lead counsel in coordinated nationwide class actions against America Online Inc. regarding its deceptive billing practices.

From 1990-92, Mr. Giskan was an associate with Jenner & Block in Chicago, Illinois where he focused on securities and general commercial litigation.

**JASON L. SOLOTAROFF** is admitted to practice in the State of New York. He is a 1990 graduate of Columbia Law School where he was an Editor of the Columbia Law Review and a Harlan Fiske Stone Scholar. He graduated from the Johns Hopkins University with General Honors.

Mr. Solotaroff clerked for the Hon. Eugene H. Nickerson, United States District Court for the Eastern District of New York. Following the clerkship, Mr. Solotaroff was a Staff Attorney at the Legal Aid Society, Criminal Defense Division from 1991 to 1993. In 1993, he joined the Society's Federal Defender Division. As a federal defender, Mr. Solotaroff represented clients in a

wide variety of matters including complex white-collar cases. Of the nine clients he represented in criminal trials, six were acquitted and one received a partial acquittal.

Mr. Solotaroff entered private practice in 1997. Since 1997, he has devoted a substantial part of his practice to the representation of plaintiffs in class action matters. Among the cases in which he has had substantial responsibility are consumer class actions against Juno Online Inc., Lincoln Security Life Insurance of New York, Verizon Communications, American Express and antitrust class actions against Abbott Laboratories, Bristol-Myers Squibb and Astrazeneca Inc. He also represents individuals in employment discrimination and criminal defense matters.

**CATHERINE E. ANDERSON** is admitted to practice in the States of New York and New Jersey. She received her law degree from New York University School of Law in 1995, where she was an editor of the Journal of International Law and Politics and a participant in the Human Rights Clinic. She graduated magna cum laude from Colgate University in 1992, where she was elected Phi Beta Kappa. Ms. Anderson has specialized in consumer fraud and securities class action litigation and has also represented plaintiffs in employment discrimination and ERISA actions.

Ms. Anderson has served as lead or co-lead counsel in consumer class actions against Fry's Electronics, Chase Mortgage, Dow Jones, Inc., Panasonic and Sieba, Ltd. In January 2007, Ms. Anderson settled the class action captioned Russo v. Whole Arts, et al., Supreme Court of the State of New York, County of New York, Index No. 03603037, alleging claims for breach of contract, deceptive conduct in violation of NY GBL § 349, breach of fiduciary duty and fraud on behalf of approximately 170 members of the Whole Arts Group Health Plan (the "Plan"). The class settlement resolved outstanding medical bills incurred by members of the Plan with a market value in excess of $700,000.

Prior to joining Giskan, Solotaroff & Anderson, LLP, Ms. Anderson was associated with the firm of Wolf Popper LLP, where she served as lead or co-lead counsel in the following class actions which obtained a substantial recovery for the class: Garcia v. General Motors Corp., Docket No. L-4394-95, Superior Court of New Jersey, Bergen County (obtaining a nationwide settlement of $19.5 million in cash on behalf of a consumer class comprised of 2.6 million owners of GM W-Body cars with allegedly defective braking systems); Whipple v. Happy Kids, Inc., Index No. 99-603371, IAS Part 10, Supreme Court of the State of New York, New York County (obtaining a settlement providing, among other things, an increase of $0.50 per share on behalf of the Happy Kids public shareholders in a revised buyout transaction); In re Segue Software, Inc., Sec. Litig., C.A. 99-10891-RGS, United States District Court, District of Massachusetts (obtaining a cash settlement of $1.25 million on behalf of a class of all persons who purchased the common stock of Segue Software, Inc. during the period July 14, 1998 through April 9, 1999); Jonas v. Aspec Technology, Inc., Lead Case No. CV775037, Superior Court of the State of California (obtaining a settlement with a $13 million cash component and a stock component of 1.75 million shares of the common stock of Aspec Technologies, Inc. for a class comprised of all persons who owned Aspec common stock during the period April 27, 1998 through June 30, 1998); In re Ugly Duckling Corp. Shareholders Derivative and Class Action, Consolidated C.A. No. 18843, Delaware Court of Chancery, New Castle County (obtaining an increase from $2.51 per share to $3.53 per share cash in going private transaction on

behalf of a class comprised of the Company's minority shareholders, resulting in an aggregate cash benefit of more than $4.7 million).

**DARNLEY D. STEWART** joined Giskan, Solotaroff & Anderson as Of Counsel on December 1, 2007 and became a member of the firm on March 1, 2008. She is admitted to practice in the States of New York (1993) and Massachusetts (1990). She graduated from Princeton University in 1984 and received her law degree from Northeastern University School of Law in 1990. After law school, Ms. Stewart served as Law Clerk to the Honorable R. Ammi Cutter and the Honorable Mel. L. Greenberg of the Massachusetts Court of Appeals.

Ms. Stewart specializes in employment class and collective actions and has prosecuted high impact cases against a number of large companies, including Ford Motor Company, Gerber, Coastal Corporation, First Union Bank, National Car Rental, General Motors, Nissan, Toyota, and Bank of America. In connection with her work on *Coleman, et al. v. General Motors Acceptance Corporation*, Ms. Stewart was named as a finalist for "Trial Lawyer of the Year" in 2004 by the Trial Lawyers for Public Justice. She has also been named as one of the leading 500 plaintiffs' lawyers in the country and one of America's top 1500 litigators by *Lawdragon* magazine. In addition, Ms. Stewart was selected for inclusion in the list of 2006 and 2007 New York *Super Lawyers*.

Prior to joining Giskan, Solotaroff & Anderson, Ms. Stewart was a partner at the law firm of Bernstein, Litowitz, Berger & Grossmann LLP. At Bernstein Litowitz, Ms. Stewart was the partner in charge of the employment and civil rights practice, and also prosecuted a number of securities class actions, including *Ohio Public Employees Public Retirement System, et al. v. Freddie Mac, et al.*, C.A. 03-CV-4261 (S.D.N.Y.) (obtaining a settlement of $410 million) and *In re Williams Securities Litigation*, Case No. 02-CV-72 –SPF (N.D. Ok.) (obtaining a settlement of $311 million).

Ms. Stewart is a member of the Class and Collective Action Committee of the National Employment Lawyers Association and serves as Vice-President of the Executive Board of the New York affiliate (NELA/NY) of that organization. She is also plaintiffs' Co-Chair of the Technology in the Law and Workplace Committee of the American Bar Association's Labor and Employment Section. Ms. Stewart lectures regularly on employment class action issues, and has frequently commented in the media, including the *Wall Street Journal*, the *New York Times*, National Public Radio and the Today show, regarding issues raised in a variety of employment discrimination cases.

From 1991-97, Ms. Stewart was an associate with Schulte Roth & Zabel LLP, in New York, where she focused on securities, employment and general commercial litigation.

# Exhibit H

## THE JACOBS LAW FIRM, CHTD.

The Jacobs Law Firm, Chtd. specializes in complex civil litigation with a special emphasis on plaintiffs' class actions, including those involving consumer fraud issues, securities fraud, and ERISA. The Jacobs Law Firm, Chtd. was founded by John G. Jacobs in November of 2000. For 25 years prior thereto, Mr. Jacobs was associated with the firm of Plotkin, Jacobs & Orlofsky, Ltd. (PJ&O) and its predecessors as a principal and managing partner.

The firm (and prior thereto, the Plotkin, Jacobs & Orlofsky firm) has a national practice, engaged in significant litigation across the country representing plaintiffs almost exclusively in matters including securities law, ERISA, RICO, antitrust, consumer fraud, and insurance-related issues. In *McLendon v. Continental Group, Inc.*, Judge H. Lee Sarokin wrote about PJ&O's efforts in that case, where the firm was lead counsel, that counsel "performed in a heroic, superb, and extraordinary manner." *McLendon v. Continental Group, Inc.*, 872 F. Supp. 142, 165 (D.N.J. 1994). "No one," Judge Sarokin wrote, "could review the record in this case and help but conclude that the risks were monumental, the dedication and sacrifice of counsel heroic, the quality of performance superb, and the result extraordinary." Id. at 146.

In the last few years, The Jacobs Law Firm or the PJ&O firm have either been lead counsel or shared a significant lead role in the following cases, among others:

1.    *Daniel v. Aon,* Case No. 99 CH 11893, Cook County Circuit Court (Judge Nowicki) ($87 million cash settlement plus injunctive relief regarding business practices of major insurance brokerage firm in receiving undisclosed "contingent commissions." Appeal pending.)

2.    *Shen v. Distributive Networks,* 06 C 4403, (Settlement preliminarily approved providing cell phone customers up to $150 cash payments for alleged violations of the Telephone Consumer Protection Act with regard to receipt of text message solicitations.)(Judge Filip)

3.  *Brannan v. Health Care Service Corp.,* Case No. 00C 6884, Northern District of
    Illinois (Magistrate Judge Brown) ($6.95 million cash settlement plus injunctive
    relief against insurer for its practices in collecting so-called "reimbursement liens"
    from insureds' tort recoveries).

4.  *Ramlow v. Family Health Plan,* Case No. 00 CV 00386, Milwaukee County
    Circuit Court. Obtained injunction, affirmed by appellate court, against
    termination of class's health insurance and obtained continued coverage for the
    class by successor firm.

5.  *Holloway v. J.C. Penney Life Insurance Co.,* Case No. 97 C 4555 (N.D. Ill.)
    Obtained ruling from 7th Circuit (190 F.3d 838, 7th Cir. 1999) as to illegality of
    company's intoxication exclusion clause, and obtained full or partial payments of
    death benefits for class of denied beneficiaries.

6.  *McLendon v. Continental Group, Inc.,* 602 F.Supp. 1492 (D.N.J. 1985); 749
    F.Supp. 582 (D.N.J. 1989), *aff'd* 908 F.2d 1171 (3rd Cir. 1990); 802 F.Supp. 1216
    (D.N.J. 1992) ($415 million cash settlement of nationwide class action for
    employer's ERISA violations in preventing employees from vesting for benefits at
    plants across the country). (Judge Sarokin)

7.  *Martin v. Heinold Commodities, Inc.,* No. 80 CH 6439, 163 Ill.2d 33 (1994), 240
    Ill.App.3d 536 (1992), 117 Ill.2d 67 (1987), 139 Ill.App.3d 1049 (1985). (Breach
    of fiduciary duty and Illinois Consumer Fraud Act class action. $3.5 million cash
    settlement in 1995 after a trial on liability and damages.) (Judge Green)

8.  *Bennett v. Berg,* Case No. 80-0381-CV-W-O consolidated with No. 80-0459-CV-
    W-O, U.S. District Court for the Western District of Missouri; 710 F.2d 1361 (8th
    Cir. <u>En Banc</u> 1983). (Settlement on behalf of 400-plus elderly residents of a "life
    care" village resulting in payment of $14-plus million plus cancellation of $48
    million mortgage.) (Judge Roberts)

9.  *Pickering v. USX Corporation,* 809 F.Supp. 1501 (D. Utah 1992) ($42 million
    cash settlement of an ERISA action on behalf of approximately 2,000
    steelworkers laid off in order to prevent their attaining pension benefits after a
    trial on liability and a second trial on damages). (Judge Jenkins)

10. *Carrao v. Health Care Service Corp.,* 118 Ill.App.3d 477, N.E.2d 417 (1st Dist.
    1983). (Affirming class certification and decision by trial court that Blue
    Cross/Blue Shield may not refuse to pay insureds' medical bills because it believes
    the underlying medical services were "not medically necessary.") (Judge Green)

11. *Cosentino v. State Farm Mutual Automobile Insurance Company,* 83 CH 0378,
    Cook County Circuit Court. (Obtained retroactive underinsured and uninsured
    motorist insurance for a class of approximately 1.2 million insureds.) (Judge
    Wosik)

12.     *O'Neill v. Allstate Insurance Company*, 83 CH 535, Cook County Circuit
        Court. ($5 million settlement fund for the payment of retroactive
        underinsured and uninsured motorists' losses.) (Judge Green)

13.     *Kaszuk v. Bakery and Confectionery Union*, 638 F.Supp. 365 (N.D. Ill.
        1984); aff'd, 791 F.2d 548 (7th Cir. 1986). (Obtained declaration of
        ERISA violations and injunction requiring pension fund to give notice of
        such rulings to widows with potential entitlement to some $10 million in
        back payments plus future payments for life.) (Chief Judge Grady)

14.     *Hedberg v. Schanck*, 83 C 2993, U.S. District Court, N.D. Ill. ($11 million --
        exclusive of attorneys' fees and costs -- class action settlement in going-private
        leveraged buyout transaction.) [1985 Tr. Binder] Fed.Sec.L.Rep. (CCH)
        par.92,384 (Judge Moran)

15.     *Mayer v. Northwest Industries*, 82 C 658, U.S. District Court, N.D. Ill.
        (Obtained $18 million jury verdict for securities fraud and breach of
        fiduciary duty after three-week jury trial on behalf of class of stockholders.
        Settled on appeal for $10 million.) (Judge McGarr)

16.     *King v. Blum*, 84 C 10917, 85 C 4261, 85 C 5384, U.S. District Court,
        N.D. Ill. ($3.9 million settlement in securities fraud class action.) (Judge
        Leinenweber)

17.     *Hickerson v. Velsicol Chemical Corporation,* No. 81 C 2543 (N.D. Ill.)
        778 F.2d 365 (7th Cir. 1985). (ERISA class action. $2.5 million cash
        settlement, exclusive of fees and expenses, for conversion of profit sharing
        plan to pension plan.) (Judge Hart)

18.     *Goldberg v. Sweet*, 117 Ill.2d 493, 512 N.E.2d 1262 (1987); 488 U.S. 252,
        109 S.Ct. 582 (1989). (Class action challenging the Illinois tax on
        interstate telephone communications that eventually reached the United
        States Supreme Court on important Commerce Clause issues.)

19.     *In re Jackpot Enterprises, Inc. Securities Litigation*, No. CV-S-89-805
        U.S. District Court, Nevada. ($3.25 million settlement of fraud-on-the-
        market Rule 10b-5 class action.) (Judge George)

20.     *Picardi v. Chicago Truck Drivers Union*, No. 83 C 343 U. S. District
        Court, N.D. Ill. (ERISA class action. Obtained $3.75 million cash
        recovery plus structural relief mandating installation of new computer
        system and reduction of administrative personnel resulting in annual
        savings of approximately $1 million.) (Judge Alesia)

The firm currently is involved in various class actions and cases brought as class actions in state and federal courts in Illinois, California and Massachusetts, and recently concluded substantial involvement in non-class antitrust litigation in Arkansas. Several of the firm's pending cases involve issues surrounding cellular telephone billing, where agreements in principle have been made to settle various nationwide class actions regarding those issues. Additionally, Mr. Jacobs has extensive appellate experience, and currently is involved in various appeals pending in state and federal courts around the country.

The Jacobs Law Firm, Chtd. consists of John G. Jacobs and Bryan G. Kolton. Mr. Jacobs is a 1972 graduate of the University of Chicago Law School, where he was the winner of the 1972 Hinton Moot Court Competition (Justice Rehnquist, Justice Stevens and Judge Elbert Tuttle). Following service in the U.S. Navy JAG Corps, he has been engaged in complex civil litigation for the last 33 years, first with PJ&O and then with The Jacobs Law Firm. Mr. Jacobs is a member of the ABA, ATLA, the Chicago Bar Association and The Chicago Council of Lawyers, where he served as Chair of its Judiciary Committee and Vice-President. Bryan G. Kolton is a 1999 graduate of Loyola University Chicago School of Law, where he served on the Law Journal. He has been associated with The Jacobs Law Firm since September of 2001.